**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-CV-80395-ROSENBERG**

GREENFLIGHT VENTURE
CORPORATION & JEFFREY
D. ISAACS, MD,

      Plaintiffs,

v.

GOOGLE LLC,

      Defendant.

_____/

**ORDER GRANTING THE DEFENDANT'S**
**MOTION TO DISMISS AND ORDER TO SHOW CAUSE**

    **THIS CAUSE** is before the Court on the Defendant's Motion to Dismiss at docket entry

62.  The Motion has been fully briefed.  For the reasons set forth below, the Motion is granted.

**I.      INTRODUCTION**

    To better explain its ruling to the parties and to provide a good record for appellate review,

the Court commonly begins lengthy orders with an introduction.  The purpose of the introduction

is to generally answer the question: What is this case about?  Here, the answer to that question is

somewhat complicated.  Briefly stated, this case is about a web developer alleging that Google—

the Defendant—has violated federal antitrust laws.  But in the Court's judgment, the best way to

introduce its decision is to attempt a narrative summary of the events that gave rise to this case,

even though the events may initially seem irrelevant.

    Plaintiff Jeffrey Isaacs initiated this case *pro se*, and the Complaint contained a detailed

summary of the historical events in Mr. Isaacs's life.  Mr. Isaacs previously studied in the field of

medicine, but at some point he lost the ability to pursue a career in that field. DE 1 at 1.  Why Mr.

Isaacs was prevented from pursuing medicine is unclear in the pleadings, but Mr. Isaacs describes the basis as including "false disciplinary records" at a California university, and he also cites to prior federal litigation on that topic. *Id.* at 5; DE 61 at 19.  In that federal litigation,[1] Mr. Isaacs alleged that the dean of his school of medicine was corrupt. *Isaacs v. USC Keck School of Medicine*, No. 19-CV-8000, DE 1 at 2 (C.D. Cal. Sept. 16, 2019).  According to Mr. Isaacs, litigation over those allegations of corruption spanned almost two decades and resulted in a settlement agreement. DE 1 at 5; DE 61 at 19.  Mr. Isaacs subsequently alleged in federal court that the university violated the settlement agreement by leaking the details of his eventual expulsion to third parties. *Isaacs v. USC Keck School of Medicine*, 846 F. App'x 519, 520 (2021).  The district court dismissed Mr. Isaacs' claims against the university (and his related claims against the board of medicine) and awarded attorney's fees and costs to the defendants. *Isaacs*, 19-CV-8000 at DE 93, 112.  Mr. Isaacs appealed to the Ninth Circuit, and the Ninth Circuit affirmed. *Isaacs*, 846 F. App'x at 520.

How does prior litigation connect to the case before the Court?  In this case, Mr. Isaacs alleges that Google learned about the litigation surrounding his inability to practice medicine. DE 1 at 6-7; DE 61 at 21.  He also alleges that Google used that knowledge to harm him. *Id.*  The Court will discuss the allegations and claims pertaining to Google in greater detail below, but the Court first turns to what Mr. Isaacs did (pursuant to his own allegations) after discontinuing his pursuit of a career in medicine.

---

[1] For the purposes of providing background information, the Court takes judicial notice of the cases Mr. Isaacs references in his original Complaint and operative Second Amended Complaint, *Isaacs v. USC Keck School of Medicine*, 846 F. App'x 519 (2021) and *Isaacs v. USC Keck School of Medicine*, No. 19-CV-8000 (C.D. Cal. Sept. 16, 2019). *See, e.g., Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276-78 (11th Cir. 1999) (noting that courts may take judicial notice at the motion to dismiss stage); *Reed v. Royal Caribbean Cruises Ltd.*, 618 F. Supp. 3d 1346, 1354 (S.D. Fla. 2022) (noting that a court may consider documents referenced in a complaint).

Mr. Isaacs turned to the field of internet technology. DE 1 at 6; DE 62 at 20.  He invented a "corona virus tracking app." *Id.*  When Mr. Isaacs submitted the app to Apple for sale, Apple rejected it on the grounds that any application involving COVID-19 had to be authored by a recognized health entity or medical institution. *Id.*; *Isaacs v. Apple, Inc.*, No. 21-CV-5567 at 3 (N.D. Cal. Nov. 11, 2021).  In response, Mr. Isaacs filed a federal antitrust lawsuit against Apple. *Id.*  The trial judge dismissed the first complaint with prejudice and also denied leave to amend, noting that Mr. Isaacs' counsel (who is also counsel in the case before this Court) had filed at least eight similar complaints against Apple across various jurisdictions. *Isaacs*, 21-CV-5567, DE 85. Mr. Isaacs appealed, and the Ninth Circuit affirmed. *Isaacs v. Apple, Inc.*, 85 F.4th 948 (2023).

Like the litigation about Mr. Isaacs' medical credentials, Mr. Isaacs alleges in the case before this Court that Google learned about the litigation with Apple, and that Google used that information to harm him. DE 61 at 20.  In the Court's recounting of the narrative underpinning this case, however, it is still not time to talk about Google.  Instead, the Court turns to Mr. Isaacs' other activities in the field of internet technology.

Mr. Isaacs obtained a patent for "reverse phone search technology." *Id.* at 2.  As the Court understands it, Mr. Isaacs' patent allowed for a user to input a phone number into an application and learn the identity of the caller. *See id.* at 2-3.  After Mr. Isaacs contended that another reverse phone search company—Whitepages—was infringing upon his patent, Whitepages filed suit to invalidate Mr. Isaacs' patent. *Whitepages, Inc. v. Isaacs*, No. 16-CV-175 (N.D. Cal. Jan. 11, 2016). The trial court agreed, granted judgment as a matter of law in favor of Whitepages, and invalidated Mr. Isaacs' patent. *Id.* at DE 48.  Mr. Isaacs appealed, and the Federal Circuit affirmed. *Whitepages, Inc. v. Greenflight Venture Corp.*, 698 F. App'x 613, 614 (2017).  Mr. Isaacs initially filed his suit in this Court on the premise that Google was infringing upon his invalidated patent

3

and upon claims that the United States Patent and Trademark Office refused to reissue. *See* DE 16 at 13.  After this Court twice dismissed Mr. Isaacs' patent infringement claims, however, Mr. Isaacs abandoned the claims. DE 61.  One final topic remains before the Court turns to a discussion of Mr. Isaacs' remaining, active claims against Google: how the case before this Court (as a matter of procedural history) came to be.

Mr. Isaacs recently entered into a contract to sell his home in Florida. *Isaacs v. Keller Williams Realty, Inc.*, 23-CV-81393 at page 2 (S.D. Fla. Apr. 17, 2024).  Mr. Isaacs refused to close on the sale, however, "due to the war in Ukraine." *Id.*  In light of the failure to close, Mr. Isaacs' realtor sued for commission in Florida state court. *Id.*  In response to that lawsuit, Mr. Isaacs filed a lawsuit in federal court, assigned to the undersigned, where he sued his realtor for violating the Racketeer Influenced Corrupting Organization Act, or RICO. *Id.* at DE 1.  However, Mr. Isaacs issued a subpoena (through his current counsel) not to the realtor or any party related to the real estate transaction, but to Google. *Isaacs v. Keller Williams Realty, Inc.*, 24-MC-80086 (S.D. Fla. Jan. 17, 2024).  Mr. Isaacs' basis for the subpoena was that he was forced to keep his home (and not sell) because Google had wronged him. *See* 23-CV-81393 at DE 117, page 2.

Google filed a motion to quash the subpoena in California federal court, which was in turn transferred to this District and assigned to the undersigned.  While litigation over the propriety of the subpoena was pending, Mr. Isaacs filed the suit before this Court against Google, alleging that Google was infringing upon his patent. DE 1.

While Mr. Isaacs was litigating the validity of his patent *pro se* in this case, two things happened to fundamentally alter the litigation.  First, Google put Mr. Isaacs on notice that the only party with standing to sue over the patent was Mr. Isaacs' solely owned entity—Greenflight Venture Corporation—and that a corporation can only be represented by counsel.  Second, Google

lost (at the trial level) in an antitrust case brought by the United States. *United States v. Google LLC*, No. 20-CV-03010, DE 1033 at 6-7 (D.C. Aug. 5, 2024).[2]  As a result, Mr. Isaacs retained the same counsel he used in prior litigation, and that counsel filed antitrust claims against Google on behalf of Greenflight, citing the *United States v. Google* case as precedent and calling his claims "verbatim" copies of that litigation.  Because Mr. Isaacs later abandoned his patent claims, however, this case is limited to antitrust.  The Court now turns to Mr. Isaacs' allegations against Google.

Around the time Mr. Isaacs obtained his patent but before the patent was invalidated, Mr. Isaacs created the website "OkCaller." DE 61 at 10-20.  OkCaller used the technology described in the patent—it allowed users to reverse lookup phone numbers. *Id.*  During the early years of its inception, OkCaller received millions of views. *Id.* at 15-16.  At some point in the year 2017, OkCaller's views began to decline. *Id.* at 15.  In late 2022, OkCaller's views dropped to zero, or near zero. *See id.* at 17.

Mr. Isaacs attributes this precipitous drop in views to Google learning about his medical license litigation and his litigation with Apple. *Id.* at 20.  Once Google obtained that knowledge, Mr. Isaacs alleges, Google felt threatened and used its monopolistic power to retaliate against Mr. Isaacs by reducing the flow of internet traffic to OkCaller. *See id.* at 19-22.

This is therefore an antitrust case, brought by a reverse phone number lookup website against Google.  But to bring an antitrust claim against one of the largest internet companies in the world is no small thing.  As the Court explained in a prior order of dismissal, case law limits who can bring antitrust claims. DE 53 at 2-4.  Broadly summarized, because the Plaintiffs (both

---

[2] It is of course possible that it is a coincidence that Google lost an antitrust case eight days before Mr. Isaacs brought his own antitrust claims against Google.

Greenflight and Mr. Isaacs) did not plausibly allege that Greenflight was a competitor[3] to Google, the Court previously dismissed the Plaintiffs' antitrust claims. *See id.* at 19.

This Order analyzes the legal sufficiency of Greenflight's final amended pleading, the Second Amended Complaint.  The central question is whether OkCaller—which is owned by Greenflight—can bring an antitrust claim against Google, with Mr. Isaacs' litigious past serving as the backdrop to substantiate Google's intent to harm.  The Court answers that question in the negative; for the same reasons the Court dismissed Greenflight's antitrust claims in the past, the Court does so again.

## II.    ANALYSIS

The Court begins its analysis with **(A)** a procedural ruling on the content of Greenflight's response to Google's motion to dismiss.  The Court subsequently analyzes Google's motion to dismiss on a count-by-count basis **(B) – (F)**.  The Court then enters **(G)** an order to show cause to Mr. Isaacs and addresses **(H)** its denial of further leave to amend.

For ease of discussion in this Order, the Court considers Greenflight to be synonymous with OkCaller.

### A.  Greenflight's Response to the Motion to Dismiss

The Court has entered three prior orders dismissing Plaintiffs' claims in this case, giving the Court sufficient opportunity to review substantial motion practice. DE 26, 53, 58.  Based upon that review, the Court makes one broad observation.  Google consistently makes focused, targeted arguments on what Google contends are legal insufficiencies in the Plaintiffs' pleadings.

---

[3] To clarify, this is not an antitrust case about a *customer* of Google.  Instead, this is a case about an alleged *competitor* of Google.  Greenflight repeatedly refers to itself as a competitor (using the word 28 times in the Second Amended Complaint) and it also relies upon a recent antitrust case that focused on Google's competitors. *E.g.,* DE 63 at 8 ("The SAC alleges that OkCaller is not merely a passive recipient of traffic, but a prospective or nascent competitor in general search if provided fair access to indexing data.").  Recent cases in other courts have highlighted how difficult it would be for customers of Google search (which is free) to bring antitrust claims. *See Arcell v. Google LLC*, No. 22-CV-02499 (N.D. Cal. Aug. 9, 2024).

Greenflight's response to Google's focused arguments is consistently an incoherent collection of technical jargon and legal phrases.[4]  In the Court's opinion, Greenflight's response is so incoherent that Greenflight has failed to meet its obligation to respond to the cogent points raised in Google's motion.  Under the Local Rules of this District, a failure to refute means that the respondent has waived a defense. *See Carter v. BPCL Mgmt.*, No. 19-cv-60887, 2021 WL 7502562, at *1 (S.D. Fla. Sept. 22, 2021) (holding that failure to refute opposing arguments "operates as a waiver of those arguments and is akin to a failure to respond"); *Sanz v. Am. Soc'y of Composers & Publishers,* No. 18-cv-24504, 2019 WL 13237013, at *5 (S.D. Fla. Aug. 7, 2019) (finding that a plaintiff "effectively conceded" a claim when he "chose not to address" the defendant's arguments on that claim in a motion to dismiss). Below, the Court sets forth a concrete example of Greenflight's failure to respond.

As will be discussed in greater detail, Google argues that Greenflight has failed to plead that it competes in the same market as Google—the general search services market.  The Court would expect that Greenflight, in its response, would either (i) concede it has not pled the same or (ii) identify where, in its pleading, that it *has* alleged it directly competes with Google.  Greenflight does neither.  Instead, Greenflight responds in part with the following argument:

> Plaintiffs, as direct users of Google's Webmaster Tools (GWT) and overall GSE services, plead that they have no meaningful alternative for distribution, making them effectively consumers of Google's platform. Even if they are not themselves offering general search querying, they suffer inextricably intertwined injury from Google's alleged manipulation and self-preferencing. Because market power in GSE allows Google to withhold or degrade distribution, the alleged harm— OkCaller's dramatic traffic decline—flows directly from conduct in that market.

> The Supreme Court in *Brown Shoe* recognized that market definition and the effects of alleged monopolistic behavior often involve intricate factual inquiries (e.g., cross-elasticities of demand, distribution channels, barriers to entry). Here, Plaintiffs' theory rests on facts—such as behind-the-scenes ranking changes, data

---

[4] The Court previously observed and referenced the Plaintiff's use of incoherent jargon in a prior order of dismissal. DE 53 at 13.

> indexing decisions, exclusive default agreements, and new to the SAC – whether GWT is part of the GSE platform.

DE 63 at 7-8 (case citations omitted). The Court simply cannot discern what this text is intended to convey—how the text refutes Google's cogent argument. Notably, the quoted text contains no citations to Greenflight's Second Amended Complaint. That is the case for most of Greenflight's response—pleading citations are scarce—and when Greenflight does provide a citation, the Court fails to see how the cited allegation is responsive to Google's arguments.

The Court's discussion on this topic is not intended to malign or impugn Greenflight or Greenflight's counsel; antitrust is a complex area of the law, and it can be a difficult task to clearly communicate antitrust legal principles to the Court. The Court's discussion on this topic is instead intended to explain its conclusion, referenced below in its analysis,[5] that Greenflight has failed to substantively respond to various arguments raised by Google in its motion to dismiss.

**B. Count I, styled as "Maintaining Monopoly of General Search Engines in Violation of Sherman Act § 2 (DOJ Verbatim Cause of Action)"**

Greenflight's first count seeks to hold Google liable in antitrust for maintaining a monopoly in the market of "general search engine services." DE 61 at 44. According to Greenflight, general search engine services "enable users to retrieve responsive information from the internet by entering keyword queries." *Id.* at 27. A key characteristic of these services is that a user can search for essentially anything. *See id.* Also according to Greenflight, there is no substitute for general search engine services. *Id.* Example general search engine services are Google, Bing, and DuckDuckGo. *Id.*

---

[5] The Court's conclusion that Greenflight's response is non-responsive is limited to Count I and Count II. Greenflight's responses as to Counts III through V are at least sufficiently clear that the Court believes Greenflight has complied with the Local Rules.

For Greenflight to bring an antitrust claim against Google for a monopoly in the general search engine services market, Greenflight must be a market participant (here, a competitor) in that market. *Fla. Seed Co., Inc. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997). Just like Google's prior motion to dismiss, Google argues in the present motion to dismiss that Greenflight has not plausibly alleged that it is a competitor in the general search engine services market.

Greenflight's Second Amended Complaint does contain the words: "Plaintiffs are competitors [with Google]." DE 61 at 44. But that is a legally conclusory allegation that is not accepted as true at the motion to dismiss stage. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))). What Greenflight must do is allege sufficient facts such that this Court may conclude that Greenflight's claim is plausible on its face. *E.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On this point, Google's motion to dismiss is persuasive. OkCaller merely returns information about a phone number. DE 61 at 4-5. OkCaller does not allow a user to search for, essentially, anything. Google therefore argues that Greenflight has failed to allege any facts upon which this Court could find that Greenflight may plausibly be inferred to be a competitor in the general search engine services market.

Greenflight's answer to this point, as discussed above in Section **A**, is sufficiently incoherent to be non-responsive. For that reason alone, Google's motion is due to be granted. The Court has nonetheless endeavored to make its best guess why Greenflight contends that it has plausibly alleged it is a competitor in the market of general search engines. The Court's best guess is that Greenflight relies upon four theories.

First, Greenflight alleges that it is a competitor with Google because it makes use of certain tools that Google provides called "Google webmaster tools." *Id.* at 27, 28. Based upon that allegation, Greenflight argues, "Plaintiffs, as direct users of Google's Webmaster Tools and overall GSE services, plead that they have no meaningful alternative for distribution, making them effectively consumers of Google's platform." DE 63 at 6. But this is not a case about the webmaster tools market—Greenflight has chosen to allege that Google has a monopoly in general search services. The Court fails to see how Greenflight's use of a tool that *influences*[6] Google's search engine renders Greenflight a plausible competitor in the area of general search services.

Second, Greenflight alleges that it is a competitor with Google because of "[proposed] DOJ and [active] EU regulations to permit competing developers access to Googlebot data." DE 61 at 44. If what Greenflight means is that governmental regulations allow for it to access Google data, that fact does not transform OkCaller from a reverse phone lookup service to a general search engine service. After all, Greenflight also alleges the commonsense observation that to become a general search engine (like Google) a company must possess "significant capital, highly complex technology, access to effective distribution, and adequate scale." *Id.* at 29. But Greenflight alleges that it possesses none of those things. Instead, it alleges that a governmental regulation (might) allow it access to Google data. That does not make Greenflight's status as a Google competitor plausible.

Third, Greenflight alleges that it would have become a valid competitor with Google, had Google not exercised improper monopoly power over the general search services market in the

---

[6] If one's *influence* on or *use of* Google's search engine results was sufficient to confer antitrust standing to sue Google as a *competitor*, the Court believes that every person who has ever posted something on the internet (or typed something into Google search) has standing to sue Google as a competitor. That simply cannot be the law, and courts have limited those who may sue in antitrust for a reason. *See Fed. Trad Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) ("Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury.").

past. *See* DE 63 at 8.  The Court addressed this argument in a prior dismissal, and it found that nothing in the First Amended Complaint could be said to plausibly suggest that OkCaller, a reverse phone number website, could have ever had (or has) the ability to compete with Google in the market of general search services. DE 53 at 6.  Nothing in the Second Amended Complaint alters the Court's prior conclusion on this subject.  Simply stated, if OkCaller could be said to have had the potential to grow into a Google competitor, every website on the internet with a search bar could say the same—every website on the internet with a search bar could sue in antitrust as a competitor to Google.  The Court declines to conclude that OkCaller could plausibly be inferred to have the potential to challenge Google as a competitor in the market of general search services.

Fourth, Greenflight alleges that it has standing, competitor or not, under the case of *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982).  The Court addressed that argument at great length in a prior dismissal. DE 63 at 2-6.  The Court declines to do so a second time.  Suffice it to say that for Greenflight to have standing under *McCready*, Google must have used Greenflight as a conduit to harm its true competitors, such as Bing. *Id.*  That is not this case.  For all of the reasons the prior complaint did not qualify for standing under *McCready*, the Second Amended Complaint also does not qualify.

In summary, for all of the reasons set forth above, for all of the reasons outlined in the Court's prior order of dismissal, and for all of the reasons in Google's motion and reply (which are incorporated and adopted into this Order), the Court dismisses Count I.

C. **Count II, styled as "Maintaining Sherman Act § 1 Unreasonable Restraints of Trade in the GSE, VSP, and Directory Services, Internet Access, and Google Single-Brand Content Markets"**

Greenflight's Count II is brought under Section 1 of the Sherman Act.  For such a claim to be cognizable, a plaintiff must allege an agreement between two or more persons that unreasonably

restrains trade. *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1545 (11th Cir. 1996). It is not enough, however, that a plaintiff is affected by the anticompetitive agreement. *Nat'l Indep. Theater Exhibitors, Inc. v. Buena Vista Distrib. Co.*, 748 F.2d 602, 608 (11th Cir. 1984). The plaintiff must instead be the *target* against which anticompetitive activity is directed. *Id.* Additionally, the injury the plaintiff experiences must be "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' act unlawful." *Id.* Non-cognizable injuries that are incidental or remote do not give a plaintiff antitrust standing. *Id.* Of course, not only does a plaintiff have to allege the foregoing, but the plaintiff must do so in a way that satisfies federal pleading standards.

In its motion to dismiss, Google argues that Greenflight fails to identify an anticompetitive agreement, fails to explain how the agreement targeted Greenflight, and fails to explain how it was harmed from the agreement. Greenflight's response to Google's arguments is sufficiently incoherent that the Court concludes it is non-responsive, as previously discussed in Section **A**, and Google's motion is due to be granted on that basis alone. In the alternative, the Court has done its best to guess what Greenflight's counterarguments are.

<u>What is the Anticompetitive Agreement?</u>

As best as the Court can discern, Greenflight believes that federal pleading standards do not require it to identify a noncompetitive agreement. By way of example, Greenflight argues the following: "Although unilateral conduct is generally not actionable under Section 1, the courts recognize that even tacit or implicit understandings may suffice if pleaded with factual support suggesting 'a meeting of the minds' to restrain trade." DE 63 at 10. Greenflight's Second Amended Complaint also contains references to "implicit understandings." DE 61 at 46. In lieu

12

of the identification of an agreement, Greenflight requests discovery approximately one dozen times.

Greenflight's Count II does not satisfy federal pleading standards; without knowing what the agreement is, the Court cannot analyze whether Greenflight was the target of the agreement. Vague and conclusory allegations about anticompetitive agreements are not sufficient to satisfy federal pleading standards. *See Lombard's Inc. v. Prince Mfg. Inc.*, 583 F. Supp. 1572, 1573-74 (S.D. Fla. 1984), *aff'd*, 753 F.2d 974 (11th Cir. 1985).

### Was Greenflight Targeted by an Anticompetitive Agreement?

Because the Court does not know what the anticompetitive agreement in this case is alleged to be, it is difficult for the Court to analyze whether Greenflight has plausibly alleged it was the target of an anticompetitive agreement. As best as the Court can discern, however, Greenflight alleges some sort of agreement between Google and Apple. DE 61 at 11. The Court understands how Greenflight could allege the existence of an agreement between Google and Apple to restrain trade in the general search services market—that was the subject of the recent antitrust decision brought by the United States. *See United States v. Google LLC*, No. 20-CV-03010, DE 1033 at 6-7 (D.C. Aug. 5, 2024). The Court similarly understands how such an agreement could be alleged to directly target other companies in the general search services market, or companies trying to enter the general search services market. What the Court does not understand is how an agreement between Google and Apple could plausibly be alleged to target OkCaller. Stated differently, any injury to OkCaller that flowed from an agreement between Google and Apple would be incidental or remote at best. Nothing in the Second Amended Complaint persuades the Court otherwise.

For the reasons set forth above and in the Court's prior order of dismissal, Count II is dismissed. There are also other grounds upon which Count II is ripe for dismissal that the Court

has not discussed given the already lengthy nature of this Order.  Instead, the Court also dismisses Count II for each of the reasons set forth in Google's motion to dismiss and reply, which the Court adopts and incorporates into this Order.

### D. Count III, styled as "Refusal to Deal in Violation of Section 2 of the Sherman Act (*Aspen Skiing Co. v. Aspen Highlands Precedent*)"

Greenflight's third count is an antitrust claim intended to be premised upon the legal standard created in a Supreme Court case, *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985).  The Court addressed this count at length in its prior order of dismissal, and the Court declines to do so a second time. DE 53 at 11-12.  Suffice it to say that an *Aspen Skiing* claim would require Greenflight to (among other things) plausibly allege that it previously entered into a joint venture with Google.  This Greenflight has not done.  Count III is dismissed for all of the reasons described in the Court's prior of dismissal, as there is no meaningful difference between the First and Second Amended Complaints, and for all of the reasons set forth in Google's present motion and reply, which the Court adopts and incorporates into this Order.

### E. Count IV, styled as "Violation of California's Unfair Competition Law (Cal. Bus & Prof. Code §§ 17200, et seq)"

Greenflight's Count IV is premised upon California state law, which prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  Each prong is a distinct theory of liability. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  Because Greenflight contends that it has brought a claim under each prong in Count IV, the Court analyzes each prong separately.

#### 1.  The Unlawful Prong

The unlawful prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Loss*

*Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citing *State Farm Fire & Cas. Co. v. Superior Ct.*, 45 Cal. App. 4th 1093, 1103 (1996)).  Google therefore argues that: (i) Greenflight's "unlawful" claim is premised upon alleged violations of federal antitrust law (Counts I through III), but because (ii) those claims are ripe for dismissal (iii) Greenflight's Count IV is also ripe for dismissal.

In response, Greenflight argues that its Count IV is premised upon other sorts of alleged violations of the law, citing vague references to the same in the Second Amended Complaint. Implicit within Greenflight's argument is that vague references are sufficient for an "unlawful" prong claim, but that is wrong: "[T]he plaintiff bringing a claim based on the unlawful prong must identify the particular section of the statute that was allegedly violated, and must describe with reasonable particularity the facts supporting the violation." *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1022 (N.D. Cal. 2007).  Other than the federal antitrust counts in the Second Amended Complaint, Greenflight has not identified claims or facts with reasonable particularity that could support an unlawful prong claim.[7]  For these reasons as well as the additional reasons set forth in Google's motion and reply, which the Court adopts and incorporates in this Order by reference, Count IV is dismissed.

### 2.  The Fraudulent Prong

For a claim to be cognizable under the fraudulent prong, Greenflight must allege a deception by Google against members of the public. *Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001).  To plead its claim, Greenflight relies upon the allegation that Google fraudulently markets itself as a neutral company, but that it manipulates its search rankings in a misleading way that is not neutral. DE 61 at 51.  Google argues that

---

[7] For the same reasons, Greenflight's vague references to other violations of the law cannot form the basis of liability under other prongs of the California Business Code.

15

Greenflight cannot cite to any authority to show that it has a duty to disclose to members of the public how it ranks its search results.

In response, Greenflight provides no citation to authority for the proposition that Google has a duty to disclose how it generates its search results.  Instead, Greenflight's cited authority may even stand for the opposite proposition—that Google has no duty to disclose under California law. *See Dreamstime.com, LLC v. Google LLC*, No. 20-16472, 2022 WL 17427039, at *2 (9th Cir. 2022) ("Google had no affirmative duty under the parties' agreement to disclose its confidential algorithmic revision.").[8]  Count IV is therefore ripe for dismissal. *See Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006) ("We cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is 'likely to deceive' anyone within the meaning of the UCL.").  For these reasons as well as the additional reasons raised in Google's motion and reply, which the Court adopts and incorporates into this Order by reference, Count IV is dismissed.

### 3.  The Unfair Prong

Google argues that Greenflight's claim under the "unfair" prong should be dismissed for two reasons: (i) the overlap of Count IV with Greenflight's federal antitrust claims and (ii) the overlap of any "unfair" claim with Greenflight's "unlawful" and "fraudulent" claims.  Each is addressed in turn.

<u>Overlap with the Federal Antitrust Claims</u>

The Supreme Court of California has recognized that a prohibition on "unfair" conduct is an "amorphous" concept that provides "too little guidance to courts and businesses." *Cel-Tech*, 20

---

[8] The Court notes that if Google had a duty to disclose its internal algorithms under California law, the appellant in *Dreamstime* would presumably have had no need to cite to the parties' contract for the alleged duty, as the appellant could have instead relied upon California law, generally.

16

Cal. 4th at 185.  As a result, the California Supreme Court tied the concept of unfairness, at least

for the purposes of the case before this Court, to antitrust violations:

> These principles convince us that, to guide courts and the business community adequately and to promote consumer protection, we must require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition. We thus adopt the following test: When a plaintiff who claims to have suffered injury from a direct competitor's "unfair" act or practice invokes section 17200, the word "unfair" in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

*Id.* at 186-87.  Here, every factual allegation that Greenflight incorporates into Count IV is also

incorporated into the federal antitrust counts: Counts I through III.  The Court's review of Count

IV confirms that the factual predicate of Count IV is effectively the same as the antitrust counts.

*E.g.,* DE 61 at 50.  The Court is therefore persuaded by Google's argument that because Counts I

through III are ripe for dismissal, Count IV is ripe for dismissal as well.

Overlap with the "Unlawful" and "Fraudulent" Claims

California courts have held that where alleged unfair business practices overlap entirely

with the other prongs of the California Business Code, claims under the unfair prong cannot

survive. *E.g., Hadley v. Kellogg Sales Company*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017).

Here, Count IV commingles claims under all three prongs—the same factual predicate underscores

all three prongs.

Upon review, the Court is unable to construe a meaningful, unique factual predicate for an

"unfair" type of claim for Count IV.  The Court is also unable to construe a meaningful, unique

legal basis for Count IV; indeed, Greenflight's Count IV repeatedly references Google's alleged

status as a monopolist. DE 61 at 51.  The Court is therefore persuaded by Google's argument that

17

because Greenflight's unlawful and fraudulent claims are ripe for dismissal, the unfair claim is also ripe for dismissal.

For these reasons as well as the additional reasons raised in Google's motion and reply, which the Court adopts and incorporates into this Order by reference, Count IV is dismissed.

### F. Count V, styled as "Illegal Duopoly Control of the U.S. Internet Content Access in Violation of Section 2 of the Sherman Act"

In Count V, Greenflight seeks to bring an antitrust "duopoly" claim against Google and Apple for "dominat[ing] all meaningful channels" of the internet. This claim is ripe for dismissal for two reasons, each of which is delineated in **bold** below.

**First**, the Eleventh Circuit has never recognized a Section 2 antitrust claim for a "duopoly," and many courts have rejected the concept as a matter of law. *See JES Props., Inc. v. USA Equestrian, Inc.*, No. 802CV1585T24MAP, 2005 WL 1126665, at *18 (M.D. Fla. May 9, 2005), *aff'd on other grounds*, 458 F.3d 1224 (11th Cir. 2006). Indeed, the weight of authority is strong that monopoly means one, not two. *Midwest Gas Servs., Inc. v. Indiana Gas Co., Inc.*, 317 F.3d 703, 713 (7th Cir. 2003) ("[A] section 2 claim can only accuse one firm of being a monopolist.").

In response, instead of conceding the lack of legal authority for its claim, Greenflight relies upon a quotation that is either fabricated or hallucinated. More specifically, Greenflight cites to a seminal case on antitrust law, *American Tobacco Co. v. United States*, 328 U.S. 781 (1946). Greenflight quotes from *American Tobacco*: "The power that controls the market by destroying competition . . . is a monopoly . . . though it be shared by three persons acting in concert." DE 63 at 9. That quotation does not appear in *American Tobacco*, and the text of the opinion does not lend support to Greenflight's quotation. The Court was similarly unable to locate the quotation (or even portions of the quotation) anywhere inside the entirety of the Westlaw database. Google was unable to locate the source of the quotation as well. As a result, the Court is concerned that

18

Greenflight's quotation may be the result of Greenflight's usage of artificial-intelligence-hallucinated legal authority. *See* Varun Magesh, *AI on Trial: Legal Models Hallucinate*, https://hai.stanford.edu/news/ai-trial-legal-models-hallucinate-1-out-6-or-more-benchmarking-queries (May 23, 2024) (noting that artificial intelligence programs can hallucinate incorrect answers to legal questions 58 to 82 percent of the time).   In any event, the Court declines to recognize a claim that ignores the prefix "mono" in the word monopoly, has been rejected by courts as a matter of law, and has not been recognized by Eleventh Circuit, all based upon a quotation that does not exist.

**Second**, for all of the reasons Greenflight lacks standing to sue Google as a competitor for "general search services" in Count I, Greenflight also lacks standing to sue Google as a competitor for "smartphone app *distribution*." DE 61 at 54 ("Apple controls the lion's share—approximately 80%—of . . . smartphone app distribution, while Google, with its dominance in general web search, commands the remaining 20%.").   Stated differently, while Greenflight may have plausibly alleged that it can create smartphone applications, it has not plausibly alleged that it is a competitor with Google in the market of smartphone app distribution.

For all of the reasons set forth above and in Google's motion and reply, which the Court adopts and incorporates into this Order, Count V is dismissed.

### G. Order to Show Cause

The Court construes the Second Amended Complaint as bringing claims not only on behalf of Greenflight, but also on behalf of *pro se* Plaintiff Jeffrey Isaacs. DE 61 (referencing Plaintiffs, plural, and also containing a *pro se* signature).   The Court previously stayed all claims brought *pro se*. DE 26 at 2.   Before dismissing any *pro se* claims, however, the Court will utilize an order to show cause process.   *Pro se* Plaintiff Jeffrey Isaacs is **ORDERED** to **SHOW CAUSE** by

**February 10, 2025**, why his *pro se* claim(s) should not be dismissed for the same reasons Greenflight's (identical) antitrust claims were dismissed.  Mr. Isaacs' response shall be no greater than ten pages, double spaced, with twelve-point font and one-inch margins.

### H.  Leave to Amend

This case has been pending for almost one year, and the Plaintiffs have had adequate opportunity to amend.  Further opportunities to amend would amount to unfair prejudice on Google, and the Court is also persuaded that, in any event, further amendment would be futile. *See*, *e.g., Bloom v. Alvereze*, 498 F. App'x 867, 884 (11th Cir. 2012) ("After a district court grants an opportunity to amend and identifies the pleading's deficiencies, if the plaintiff fails to submit a proper pleading, dismissal with prejudice is appropriate.").  Further leave to amend in this case is denied, and the Court's dismissal of Greenflight's claims is therefore without leave to amend.

### III.    Ruling

The Eleventh Circuit has observed that: "[a]ntitrust standing is best understood in a general sense as a search for the proper plaintiff to enforce the antitrust laws." *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1448 (1991) (citing *Cargill, Inc. v. Monfort, Inc.*, 479 U.S. 104, 110 n.5 (1986)).  If this were a case about the proper standing for a *consumer* of Google search to enforce antitrust laws, this Court would likely have (as other courts have had) greater difficulty in reaching its decision. *See Arcell v. Google LLC*, No. 22-CV-02499 (N.D. Cal. Aug. 9, 2024) (grappling with the question of whether certain consumers may sue Google in antitrust). The analysis would be more difficult because Google search is (for the most part) free, and it is also a ubiquitous product that so much of the world consumes.  But this is a case about an alleged *competitor* to Google search, and OkCaller is not the proper party to sue Google as a competitor.  Although Greenflight makes much of the lawsuits in Mr. Isaacs' past and its allegation that Google learned

of Mr. Isaacs' lawsuits shortly before the drop in OkCaller traffic, that does not transform OkCaller into a competitor of Google search.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Google's Motion to Dismiss [DE 62] is **GRANTED** as to Greenflight's claims. All of Greenflight's claims are therefore **DISMISSED WITHOUT LEAVE TO AMEND**. The Court may exercise its case management discretion to summarily deny future motion practice (such as a motion for reconsideration) without explanation.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 4th day of February, 2025.

Copies furnished to:
Counsel of record

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE