**No. 26-10369**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

GREENFLIGHT VENTURE CORPORATION AND JEFFREY D.

ISAACS,

*Plaintiffs-Appellants,*

v.

GOOGLE LLC,

*Defendant-Appellant.*

No. 9:24-cv-80395-RLR

---

**MOTION FOR SUMMARY AFFIRMANCE**

---

Kenneth C. Smurzynski
Mikaela E. Johnson
Williams & Connolly LLP
680 Maine Avenue, SW
Washington, DC 20024
(202) 434-5000

Edward M. Mullins
Sujey S. Herrera
Reed Smith LLP
200 South Biscayne Boulevard,
Suite 2600
Miami, Florida, 33131
(786) 747-0200

## **Table of Contents**

Table of Authorities.....................................................................ii

BACKGROUND .........................................................................3

ARGUMENT ..............................................................................7

I.    The District Court Clearly Did Not Err in Dismissing
Greenflight's Claims............................................................8

    A.    Greenflight Waived Any Objection to Google's Motion
to Dismiss Counts 1 and 2. ........................................8

        1.    The District Court did not abuse its discretion in
finding that Plaintiff waived Count 1............................9

        2.    The District Court did not abuse its discretion in
finding that Greenflight waived Count 2. ....................12

    B.    The District Court Clearly Did Not Err in Dismissing
All Counts for Failure to State a Claim...............................16

        1.    Greenflight lacked standing to bring any of its
claims.............................................................17

        2.    Greenflight clearly did not plead plausible
liability for Counts 3 through 5. ..................................20

II.    The District Court Clearly Did Not Err in Denying Plaintiffs'
Motions for Reconsideration. ........................................................24

CONCLUSION ..........................................................................25

## <u>Table of Authorities</u>

### CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................17

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985).................................................................................................20

*Atl. Richfield Co. v. USA Pet. Co.*, 495 U.S. 328 (1990) ........................17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................... 14, 19

*Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982)...................... 18, 19

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).....................7

*Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853 (11th Cir. 2017)................................................................................................16

*Brady v. Medtronic, Inc.*, 2014 WL 1377830 (S.D. Fla. 2014).................8

*Carter v. BPCL Mgmt.*, 2021 WL 7502562 (S.D. Fla. Sep. 22, 2021).......8

*Casault v. Fed. Nat. Mortg. Ass'n*, 915 F.Supp.2d 1113 (C.D. Cal. 2012)..............................................................................................22

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)..............................................................................................20

*Chudasama v. Mazda Motor Cop.*, 123 F.3d 1353 (11th Cir. 1997).......14

*Dreamstime.com, LLC v. Google LLC*, 2022 WL 17427039 (9th Cir. Dec. 12, 2022) ............................................................................. 23

*Fed. Trad. Comm'n v Qualcomm Inc.*, 969 F.3d 974 (9th Cir. 2020).....18

*Fla. Seed Co., Inc. v. Monsanto Co.*, 105 F.3d 1372 (11th Cir. 1997). 9, 17

*Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158 (5th Cir. 1969) ............7

*Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162 (3d Cir. 2015)..........................................................................19

*Isaacs v. Apple, Inc.*, No. 21-CV-5567 (N.D. Cal. Nov. 11, 2021),
    *aff'd Coronavirus Reporter v. Apple*, 85 F.4th 948 (9th Cir.
    2023) ...................................................................................................... 1

*Isaacs v. Dartmouth Hitchcock Med. Cen.*, No. 19-CV-8000 (C.D.
    Cal. Sep. 16, 2019) .............................................................................. 1

*Isaacs v. Keller Williams Realty, Inc.*, 23-CV-81393 ............................... 1

*Isaacs v. USC Keck School of Medicine*, 846 F. App'x 519 (2021) ........... 1

*Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir. 2010) ....... 13

*Jones v. Bank of Am., N.A.*, 564 F. App'x 432 (11th Cir. 2014) ............... 8

*McNair v. Johnson*, 143 F.4th 1301 (11th Cir. 2025) .............................. 8

*McWhorter v. Trans Union LLC,* No. 23-13427, 2024 WL 3385676
    (11th Cir. July 12, 2024) ..................................................................... 8

*Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757 (11th
    Cir. 2005) ............................................................................................. 24

*Midwest Gas Servs., Inc. v. Indiana Gas Co., Inc.*, 317 F.3d 703
    (7th Cir. 2003) ..................................................................................... 23

*Moore v. Camden Prop. Trust*, 816 F. App'x 324 (11th Cir. 2020) ......... 12

*Mun. Utils. Bd. of Albertville v. Ala. Power Co.*, 934 F.2d 1493
    (11th Cir. 1991) ................................................................................... 17

*Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Distrib. Co.*,
    748 F.2d 602 (11th Cir. 1984) ............................................................ 13

*NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (8th Cir. 2007) .......................... 17

*Omnipol, A.S. v. Multinational Def. Services, LLC*, 32 F.4th 1298
    (11th Cir. 2022) ................................................................................... 22

*Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008) .................................. 9

*Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282 (11th Cir. 2001) .... 24

iii

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F.Supp.2d 1009 (N.D. Cal. 2007) .......................................... 21

*Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239 (11th Cir. 2015) . 9, 11

*Thomason v. Ala. Home Builders Licensure Brd.*, 741 F. App'x 638 (11th Cir. 2018) ....................................................................... 16

*United States v. Cerceda*, 172 F.3d 806 (11th Cir. 1999) ....................... 25

*United States v. Jackson*, No. 25-10990, 2025 LEXIS 25331 (11th Cir. Sep. 30, 2025)....................................................................... 7

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004)...................................................................... 21

*Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099 (C.D. Cal. 2001) ..................................................................... 22

*Whitepages, Inc. v. Isaacs*, No. 16-CV-175 (N.D. Cal. Jan. 11, 2016), *aff'd Whitepages, Inc. v. Isaacs*, 698 F. App'x 613 (2017) ......... 1

## STATUTES

18 U.S.C. § 1512 .................................................................................. 21

Cal. Bus. & Prof. Code § 17200 ......................................................... 21

S. D. Fla. Local R. 7.1(c) ...................................................................... 8

Fed. R. Civ. P. 9(b)............................................................................. 22

Fed. R. Civ. P. 12(b)(6) ................................................................. 16, 18

15 U.S.C. § 1 ............................................................................... passim

15 U.S.C. § 2 ............................................................................... passim

Appellant Jeffrey D. Isaacs is a serial litigant whose latest foray into federal court—far from his first[1] —asserted antitrust claims against Google. In capsule form, the Second Amended Complaint alleged that Google violated federal antitrust laws, causing harm to Mr. Isaacs's company, Greenflight Venture Corporation ("Greenflight").

Mr. Isaacs and Greenflight claimed that Google retaliated against Mr. Isaacs after discovering he was engaged in litigation against "Big

---

[1] Judge Rosenberg details Mr. Isaacs's prior litigations, which feature throughout the complaint, in her order granting Google's motion to dismiss. Exhibit A, DE 65 at 1–5 (*citing Isaacs v. Apple, Inc.*, No. 21-CV-5567 (N.D. Cal. Nov. 11, 2021) (dismissing complaint for lack of antitrust standing and observing the operative complaint "does not provide sufficient clarity for the Court to assess the threshold question of whether there is a relevant market for Plaintiffs antitrust claims. One cannot discern what is included and what is not…."), *aff'd Coronavirus Reporter v. Apple*, 85 F.4th 948 (9th Cir. 2023) (affirming dismissal for failure to state a claim and noting the operative complaint alleged "at least fifteen 'relevant markets' pertinent to its antitrust claims but made no effort at all to define the markets or to distinguish them from one another"); *Isaacs v. USC Keck School of Medicine*, 846 F. App'x 519 (2021) (affirming order for attorney's fees against Isaacs); *Isaacs v. Keller Williams Realty, Inc.*, 23-CV-81393 (magistrate recommending dismissal of the complaint as a "shotgun pleading"); *Isaacs v. Dartmouth Hitchcock Med. Cen.*, No. 19-CV-8000 (C.D. Cal. Sep. 16, 2019) (denying Plaintiff's motion for a preliminary injunction and finding "Plaintiff has virtually no chance of success on the merits of this case."); *Whitepages, Inc. v. Isaacs*, No. 16-CV-175 (N.D. Cal. Jan. 11, 2016) (dismissing Greenflight's counterclaims and ruling its patent invalid), *aff'd Whitepages, Inc. v. Isaacs*, 698 F. App'x 613, 614 (2017) (without need for opinion)).

Tech." DE 61, Second Amended Complaint ("SAC") ¶ 38.[2] The supposed retaliation? Google's cancellation of what Greenflight miscalled their "partnership." *Id.* ¶ 19. What the SAC actually alleged is that Greenflight owns a website, named OkCaller. *Id.* ¶ 43. In response to certain user queries, Google may show, among other links, OkCaller's website. *Id.* ¶¶ 38, 56, 59, 124. In Plaintiffs' telling, Google decided to demote links to the OkCaller website in its search results when it learned of his litigious past. *Id.* ¶ 35. By "suppressing the visibility and accessibility" of OkCaller, *id.* ¶ 13, Google supposedly caused the website to effectively shut down, *id.* ¶ 59.

The district court dismissed Mr. Issacs's and Greenflight's claims for two reasons. *First*, the court found that the Plaintiffs had an utterly incoherent response to Google's motion to dismiss, which was sufficient for a finding that Plaintiffs had conceded their Sherman Act § 1 and Sherman Act § 2 claims under the court's Local Rules. DE 65 at 7–8 (attached as Exhibit A). *Second*, the court found that all counts failed to state a claim for relief. It was apparent on the face of the SAC that,

---

[2] Citations to the pleadings below reference the docket entry, *i.e.*, "DE X."

among other flaws, Mr. Isaacs and Greenflight lacked antitrust standing. DE 65 at 9, 11, 14–15, 17, 19.  Indeed, one of Plaintiffs' theories of liability was so lacking that the district court was moved to observe: "[I]nstead of conceding the lack of legal authority for its claim, Greenflight relies upon a quotation that is either fabricated or hallucinated."  DE 65 at 18.

Under settled law, the district court's ruling was manifestly correct, and summary affirmance by this Court is proper under Fed. R. App. P. 27 and 11th Cir. R. 27-1.

## BACKGROUND

The procedural background of this case is long and meandering. Mr. Isaacs originally filed a pro se Complaint on April 1, 2024, alleging solely a patent claim.  But after Google moved to dismiss the Complaint, noting among other things that Mr. Isaacs was not the patent-holder, a First Amended Complaint was filed.  DE 24.  Plaintiffs on this Amended Complaint were Mr. Isaacs and his closely held company Greenflight, now represented by counsel.  The First Amended Complaint added antitrust claims, many of which were styled as class claims.  Recognizing

3

that Greenflight sufficiently represented Mr. Isaacs's interests, the court

severed and stayed Mr. Isaacs's pro se antitrust claims.  DE 26.

The Amended Complaint continued to allege infringement of a

patent for "reverse phone search technology"—a tool that allows a person

to input a phone number into an application and learn the identity of a

caller.  SAC ¶¶ 21, 25.[3]  Greenflight used this technology to create a

website called OkCaller.  *Id.* ¶ 25.  Greenflight alleged that OkCaller

"fundamentally allowed Google to reach the success it enjoys today."  *Id.*

¶ 26.[4]

The Amended Complaint contended Mr. Isaacs also developed an

app called "Coronavirus Reporter."  *Id.* ¶ 34.  After Apple "rejected" this

app, Mr. Isaacs allegedly became a "lead witness" in matters that dealt

with Apple's alleged antitrust activities.  *Id.*  Greenflight claimed that

"[o]n the day Dr. Isaacs tendered a Closing Brief to the Ninth Circuit in

---

[3] Citations are to the SAC because it alleged substantially similar facts as the Amended Complaint.

[4] The district court dismissed the patent claim after finding that Greenflight had not identified "any specific third-party product that infringes upon the Plaintiff's patent." *Id.* at 13. Greenflight later abandoned its patent infringement claim by not raising it in the SAC. *See* DE 65 at 4 ("After this Court twice dismissed Mr. Isaacs' patent infringement claims, however, Mr. Isaacs abandoned the claims.").

the Apple antitrust lawsuit, Google abruptly terminated the OkCaller partnership without any prior notice." *Id.* ¶ 35. Greenflight alleged "Google dropped OkCaller's rankings after learning about his litigation history, including litigation against Big Tech." *Id.* This resulted in a significant decrease in website traffic for OkCaller. *Id.* ¶¶ 56–57.

The district judge found that Greenflight lacked standing to bring its antitrust claims. DE 53. Although Greenflight alleged that Google monopolizes the "general search services" market, the Amended Complaint failed to plead that Greenflight is a competitor in the same market—a necessary allegation to confer standing to an antitrust plaintiff. *Id.* Moreover, the court found that Greenflight failed to allege Google "leverage[s] its monopoly power in general search services" to harm the markets in which Greenflight actually participates; the Amended Complaint merely alleged that Greenflight "felt the effects of the alleged monopoly." DE 53 at 2, 4, 6. The court found these allegations squarely insufficient under binding Eleventh Circuit precedent and dismissed the claims. *Id.* Although the court recognized "that the Plaintiffs ha[d] leveraged discovery in this case to harass" Google, it

nevertheless provided one final opportunity for Greenflight to amend its pleadings. *Id.* at 18.

Thereafter, Greenflight filed a Second Amended Complaint. DE 61. The SAC similarly asserted claims for antitrust violations. *Id.* After Google yet again moved to dismiss all claims for lack of standing, the court ordered dismissal with prejudice. DE 65. This time, the court concluded that Greenflight's response to Google's motion to dismiss for two of the five counts was "so incoherent" as to constitute a concession of the "cogent points raised in Google's motion." *Id.* at 7. The court dismissed the final three counts after finding that they continued to contain insufficient facts to plausibly claim relief. *Id.* at 20–21.

Greenflight then moved for reconsideration of the court's second order of dismissal. DE 66. The court summarily denied that motion, DE 67, and subsequently dismissed Mr. Isaacs's identical antitrust claims for the same reasons. DE 69 (attached as Exhibit B). Mr. Isaacs then filed a motion for reconsideration, DE 71, which Greenflight purported to join, DE 74. The district court denied both motions. DE 78 (attached as

6

Exhibit C).   Plaintiffs now appeal the dismissal orders and the order denying the motions for reconsideration.  DE 80; DE 85.

## ARGUMENT

Summary affirmance is appropriate here because Google's position "is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case." *United States v. Jackson*, No. 25-10990, 2025 LEXIS 25331, at *3–4 (11th Cir. Sep. 30, 2025) (per curiam) (quoting *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969)).[5]  Here, the district court considered Greenflight's allegations and dismissed them—twice.  In doing so the second time, it found that Greenflight's response brief was so inadequate under the court's Local Rules as to concede that Counts 1 and 2 should be dismissed.  It further found that Greenflight's remaining claims failed to establish a plausible claim for relief.  Because these findings are clearly right as a matter of

---

[5] Fifth Circuit cases before 1981 are "binding as precedent in the Eleventh Circuit." *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

law, and because Isaacs's individual claims are identical to Greenflight's, summary affirmance of the judgment is proper.

## I.   The District Court Clearly Did Not Err in Dismissing Greenflight's Claims.

All of Greenflight's claims are deficient. This warrants summary affirmance of the district court's dismissal. *See McWhorter v. Trans Union LLC,* No. 23-13427, 2024 WL 3385676, at *3 (11th Cir. July 12, 2024) (per curiam) (granting summary affirmance of dismissal for claims that clearly failed to plead a plausible claim for relief).

### A.   Greenflight Waived Any Objection to Google's Motion to Dismiss Counts 1 and 2.

District courts possess inherent authority to manage their dockets and enforce local rules to achieve orderly and expeditious disposition of cases. *McNair v. Johnson*, 143 F.4th 1301, 1307 (11th Cir. 2025). The Southern District of Florida's Local Rules outline that a failure to refute a motion constitutes sufficient cause to grant the motion by default. S.D. Fla. Loc. R. 7.1(c); *see Carter v. BPCL Mgmt.*, 2021 WL 7502562, at *1 (S.D. Fla. Sep. 22, 2021); *Brady v. Medtronic, Inc.*, 2014 WL 1377830, at *6 (S.D. Fla. Apr. 8, 2014); *cf. Jones v. Bank of Am., N.A.*, 564 F. App'x

432, 434 (11th Cir. 2014) (per curiam).  The district court invoked the Local Rules when dismissing Greenflight's claims.  DE 65 at 7, 8.

This Court gives "great deference to a district court's interpretation of its local rules." *Reese v. Herbert*, 527 F.3d 1253, 1267 n.22 (11th Cir. 2008) (citation omitted).  It therefore reviews "a district court's application of [its] local rules for an abuse of discretion." *Id.*  An abuse of discretion occurs if a district court applied the law incorrectly, followed improper procedures, or made findings of facts that were "clearly erroneous." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (per curiam) (citation omitted).

### 1.    The District Court did not abuse its discretion in finding that Plaintiff waived Count 1.

The district court concluded that Greenflight failed to refute any of Google's bases for dismissing Count 1.  That finding was correct.

Count 1 alleged that Google violated § 2 of the Sherman Act, 15 U.S.C. § 2, by "maintaining [a] monopoly of general search engines." SAC ¶ 103.  Sherman Act claims require a plaintiff to allege that it is a customer or competitor in the relevant market or that the defendant leveraged its monopoly power in one market to harm competition in the plaintiff's market. *See Fla. Seed Co., Inc. v. Monsanto Co.*, 105 F.3d 1372,

1374 (11th Cir. 1997) ("Basically, a plaintiff must show that it is a customer or competitor in the relevant antitrust market.").

Google argued the SAC should be dismissed on the grounds that it contained inadequate allegations that OkCaller is a "competitor" of Google, DE 62 at 9, and thus Greenflight lacked standing. But Greenflight did not address that point in its opposition. Instead, it responded with what the district court concluded was an "incoherent collection of technical jargon and legal phrases," DE 65 at 7–8, including, for example:

> Plaintiffs, as direct users of Google's Webmaster Tools (GWT) and overall GSE services, plead that they have no meaningful alternative for distribution, making them effectively consumers of Google's platform. Even if they are not themselves offering general search querying, they suffer inextricably intertwined injury from Google's alleged manipulation and self-prefacing. Because market power in GSE allows Google to withhold or degrade distribution, the alleged harm—OkCaller's dramatic traffic decline—flows directly from conduct in that market.

> The Supreme Court in *Brown Shoe* recognized that market definition and the effects of alleged monopolistic behavior often involve intricate factual inquiries (e.g., cross-elasticities of demand, distribution channels, barriers to entry). Here, Plaintiffs' theory rests on facts—such as behind-the-scenes ranking changes, data indexing decisions,

10

exclusive default agreements, and new to the SAC—whether GWT is part of the GSE platform.

DE 63 at 3. None of these "points" defeated the fundamental flaw of Count 1—Greenflight lacked standing to assert antitrust allegations against Google. None even purported to respond to Google's argument.

The district court noted it could not even "discern" what these passages were "intended to convey" or how they "refute[d] Google's cogent argument." DE 65 at 8. The pleading citations were "scarce" and, when present, utterly nonresponsive. *Id.* In light of this, the court concluded that Greenflight effectively waived a response and that Count 1 should be dismissed. *Id.* at 9 ("Greenflight's answer to this point, as discussed above in Section A, is sufficiently incoherent to be non-responsive. For that reason alone, Google's motion is due to be granted.").

The district court applied the Local Rules correctly. *Surtain*, 789 F.3d at 1244. Greenflight's response did not identify where in the SAC it alleged OkCaller is in direct competition with Google as a general search engine. To the contrary, the allegations Greenflight cited pleaded precisely the opposite: they recounted how "the significant barriers to entry in general search services" prevent Greenflight from achieving competitor status. *See* DE 63 at 5 (citing SAC ¶¶ 60–70, 107). Thus,

11

there was no abuse of discretion when the court found Greenflight's argument insufficient to withstand dismissal, and this Court should summarily affirm. *See Moore v. Camden Prop. Trust*, 816 F. App'x 324, 330 (11th Cir. 2020).[6]

### 2. The District Court did not abuse its discretion in finding that Greenflight waived Count 2.

Just like it did for Count 1, the district court concluded that Greenflight failed to refute any of Google's arguments for dismissing Count 2 and therefore waived its claims. DE 65 at 7–8. This was correct and should be summarily affirmed.

Count 2 of the SAC alleged "unreasonable restraints of trade" in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. SAC ¶¶ 110–118. In support of this claim, Greenflight asserted that Google entered into arrangements to "systematically suppress[ ] competitors" across a variety of markets—the "general search services market," the "vertical search provider (VSP) market," the "directory information services market," the "internet content access" market, and the "single-brand Google-referred

---

[6] Despite its findings of waiver, the district court nevertheless considered the merits of Plaintiffs' allegations, concluding that all five counts independently failed to state a claim for relief.

traffic market." SAC ¶ 112. But this claim requires an allegation that the plaintiff was "the target" of an anticompetitive agreement, not merely an allegation that the plaintiff suffered "incidental or consequential injury" from an arrangement. *Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Distrib. Co.*, 748 F.2d 602, 608 (11th Cir. 1984) (citation omitted).

In light of this clear, governing law, Google argued in its motion to dismiss that Greenflight's allegations of an anticompetitive agreement were conclusory and, in any event, failed to identify Greenflight as the arrangement's target. DE 62 at 4–6. Google also argued that Greenflight's identified antitrust markets were "so broad as to preclude any plausible claim of monopolization by Google." *Id.* at 7; *see also Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1339 (11th Cir. 2010) (dismissing § 1 claims when plaintiff failed to "plausibly suggest the contours of the relevant geographic and product markets").

The district court again found that Greenflight's response to Google's argument was incoherent. Indeed, the court observed that Greenflight failed to "identify an anticompetitive agreement," failed to "explain how the agreement targeted Greenflight," and failed to "explain

13

how it was harmed from the agreement." DE 65 at 12. Like it did for Count 1, the district court concluded Greenflight's response was "non-responsive" and that "Google's motion [was] due to be granted on that basis alone." *Id.*

The district court did not abuse its discretion when reaching this conclusion. The response broadly referenced "implicit understandings" that Google held to restrain trade. DE 63 at 10. It then requested discovery—over and over again—to find evidence of these "implicit understandings." *Id.* But plaintiffs cannot rely on requests for discovery to defeat a motion to dismiss. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("It is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive . . . . A district court must retain the power to insist upon some specificity before allowing a potentially massive factual controversy to proceed." (citation modified)); *Chudasama v. Mazda Motor Cop.*, 123 F.3d 1353, 1368–69 (11th Cir. 1997) ("[E]ven the most cursory review of the [plaintiffs'] shotgun complaint reveals that it contains a fraud count that is novel and of questionable validity . . . . When the court refused to [consider the

14

motion to dismiss] and, instead, allowed the case to proceed through discovery without an analysis of the fraud claim, it abused its discretion.").

Greenflight provided nothing but "technical jargon and legal phrases" when responding to Google's points that Count Two's identified markets are not relevant for an antitrust claim.  DE 65 at 7.  Below are just some examples from Greenflight's response:

- "[Plaintiffs] allege that from the GSE *vantage* (the gatekeeper controlling SERP visibility), all these vertical services must vie for ranking within the same specialized 'downstream' category— namely, 'vertical search.'"

- "The SAC contends that by artificially boosting big advertisers' organic placements—even where user relevance is lacking— Google sacrifices short-term user satisfaction (and thus its own stated brand proposition) to maintain a large network of large spenders (or its own inferior products, which is the subject of the Yelp lawsuit) who might otherwise shift to potential rival platforms."

- "By steering prime organic positions to advertisers or inferior verticals, Google effectively enters a tacit or explicit agreement that diminishes SERP quality, alienates end-users, and artificially forecloses smaller publishers.  This willingness to degrade core search results (a potential self-inflicted wound) and the elaborate financial ties with the advertisers suffice to allege

a 'plus factor' indicating more than mere unilateral 'self-preferencing.'"

DE 63 at 7, 11–12.   Incomprehensible analysis from a litigant represented by counsel is more than sufficient for the court to find waiver. *Cf. Thomason v. Ala. Home Builders Licensure Brd.*, 741 F. App'x 638, 641 (11th Cir. 2018) (per curiam) (holding district court did not abuse its discretion when dismissing "rambling" and "incoherent" complaint containing "a confusing combination of facts, legal analysis, and bare accusations").

## B.   The District Court Clearly Did Not Err in Dismissing All Counts for Failure to State a Claim.

Summary affirmance of the court's dismissal orders is also appropriate on the grounds that all counts clearly failed to state a claim for relief.

This Court reviews an order granting a motion to dismiss under Rule 12(b)(6) de novo.  *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 863–64 (11th Cir. 2017).  When doing so, it accepts the well-pleaded facts as true and construes them in the light most favorable to the plaintiff.  *Id.*  But the Court need not accept "naked assertions devoid of

16

further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified).

### 1. Greenflight lacked standing to bring any of its claims.

Greenflight asserted five claims against Google for "unlawful monopolization of the market for *general search engines*." SAC ¶ 1 (emphasis added). Binding precedent from this Court and the Supreme Court establish that a plaintiff cannot assert claims for antitrust violations unless they are a "customer or competitor in the relevant antitrust market." *Fla. Seed Co.*, 105 F.3d at 1374; *Atl. Richfield Co. v. USA Pet. Co.*, 495 U.S. 328, 334 (1990). Standing is a question of law that a court determines "by examining the allegations contained in the complaint." *Mun. Utils. Bd. of Albertville v. Ala. Power Co.*, 934 F.2d 1493, 1498 (11th Cir. 1991). When a plaintiff lacks antitrust standing, it fails to plead a plausible claim for relief. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (8th Cir. 2007) (en banc) ("[A]ntitrust standing and Article III standing are not one and the same, and we not only may—but we

17

must—reject claims under Rule 12(b)(6) when antitrust standing is missing.").

The SAC's allegations were wholly inconsistent with the notion that Greenflight participates in the general search engine market. The SAC provided no facts indicating how OkCaller returns any information to a user outside a name or phone number and indeed itself characterizes OkCaller as a "specialized search" website. SAC ¶ 20. That alone forecloses a reasonable inference from this Court that Greenflight had standing to bring its claims. *See Fed. Trad. Comm'n v Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) ("Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury." (citation omitted)).

Alternatively, a plaintiff might have standing—competitor or not—if the alleged harm is "inextricably intertwined" with the injury the monopolistic competitors sought to inflict. *Blue Shield of Va. v. McCready*, 457 U.S. 465, 484 (1982) ("Although [plaintiff] was not a competitor of the conspirators, the injury she suffered was inextricably intertwined with the injury the conspirators sought to inflict on [the

18

relevant] market."). But this requires more than a showing that the plaintiff was "tangentially affected by an antitrust violation." *Id.* at 477. Rather, Greenflight needed to affirmatively plead that OkCaller was used as a "conduit" to harm Google's actual competitors. *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 173, 175 (3d Cir. 2015) (*McCready* requires plaintiff to plead it was used as the "fulcrum, conduit, or market force" to "harm the defendants' actual competitors.").

The district court twice found this legal theory implausible on the face of Greenflight's complaint. There were no allegations plausibly supporting the notion that Google used *OkCaller* to stifle its actual competitors, such as Bing or Yahoo!. And the SAC's vague references to Apple and Google's agreement for default distribution did not get Greenflight "across the line from conceivable to plausible." *Twombly*, 550 U.S. 544 at 570. Greenflight affirmatively pleaded that Google's arrangement with Apple only affects it as a "consumer[] of Google GSE platform"—an injury too remote or incidental to confer standing. SAC ¶ 107; *see McCready*, 457 U.S. at 477 ("It is reasonable to assume that Congress did not intend to allow every person tangentially affected

19

by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property.").

Greenflight fundamentally pleaded "that because it appears lower in the Defendant's search engine results, it has standing to sue." DE 53 at 8. That is clearly not the law. "Were that sufficient, effectively every company in the entire world would have standing to sue the Defendant in antitrust . . . ." *Id.* Greenflight's overt lack of standing infected all five of its claims. *See* DE 65 at 9, 11, 13, 14, 20–21. Summary affirmance of the district court's dismissal of each count is therefore appropriate.

### 2. Greenflight clearly did not plead plausible liability for Counts 3 through 5.

Beyond its failure to establish standing for all of its claims, Greenflight also failed to plausibly allege essential elements of Counts 3 through 5.

As to Count 3, Greenflight asserted a claim against Google for "refusal to Deal in Violation of Section 2 of the Sherman Act." SAC ¶¶ 119–128. For this, Greenflight tried to capitalize on *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 607–611 (1985), where the Supreme Court held that a monopolist's refusal to deal with a prior partner can constitute actionable, exclusionary conduct. But

20

facts supporting the two essential elements of this claim—a prior joint venture and the defendant's refusal to deal—were absent from the SAC.[7] Four decades of law have interpreted *Aspen Skiing* as "at or near the outer boundary of § 2 liability." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004). Greenflight's SAC did not plausibly allege such a narrow circumstance of liability.

Count 4 fares no better. Greenflight alleged that Google has violated California's Unfair Competition Law prohibiting "any unlawful, unfair, or fraudulent business act or practice." *See* Cal. Bus. & Prof. Code § 17200. The unlawful and unfair prongs of this statute bootstrap violations of other laws to make those violations independently actionable under California law. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 187 (1999). But Greenflight did not plausibly allege antitrust violations. And Greenflight's argument that it pleaded a plausible claim by "referenc[ing]" 18 U.S.C. § 1512—the witness tampering statute—could not save the count from dismissal. DE

---

[7] Indeed, the district court noted in its first motion to dismiss that a quick Google search shows that OkCaller still appears in responses. Moreover, the SAC did not allege that OkCaller ever had an agreement with Google to appear at a certain position in Google's search results.

63 at 15; *see Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1022 (N.D. Cal. 2007) (collecting cases) (plaintiff must identify with particularity the provision of the statute violated). Accordingly, Greenflight's unlawful and unfair claims failed.

The fraudulent prong required an allegation that Google deceived the public in violation of a duty to disclose. *Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001). One paragraph in the SAC referenced Google's so-called "fraud": Google "manipulat[es] . . . search rankings to favor its own products." SAC ¶ 132. But allegations of fraud must be pleaded with particularity. *See Casault v. Fed. Nat. Mortg. Ass'n*, 915 F. Supp. 2d 1113, 1129 (C.D. Cal. 2012) (applying heightened pleading standard of Fed. R. Civ. P. 9(b) to UCL claims). Greenflight's single paragraph did not identify the "who, what, when, where, and how" of the allegedly fraudulent misrepresentation. *Omnipol, A.S. v. Multinational Def. Services, LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022). To top it off, Greenflight cited a case that actually confirmed Google has no independent duty to disclose

22

its confidential algorithm. *See* DE 63 (citing *Dreamstime.com, LLC v. Google LLC*, 2022 WL 17427039, at \*2 (9th Cir. Dec. 12, 2022)).

Count 5 alleged that Google maintains an "Illegal Duopoly" over "U.S. Internet Content Access in Violation of Section 2 of the Sherman Act." SAC ¶¶ 142–148. This Court has never recognized such a cause of action for "illegal duopoly." And other courts have held that two firms cannot compromise a "monopoly" under Section 2. *See Midwest Gas Servs., Inc. v. Indiana Gas Co., Inc.*, 317 F.3d 703, 713 (7th Cir. 2003) ("[A] § 2 claim can only accuse one firm of being a monopolist."); *see* DE 65 at 19 ("[T]he Court declines to recognize a claim that ignores the prefix 'mono' in the world monopoly . . . ."). When dismissing this count, the district court noted that Greenflight relied on a quotation that was "either fabricated or hallucinated," going so far as to note its concern that Greenflight pursed the claim solely as a result "of artificial-intelligence-hallucinated legal authority." DE 65 at 19.

At base, all of Greenflight's causes of actions suffered from overt pleading defects beyond its clear lack of standing. The district court noted these failures in two lengthy orders of dismissal, and this Court should summarily affirm. For these same reasons, the Court should

23

summarily affirm the district court's order dismissing Mr. Isaacs's individual claims. DE 69. The court found that Mr. Isaacs's claims were "identical" to those brought by Greenflight, and for all the same reasons warranted dismissal. *Id.*

## II. The District Court Clearly Did Not Err in Denying Plaintiffs' Motions for Reconsideration.

The Court reviews the denial of a motion for reconsideration for abuse of discretion. *Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1285 (11th Cir. 2001). Motions for reconsideration cannot be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005).

Mr. Isaacs moved the district court to reconsider its order of dismissal. In the motion, he cited "significant new developments in analogous litigation." DE 71 at 2. These "significant new developments" were a single district court case from the Northern District of California that declined to dismiss antitrust allegations against Google. *See id.* Greenflight moved to join Isaacs's motion. DE 74. The court denied the

24

request to reconsider its judgment and additionally found that Greenflight's motion was untimely. DE 78.

Denial of a motion for reconsideration when presented with a nonbinding district court opinion is not improper, particularly considering the court already had issued two lengthy orders analyzing and dismissing Greenflight's claims. *See United States v. Cerceda*, 172 F.3d 806, 812 n.6 (11th Cir. 1999) ("The opinion of a district court carries no precedential weight, even within the same district."). Because it is manifestly clear that the district court did not abuse its discretion when denying Plaintiffs' motions for reconsideration, this Court should summarily affirm.

## CONCLUSION

For the foregoing reasons, this Court should summarily affirm the district court's orders of dismissal and order denying reconsideration.

25

Dated: March 6, 2026

Respectfully submitted,

| | |
|---|---|
| /s/ *Kenneth C. Smurzynski*<br>Kenneth C. Smurzynski<br>Mikaela E. Johnson*<br>Williams & Connolly LLP<br>680 Maine Avenue, SW<br>Washington, DC 20024<br>(202) 434-5000<br>ksmurzynski@wc.com<br>amaurer@wc.com<br><br>*Counsel for Defendant-Appellee Google LLC*<br><br>*Admitted only in Texas; practice supervised by D.C. Bar members | Edward M. Mullins<br>Sujey S. Herrera<br>Reed Smith LLP<br>200 South Biscayne Boulevard, Suite 2600<br>Miami, Florida, 33131<br>(786) 747-0200<br>(786) 747-0299 facsimile<br>emullins@reedsmith.com<br>abarton@reedsmith.com<br><br>*Counsel for Defendant-Appellee Google LLC* |

26

## Certificate of Compliance

This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 27(a)(2)(B), this document contains 4974 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Respectfully submitted,

/s/  *Kenneth C. Smurzynski*

*Attorney for Defendant-Appellee Google LLC*

27

## Certificate of Service

I hereby certify that on March 6, 2026, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the Court's Appellate PACER system, which will automatically send a notice of electronic filing to all counsel of record. I also hereby certify that on March 6, 2026, I served a true and correct copy of the foregoing on Appellants Greenflight Venture Corporation and Jeffrey D. Isaacs.

Respectfully submitted,

/s/____*Kenneth C. Smurzynski*__

*Attorney for Defendant-Appellee Google LLC*

28

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-80395-ROSENBERG

GREENFLIGHT VENTURE
CORPORATION & JEFFREY
D. ISAACS, MD,

      Plaintiffs,

v.

GOOGLE LLC,

      Defendant.

_____/

**ORDER GRANTING THE DEFENDANT'S
MOTION TO DISMISS AND ORDER TO SHOW CAUSE**

      **THIS CAUSE** is before the Court on the Defendant's Motion to Dismiss at docket entry

62. The Motion has been fully briefed. For the reasons set forth below, the Motion is granted.

**I.      INTRODUCTION**

      To better explain its ruling to the parties and to provide a good record for appellate review,

the Court commonly begins lengthy orders with an introduction. The purpose of the introduction

is to generally answer the question: What is this case about? Here, the answer to that question is

somewhat complicated. Briefly stated, this case is about a web developer alleging that Google—

the Defendant—has violated federal antitrust laws. But in the Court's judgment, the best way to

introduce its decision is to attempt a narrative summary of the events that gave rise to this case,

even though the events may initially seem irrelevant.

      Plaintiff Jeffrey Isaacs initiated this case *pro se*, and the Complaint contained a detailed

summary of the historical events in Mr. Isaacs's life. Mr. Isaacs previously studied in the field of

medicine, but at some point he lost the ability to pursue a career in that field. DE 1 at 1. Why Mr.

Isaacs was prevented from pursuing medicine is unclear in the pleadings, but Mr. Isaacs describes the basis as including "false disciplinary records" at a California university, and he also cites to prior federal litigation on that topic. *Id.* at 5; DE 61 at 19.  In that federal litigation,[1] Mr. Isaacs alleged that the dean of his school of medicine was corrupt. *Isaacs v. USC Keck School of Medicine*, No. 19-CV-8000, DE 1 at 2 (C.D. Cal. Sept. 16, 2019).  According to Mr. Isaacs, litigation over those allegations of corruption spanned almost two decades and resulted in a settlement agreement. DE 1 at 5; DE 61 at 19.  Mr. Isaacs subsequently alleged in federal court that the university violated the settlement agreement by leaking the details of his eventual expulsion to third parties. *Isaacs v. USC Keck School of Medicine*, 846 F. App'x 519, 520 (2021). The district court dismissed Mr. Isaacs' claims against the university (and his related claims against the board of medicine) and awarded attorney's fees and costs to the defendants. *Isaacs*, 19-CV-8000 at DE 93, 112.  Mr. Isaacs appealed to the Ninth Circuit, and the Ninth Circuit affirmed. *Isaacs*, 846 F. App'x at 520.

How does prior litigation connect to the case before the Court?  In this case, Mr. Isaacs alleges that Google learned about the litigation surrounding his inability to practice medicine. DE 1 at 6-7; DE 61 at 21.  He also alleges that Google used that knowledge to harm him. *Id.*  The Court will discuss the allegations and claims pertaining to Google in greater detail below, but the Court first turns to what Mr. Isaacs did (pursuant to his own allegations) after discontinuing his pursuit of a career in medicine.

---

[1] For the purposes of providing background information, the Court takes judicial notice of the cases Mr. Isaacs references in his original Complaint and operative Second Amended Complaint, *Isaacs v. USC Keck School of Medicine*, 846 F. App'x 519 (2021) and *Isaacs v. USC Keck School of Medicine*, No. 19-CV-8000 (C.D. Cal. Sept. 16, 2019). *See, e.g., Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276-78 (11th Cir. 1999) (noting that courts may take judicial notice at the motion to dismiss stage); *Reed v. Royal Caribbean Cruises Ltd.*, 618 F. Supp. 3d 1346, 1354 (S.D. Fla. 2022) (noting that a court may consider documents referenced in a complaint).

Mr. Isaacs turned to the field of internet technology. DE 1 at 6; DE 62 at 20.  He invented a "corona virus tracking app." *Id.*  When Mr. Isaacs submitted the app to Apple for sale, Apple rejected it on the grounds that any application involving COVID-19 had to be authored by a recognized health entity or medical institution. *Id.*; *Isaacs v. Apple, Inc.*, No. 21-CV-5567 at 3 (N.D. Cal. Nov. 11, 2021).  In response, Mr. Isaacs filed a federal antitrust lawsuit against Apple. *Id.*  The trial judge dismissed the first complaint with prejudice and also denied leave to amend, noting that Mr. Isaacs' counsel (who is also counsel in the case before this Court) had filed at least eight similar complaints against Apple across various jurisdictions. *Isaacs*, 21-CV-5567, DE 85. Mr. Isaacs appealed, and the Ninth Circuit affirmed. *Isaacs v. Apple, Inc.*, 85 F.4th 948 (2023).

Like the litigation about Mr. Isaacs' medical credentials, Mr. Isaacs alleges in the case before this Court that Google learned about the litigation with Apple, and that Google used that information to harm him. DE 61 at 20.  In the Court's recounting of the narrative underpinning this case, however, it is still not time to talk about Google.  Instead, the Court turns to Mr. Isaacs' other activities in the field of internet technology.

Mr. Isaacs obtained a patent for "reverse phone search technology." *Id.* at 2.  As the Court understands it, Mr. Isaacs' patent allowed for a user to input a phone number into an application and learn the identity of the caller. *See id.* at 2-3.  After Mr. Isaacs contended that another reverse phone search company—Whitepages—was infringing upon his patent, Whitepages filed suit to invalidate Mr. Isaacs' patent. *Whitepages, Inc. v. Isaacs*, No. 16-CV-175 (N.D. Cal. Jan. 11, 2016). The trial court agreed, granted judgment as a matter of law in favor of Whitepages, and invalidated Mr. Isaacs' patent. *Id.* at DE 48.  Mr. Isaacs appealed, and the Federal Circuit affirmed. *Whitepages, Inc. v. Greenflight Venture Corp.*, 698 F. App'x 613, 614 (2017).  Mr. Isaacs initially filed his suit in this Court on the premise that Google was infringing upon his invalidated patent

3

and upon claims that the United States Patent and Trademark Office refused to reissue. *See* DE 16 at 13.   After this Court twice dismissed Mr. Isaacs' patent infringement claims, however, Mr. Isaacs abandoned the claims. DE 61.  One final topic remains before the Court turns to a discussion of Mr. Isaacs' remaining, active claims against Google: how the case before this Court (as a matter of procedural history) came to be.

Mr. Isaacs recently entered into a contract to sell his home in Florida. *Isaacs v. Keller Williams Realty, Inc.*, 23-CV-81393 at page 2 (S.D. Fla. Apr. 17, 2024).  Mr. Isaacs refused to close on the sale, however, "due to the war in Ukraine." *Id.*  In light of the failure to close, Mr. Isaacs' realtor sued for commission in Florida state court. *Id.*  In response to that lawsuit, Mr. Isaacs filed a lawsuit in federal court, assigned to the undersigned, where he sued his realtor for violating the Racketeer Influenced Corrupting Organization Act, or RICO. *Id.* at DE 1.  However, Mr. Isaacs issued a subpoena (through his current counsel) not to the realtor or any party related to the real estate transaction, but to Google. *Isaacs v. Keller Williams Realty, Inc.*, 24-MC-80086 (S.D. Fla. Jan. 17, 2024).  Mr. Isaacs' basis for the subpoena was that he was forced to keep his home (and not sell) because Google had wronged him. *See* 23-CV-81393 at DE 117, page 2.

Google filed a motion to quash the subpoena in California federal court, which was in turn transferred to this District and assigned to the undersigned.  While litigation over the propriety of the subpoena was pending, Mr. Isaacs filed the suit before this Court against Google, alleging that Google was infringing upon his patent. DE 1.

While Mr. Isaacs was litigating the validity of his patent *pro se* in this case, two things happened to fundamentally alter the litigation.  First, Google put Mr. Isaacs on notice that the only party with standing to sue over the patent was Mr. Isaacs' solely owned entity—Greenflight Venture Corporation—and that a corporation can only be represented by counsel.  Second, Google

lost (at the trial level) in an antitrust case brought by the United States. *United States v. Google LLC*, No. 20-CV-03010, DE 1033 at 6-7 (D.C. Aug. 5, 2024).[2]  As a result, Mr. Isaacs retained the same counsel he used in prior litigation, and that counsel filed antitrust claims against Google on behalf of Greenflight, citing the *United States v. Google* case as precedent and calling his claims "verbatim" copies of that litigation.  Because Mr. Isaacs later abandoned his patent claims, however, this case is limited to antitrust.  The Court now turns to Mr. Isaacs' allegations against Google.

Around the time Mr. Isaacs obtained his patent but before the patent was invalidated, Mr. Isaacs created the website "OkCaller." DE 61 at 10-20.  OkCaller used the technology described in the patent—it allowed users to reverse lookup phone numbers. *Id.*  During the early years of its inception, OkCaller received millions of views. *Id.* at 15-16.  At some point in the year 2017, OkCaller's views began to decline. *Id.* at 15.  In late 2022, OkCaller's views dropped to zero, or near zero. *See id.* at 17.

Mr. Isaacs attributes this precipitous drop in views to Google learning about his medical license litigation and his litigation with Apple. *Id.* at 20.  Once Google obtained that knowledge, Mr. Isaacs alleges, Google felt threatened and used its monopolistic power to retaliate against Mr. Isaacs by reducing the flow of internet traffic to OkCaller. *See id.* at 19-22.

This is therefore an antitrust case, brought by a reverse phone number lookup website against Google.  But to bring an antitrust claim against one of the largest internet companies in the world is no small thing.  As the Court explained in a prior order of dismissal, case law limits who can bring antitrust claims. DE 53 at 2-4.  Broadly summarized, because the Plaintiffs (both

---

[2] It is of course possible that it is a coincidence that Google lost an antitrust case eight days before Mr. Isaacs brought his own antitrust claims against Google.

Greenflight and Mr. Isaacs) did not plausibly allege that Greenflight was a competitor[3] to Google, the Court previously dismissed the Plaintiffs' antitrust claims. *See id.* at 19.

This Order analyzes the legal sufficiency of Greenflight's final amended pleading, the Second Amended Complaint. The central question is whether OkCaller—which is owned by Greenflight—can bring an antitrust claim against Google, with Mr. Isaacs' litigious past serving as the backdrop to substantiate Google's intent to harm. The Court answers that question in the negative; for the same reasons the Court dismissed Greenflight's antitrust claims in the past, the Court does so again.

## II.     ANALYSIS

The Court begins its analysis with **(A)** a procedural ruling on the content of Greenflight's response to Google's motion to dismiss. The Court subsequently analyzes Google's motion to dismiss on a count-by-count basis **(B) – (F)**. The Court then enters **(G)** an order to show cause to Mr. Isaacs and addresses **(H)** its denial of further leave to amend.

For ease of discussion in this Order, the Court considers Greenflight to be synonymous with OkCaller.

### A.  Greenflight's Response to the Motion to Dismiss

The Court has entered three prior orders dismissing Plaintiffs' claims in this case, giving the Court sufficient opportunity to review substantial motion practice. DE 26, 53, 58. Based upon that review, the Court makes one broad observation. Google consistently makes focused, targeted arguments on what Google contends are legal insufficiencies in the Plaintiffs' pleadings.

---

[3] To clarify, this is not an antitrust case about a *customer* of Google. Instead, this is a case about an alleged *competitor* of Google. Greenflight repeatedly refers to itself as a competitor (using the word 28 times in the Second Amended Complaint) and it also relies upon a recent antitrust case that focused on Google's competitors. *E.g.,* DE 63 at 8 ("The SAC alleges that OkCaller is not merely a passive recipient of traffic, but a prospective or nascent competitor in general search if provided fair access to indexing data."). Recent cases in other courts have highlighted how difficult it would be for customers of Google search (which is free) to bring antitrust claims. *See Arcell v. Google LLC*, No. 22-CV-02499 (N.D. Cal. Aug. 9, 2024).

Greenflight's response to Google's focused arguments is consistently an incoherent collection of technical jargon and legal phrases.[4]  In the Court's opinion, Greenflight's response is so incoherent that Greenflight has failed to meet its obligation to respond to the cogent points raised in Google's motion.  Under the Local Rules of this District, a failure to refute means that the respondent has waived a defense. *See Carter v. BPCL Mgmt.*, No. 19-cv-60887, 2021 WL 7502562, at *1 (S.D. Fla. Sept. 22, 2021) (holding that failure to refute opposing arguments "operates as a waiver of those arguments and is akin to a failure to respond"); *Sanz v. Am. Soc'y of Composers & Publishers,* No. 18-cv-24504, 2019 WL 13237013, at *5 (S.D. Fla. Aug. 7, 2019) (finding that a plaintiff "effectively conceded" a claim when he "chose not to address" the defendant's arguments on that claim in a motion to dismiss). Below, the Court sets forth a concrete example of Greenflight's failure to respond.

As will be discussed in greater detail, Google argues that Greenflight has failed to plead that it competes in the same market as Google—the general search services market.  The Court would expect that Greenflight, in its response, would either (i) concede it has not pled the same or (ii) identify where, in its pleading, that it *has* alleged it directly competes with Google.  Greenflight does neither.  Instead, Greenflight responds in part with the following argument:

> Plaintiffs, as direct users of Google's Webmaster Tools (GWT) and overall GSE services, plead that they have no meaningful alternative for distribution, making them effectively consumers of Google's platform. Even if they are not themselves offering general search querying, they suffer inextricably intertwined injury from Google's alleged manipulation and self-preferencing. Because market power in GSE allows Google to withhold or degrade distribution, the alleged harm— OkCaller's dramatic traffic decline—flows directly from conduct in that market.
>
> The Supreme Court in *Brown Shoe* recognized that market definition and the effects of alleged monopolistic behavior often involve intricate factual inquiries (e.g., cross-elasticities of demand, distribution channels, barriers to entry). Here, Plaintiffs' theory rests on facts—such as behind-the-scenes ranking changes, data

---

[4] The Court previously observed and referenced the Plaintiff's use of incoherent jargon in a prior order of dismissal. DE 53 at 13.

indexing decisions, exclusive default agreements, and new to the SAC – whether GWT is part of the GSE platform.

DE 63 at 7-8 (case citations omitted).  The Court simply cannot discern what this text is intended to convey—how the text refutes Google's cogent argument.  Notably, the quoted text contains no citations to Greenflight's Second Amended Complaint.  That is the case for most of Greenflight's response—pleading citations are scarce—and when Greenflight does provide a citation, the Court fails to see how the cited allegation is responsive to Google's arguments.

The Court's discussion on this topic is not intended to malign or impugn Greenflight or Greenflight's counsel; antitrust is a complex area of the law, and it can be a difficult task to clearly communicate antitrust legal principles to the Court.  The Court's discussion on this topic is instead intended to explain its conclusion, referenced below in its analysis,[5] that Greenflight has failed to substantively respond to various arguments raised by Google in its motion to dismiss.

**B. Count I, styled as "Maintaining Monopoly of General Search Engines in Violation of Sherman Act § 2 (DOJ Verbatim Cause of Action)"**

Greenflight's first count seeks to hold Google liable in antitrust for maintaining a monopoly in the market of "general search engine services." DE 61 at 44.  According to Greenflight, general search engine services "enable users to retrieve responsive information from the internet by entering keyword queries." *Id.* at 27.  A key characteristic of these services is that a user can search for essentially anything. *See id.*  Also according to Greenflight, there is no substitute for general search engine services. *Id.*  Example general search engine services are Google, Bing, and DuckDuckGo. *Id.*

---

[5] The Court's conclusion that Greenflight's response is non-responsive is limited to Count I and Count II. Greenflight's responses as to Counts III through V are at least sufficiently clear that the Court believes Greenflight has complied with the Local Rules.

For Greenflight to bring an antitrust claim against Google for a monopoly in the general search engine services market, Greenflight must be a market participant (here, a competitor) in that market. *Fla. Seed Co., Inc. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997).  Just like Google's prior motion to dismiss, Google argues in the present motion to dismiss that Greenflight has not plausibly alleged that it is a competitor in the general search engine services market.

Greenflight's Second Amended Complaint does contain the words: "Plaintiffs are competitors [with Google]." DE 61 at 44.  But that is a legally conclusory allegation that is not accepted as true at the motion to dismiss stage. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))).  What Greenflight must do is allege sufficient facts such that this Court may conclude that Greenflight's claim is plausible on its face. *E.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On this point, Google's motion to dismiss is persuasive.  OkCaller merely returns information about a phone number. DE 61 at 4-5.  OkCaller does not allow a user to search for, essentially, anything.  Google therefore argues that Greenflight has failed to allege any facts upon which this Court could find that Greenflight may plausibly be inferred to be a competitor in the general search engine services market.

Greenflight's answer to this point, as discussed above in Section **A**, is sufficiently incoherent to be non-responsive.  For that reason alone, Google's motion is due to be granted.  The Court has nonetheless endeavored to make its best guess why Greenflight contends that it has plausibly alleged it is a competitor in the market of general search engines.  The Court's best guess is that Greenflight relies upon four theories.

First, Greenflight alleges that it is a competitor with Google because it makes use of certain tools that Google provides called "Google webmaster tools." *Id.* at 27, 28. Based upon that allegation, Greenflight argues, "Plaintiffs, as direct users of Google's Webmaster Tools and overall GSE services, plead that they have no meaningful alternative for distribution, making them effectively consumers of Google's platform." DE 63 at 6. But this is not a case about the webmaster tools market—Greenflight has chosen to allege that Google has a monopoly in general search services. The Court fails to see how Greenflight's use of a tool that *influences*[6] Google's search engine renders Greenflight a plausible competitor in the area of general search services.

Second, Greenflight alleges that it is a competitor with Google because of "[proposed] DOJ and [active] EU regulations to permit competing developers access to Googlebot data." DE 61 at 44. If what Greenflight means is that governmental regulations allow for it to access Google data, that fact does not transform OkCaller from a reverse phone lookup service to a general search engine service. After all, Greenflight also alleges the commonsense observation that to become a general search engine (like Google) a company must possess "significant capital, highly complex technology, access to effective distribution, and adequate scale." *Id.* at 29. But Greenflight alleges that it possesses none of those things. Instead, it alleges that a governmental regulation (might) allow it access to Google data. That does not make Greenflight's status as a Google competitor plausible.

Third, Greenflight alleges that it would have become a valid competitor with Google, had Google not exercised improper monopoly power over the general search services market in the

---

[6] If one's *influence* on or *use of* Google's search engine results was sufficient to confer antitrust standing to sue Google as a *competitor*, the Court believes that every person who has ever posted something on the internet (or typed something into Google search) has standing to sue Google as a competitor. That simply cannot be the law, and courts have limited those who may sue in antitrust for a reason. *See Fed. Trad Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) ("Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury.").

past. *See* DE 63 at 8.  The Court addressed this argument in a prior dismissal, and it found that nothing in the First Amended Complaint could be said to plausibly suggest that OkCaller, a reverse phone number website, could have ever had (or has) the ability to compete with Google in the market of general search services. DE 53 at 6.  Nothing in the Second Amended Complaint alters the Court's prior conclusion on this subject.  Simply stated, if OkCaller could be said to have had the potential to grow into a Google competitor, every website on the internet with a search bar could say the same—every website on the internet with a search bar could sue in antitrust as a competitor to Google.  The Court declines to conclude that OkCaller could plausibly be inferred to have the potential to challenge Google as a competitor in the market of general search services.

Fourth, Greenflight alleges that it has standing, competitor or not, under the case of *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982).  The Court addressed that argument at great length in a prior dismissal. DE 63 at 2-6.  The Court declines to do so a second time.  Suffice it to say that for Greenflight to have standing under *McCready*, Google must have used Greenflight as a conduit to harm its true competitors, such as Bing. *Id.*  That is not this case.  For all of the reasons the prior complaint did not qualify for standing under *McCready*, the Second Amended Complaint also does not qualify.

In summary, for all of the reasons set forth above, for all of the reasons outlined in the Court's prior order of dismissal, and for all of the reasons in Google's motion and reply (which are incorporated and adopted into this Order), the Court dismisses Count I.

C. **Count II, styled as "Maintaining Sherman Act § 1 Unreasonable Restraints of Trade in the GSE, VSP, and Directory Services, Internet Access, and Google Single-Brand Content Markets"**

Greenflight's Count II is brought under Section 1 of the Sherman Act.  For such a claim to be cognizable, a plaintiff must allege an agreement between two or more persons that unreasonably

restrains trade. *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1545 (11th Cir. 1996). It is not enough, however, that a plaintiff is affected by the anticompetitive agreement. *Nat'l Indep. Theater Exhibitors, Inc. v. Buena Vista Distrib. Co.*, 748 F.2d 602, 608 (11th Cir. 1984). The plaintiff must instead be the *target* against which anticompetitive activity is directed. *Id.* Additionally, the injury the plaintiff experiences must be "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' act unlawful." *Id.* Non-cognizable injuries that are incidental or remote do not give a plaintiff antitrust standing. *Id.* Of course, not only does a plaintiff have to allege the foregoing, but the plaintiff must do so in a way that satisfies federal pleading standards.

In its motion to dismiss, Google argues that Greenflight fails to identify an anticompetitive agreement, fails to explain how the agreement targeted Greenflight, and fails to explain how it was harmed from the agreement. Greenflight's response to Google's arguments is sufficiently incoherent that the Court concludes it is non-responsive, as previously discussed in Section **A**, and Google's motion is due to be granted on that basis alone. In the alternative, the Court has done its best to guess what Greenflight's counterarguments are.

What is the Anticompetitive Agreement?

As best as the Court can discern, Greenflight believes that federal pleading standards do not require it to identify a noncompetitive agreement. By way of example, Greenflight argues the following: "Although unilateral conduct is generally not actionable under Section 1, the courts recognize that even tacit or implicit understandings may suffice if pleaded with factual support suggesting 'a meeting of the minds' to restrain trade." DE 63 at 10. Greenflight's Second Amended Complaint also contains references to "implicit understandings." DE 61 at 46. In lieu

12

of the identification of an agreement, Greenflight requests discovery approximately one dozen times.

Greenflight's Count II does not satisfy federal pleading standards; without knowing what the agreement is, the Court cannot analyze whether Greenflight was the target of the agreement. Vague and conclusory allegations about anticompetitive agreements are not sufficient to satisfy federal pleading standards. *See Lombard's Inc. v. Prince Mfg. Inc.*, 583 F. Supp. 1572, 1573-74 (S.D. Fla. 1984), *aff'd*, 753 F.2d 974 (11th Cir. 1985).

<u>Was Greenflight Targeted by an Anticompetitive Agreement?</u>

Because the Court does not know what the anticompetitive agreement in this case is alleged to be, it is difficult for the Court to analyze whether Greenflight has plausibly alleged it was the target of an anticompetitive agreement. As best as the Court can discern, however, Greenflight alleges some sort of agreement between Google and Apple. DE 61 at 11. The Court understands how Greenflight could allege the existence of an agreement between Google and Apple to restrain trade in the general search services market—that was the subject of the recent antitrust decision brought by the United States. *See United States v. Google LLC*, No. 20-CV-03010, DE 1033 at 6-7 (D.C. Aug. 5, 2024). The Court similarly understands how such an agreement could be alleged to directly target other companies in the general search services market, or companies trying to enter the general search services market. What the Court does not understand is how an agreement between Google and Apple could plausibly be alleged to target OkCaller. Stated differently, any injury to OkCaller that flowed from an agreement between Google and Apple would be incidental or remote at best. Nothing in the Second Amended Complaint persuades the Court otherwise.

For the reasons set forth above and in the Court's prior order of dismissal, Count II is dismissed. There are also other grounds upon which Count II is ripe for dismissal that the Court

has not discussed given the already lengthy nature of this Order.  Instead, the Court also dismisses Count II for each of the reasons set forth in Google's motion to dismiss and reply, which the Court adopts and incorporates into this Order.

### D. Count III, styled as "Refusal to Deal in Violation of Section 2 of the Sherman Act (*Aspen Skiing Co. v. Aspen Highlands Precedent*)"

Greenflight's third count is an antitrust claim intended to be premised upon the legal standard created in a Supreme Court case, *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985).  The Court addressed this count at length in its prior order of dismissal, and the Court declines to do so a second time. DE 53 at 11-12.  Suffice it to say that an *Aspen Skiing* claim would require Greenflight to (among other things) plausibly allege that it previously entered into a joint venture with Google.  This Greenflight has not done.  Count III is dismissed for all of the reasons described in the Court's prior of dismissal, as there is no meaningful difference between the First and Second Amended Complaints, and for all of the reasons set forth in Google's present motion and reply, which the Court adopts and incorporates into this Order.

### E. Count IV, styled as "Violation of California's Unfair Competition Law (Cal. Bus & Prof. Code §§ 17200, et seq)"

Greenflight's Count IV is premised upon California state law, which prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  Each prong is a distinct theory of liability. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  Because Greenflight contends that it has brought a claim under each prong in Count IV, the Court analyzes each prong separately.

#### 1. The Unlawful Prong

The unlawful prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Loss*

14

*Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citing *State Farm Fire & Cas. Co. v. Superior Ct.*, 45 Cal. App. 4th 1093, 1103 (1996)). Google therefore argues that: (i) Greenflight's "unlawful" claim is premised upon alleged violations of federal antitrust law (Counts I through III), but because (ii) those claims are ripe for dismissal (iii) Greenflight's Count IV is also ripe for dismissal.

In response, Greenflight argues that its Count IV is premised upon other sorts of alleged violations of the law, citing vague references to the same in the Second Amended Complaint. Implicit within Greenflight's argument is that vague references are sufficient for an "unlawful" prong claim, but that is wrong: "[T]he plaintiff bringing a claim based on the unlawful prong must identify the particular section of the statute that was allegedly violated, and must describe with reasonable particularity the facts supporting the violation." *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1022 (N.D. Cal. 2007). Other than the federal antitrust counts in the Second Amended Complaint, Greenflight has not identified claims or facts with reasonable particularity that could support an unlawful prong claim.[7] For these reasons as well as the additional reasons set forth in Google's motion and reply, which the Court adopts and incorporates in this Order by reference, Count IV is dismissed.

### 2. The Fraudulent Prong

For a claim to be cognizable under the fraudulent prong, Greenflight must allege a deception by Google against members of the public. *Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001). To plead its claim, Greenflight relies upon the allegation that Google fraudulently markets itself as a neutral company, but that it manipulates its search rankings in a misleading way that is not neutral. DE 61 at 51. Google argues that

---

[7] For the same reasons, Greenflight's vague references to other violations of the law cannot form the basis of liability under other prongs of the California Business Code.

Greenflight cannot cite to any authority to show that it has a duty to disclose to members of the public how it ranks its search results.

In response, Greenflight provides no citation to authority for the proposition that Google has a duty to disclose how it generates its search results. Instead, Greenflight's cited authority may even stand for the opposite proposition—that Google has no duty to disclose under California law. *See Dreamstime.com, LLC v. Google LLC*, No. 20-16472, 2022 WL 17427039, at *2 (9th Cir. 2022) ("Google had no affirmative duty under the parties' agreement to disclose its confidential algorithmic revision.").[8] Count IV is therefore ripe for dismissal. *See Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006) ("We cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is 'likely to deceive' anyone within the meaning of the UCL."). For these reasons as well as the additional reasons raised in Google's motion and reply, which the Court adopts and incorporates into this Order by reference, Count IV is dismissed.

### 3. The Unfair Prong

Google argues that Greenflight's claim under the "unfair" prong should be dismissed for two reasons: (i) the overlap of Count IV with Greenflight's federal antitrust claims and (ii) the overlap of any "unfair" claim with Greenflight's "unlawful" and "fraudulent" claims. Each is addressed in turn.

<u>Overlap with the Federal Antitrust Claims</u>

The Supreme Court of California has recognized that a prohibition on "unfair" conduct is an "amorphous" concept that provides "too little guidance to courts and businesses." *Cel-Tech*, 20

---

[8] The Court notes that if Google had a duty to disclose its internal algorithms under California law, the appellant in *Dreamstime* would presumably have had no need to cite to the parties' contract for the alleged duty, as the appellant could have instead relied upon California law, generally.

16

Cal. 4th at 185.  As a result, the California Supreme Court tied the concept of unfairness, at least

for the purposes of the case before this Court, to antitrust violations:

> These principles convince us that, to guide courts and the business community adequately and to promote consumer protection, we must require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition. We thus adopt the following test: When a plaintiff who claims to have suffered injury from a direct competitor's "unfair" act or practice invokes section 17200, the word "unfair" in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

*Id.* at 186-87.  Here, every factual allegation that Greenflight incorporates into Count IV is also

incorporated into the federal antitrust counts: Counts I through III.  The Court's review of Count

IV confirms that the factual predicate of Count IV is effectively the same as the antitrust counts.

*E.g.,* DE 61 at 50.  The Court is therefore persuaded by Google's argument that because Counts I

through III are ripe for dismissal, Count IV is ripe for dismissal as well.

Overlap with the "Unlawful" and "Fraudulent" Claims

California courts have held that where alleged unfair business practices overlap entirely

with the other prongs of the California Business Code, claims under the unfair prong cannot

survive. *E.g., Hadley v. Kellogg Sales Company*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017).

Here, Count IV commingles claims under all three prongs—the same factual predicate underscores

all three prongs.

Upon review, the Court is unable to construe a meaningful, unique factual predicate for an

"unfair" type of claim for Count IV.  The Court is also unable to construe a meaningful, unique

legal basis for Count IV; indeed, Greenflight's Count IV repeatedly references Google's alleged

status as a monopolist. DE 61 at 51.  The Court is therefore persuaded by Google's argument that

17

because Greenflight's unlawful and fraudulent claims are ripe for dismissal, the unfair claim is also ripe for dismissal.

For these reasons as well as the additional reasons raised in Google's motion and reply, which the Court adopts and incorporates into this Order by reference, Count IV is dismissed.

### F. Count V, styled as "Illegal Duopoly Control of the U.S. Internet Content Access in Violation of Section 2 of the Sherman Act"

In Count V, Greenflight seeks to bring an antitrust "duopoly" claim against Google and Apple for "dominat[ing] all meaningful channels" of the internet. This claim is ripe for dismissal for two reasons, each of which is delineated in **bold** below.

**First**, the Eleventh Circuit has never recognized a Section 2 antitrust claim for a "duopoly," and many courts have rejected the concept as a matter of law. *See JES Props., Inc. v. USA Equestrian, Inc.*, No. 802CV1585T24MAP, 2005 WL 1126665, at *18 (M.D. Fla. May 9, 2005), *aff'd on other grounds*, 458 F.3d 1224 (11th Cir. 2006). Indeed, the weight of authority is strong that monopoly means one, not two. *Midwest Gas Servs., Inc. v. Indiana Gas Co., Inc.*, 317 F.3d 703, 713 (7th Cir. 2003) ("[A] section 2 claim can only accuse one firm of being a monopolist.").

In response, instead of conceding the lack of legal authority for its claim, Greenflight relies upon a quotation that is either fabricated or hallucinated. More specifically, Greenflight cites to a seminal case on antitrust law, *American Tobacco Co. v. United States*, 328 U.S. 781 (1946). Greenflight quotes from *American Tobacco*: "The power that controls the market by destroying competition . . . is a monopoly . . . though it be shared by three persons acting in concert." DE 63 at 9. That quotation does not appear in *American Tobacco*, and the text of the opinion does not lend support to Greenflight's quotation. The Court was similarly unable to locate the quotation (or even portions of the quotation) anywhere inside the entirety of the Westlaw database. Google was unable to locate the source of the quotation as well. As a result, the Court is concerned that

18

Greenflight's quotation may be the result of Greenflight's usage of artificial-intelligence-hallucinated legal authority. *See* Varun Magesh, *AI on Trial: Legal Models Hallucinate*, https://hai.stanford.edu/news/ai-trial-legal-models-hallucinate-1-out-6-or-more-benchmarking-queries (May 23, 2024) (noting that artificial intelligence programs can hallucinate incorrect answers to legal questions 58 to 82 percent of the time). In any event, the Court declines to recognize a claim that ignores the prefix "mono" in the word monopoly, has been rejected by courts as a matter of law, and has not been recognized by Eleventh Circuit, all based upon a quotation that does not exist.

**Second**, for all of the reasons Greenflight lacks standing to sue Google as a competitor for "general search services" in Count I, Greenflight also lacks standing to sue Google as a competitor for "smartphone app *distribution*." DE 61 at 54 ("Apple controls the lion's share—approximately 80%—of . . . smartphone app distribution, while Google, with its dominance in general web search, commands the remaining 20%."). Stated differently, while Greenflight may have plausibly alleged that it can create smartphone applications, it has not plausibly alleged that it is a competitor with Google in the market of smartphone app distribution.

For all of the reasons set forth above and in Google's motion and reply, which the Court adopts and incorporates into this Order, Count V is dismissed.

### G. Order to Show Cause

The Court construes the Second Amended Complaint as bringing claims not only on behalf of Greenflight, but also on behalf of *pro se* Plaintiff Jeffrey Isaacs. DE 61 (referencing Plaintiffs, plural, and also containing a *pro se* signature). The Court previously stayed all claims brought *pro se*. DE 26 at 2. Before dismissing any *pro se* claims, however, the Court will utilize an order to show cause process. *Pro se* Plaintiff Jeffrey Isaacs is **ORDERED** to **SHOW CAUSE** by

19

**February 10, 2025**, why his *pro se* claim(s) should not be dismissed for the same reasons Greenflight's (identical) antitrust claims were dismissed.  Mr. Isaacs' response shall be no greater than ten pages, double spaced, with twelve-point font and one-inch margins.

### H.  Leave to Amend

This case has been pending for almost one year, and the Plaintiffs have had adequate opportunity to amend.  Further opportunities to amend would amount to unfair prejudice on Google, and the Court is also persuaded that, in any event, further amendment would be futile. *See*, *e.g., Bloom v. Alvereze*, 498 F. App'x 867, 884 (11th Cir. 2012) ("After a district court grants an opportunity to amend and identifies the pleading's deficiencies, if the plaintiff fails to submit a proper pleading, dismissal with prejudice is appropriate.").  Further leave to amend in this case is denied, and the Court's dismissal of Greenflight's claims is therefore without leave to amend.

### III.    Ruling

The Eleventh Circuit has observed that: "[a]ntitrust standing is best understood in a general sense as a search for the proper plaintiff to enforce the antitrust laws." *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1448 (1991) (citing *Cargill, Inc. v. Monfort, Inc.*, 479 U.S. 104, 110 n.5 (1986)).  If this were a case about the proper standing for a *consumer* of Google search to enforce antitrust laws, this Court would likely have (as other courts have had) greater difficulty in reaching its decision. *See Arcell v. Google LLC*, No. 22-CV-02499 (N.D. Cal. Aug. 9, 2024) (grappling with the question of whether certain consumers may sue Google in antitrust). The analysis would be more difficult because Google search is (for the most part) free, and it is also a ubiquitous product that so much of the world consumes.  But this is a case about an alleged *competitor* to Google search, and OkCaller is not the proper party to sue Google as a competitor.  Although Greenflight makes much of the lawsuits in Mr. Isaacs' past and its allegation that Google learned

20

of Mr. Isaacs' lawsuits shortly before the drop in OkCaller traffic, that does not transform OkCaller into a competitor of Google search.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Google's Motion to Dismiss [DE 62] is **GRANTED** as to Greenflight's claims.  All of Greenflight's claims are therefore **DISMISSED WITHOUT LEAVE TO AMEND**.  The Court may exercise its case management discretion to summarily deny future motion practice (such as a motion for reconsideration) without explanation.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 4th day of February, 2025.

Copies furnished to:                                          ROBIN L. ROSENBERG
Counsel of record                                            UNITED STATES DISTRICT JUDGE

# EXHIBIT B

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### Southern District of Florida

**Notice of Electronic Filing**

The following transaction was entered on 2/14/2025 at 2:06 PM EST and filed on 2/14/2025

| | |
|---|---|
| **Case Name:** | Isaacs v. Google LLC |
| **Case Number:** | 9:24-cv-80395-RLR |
| **Filer:** | |

**WARNING: CASE CLOSED on 07/02/2024**

**Document Number:** 69(No document attached)

**Docket Text:**
**PAPERLESS ORDER. Upon review of the filing at docket entry 68 and pursuant to the Court's order to show cause at docket entry 65, the Court dismisses pro se Plaintiff Jeffrey Isaacs's claims for the same reasons the Court previously dismissed the (identical) claims brought by Plaintiff Greenflight. This case is hereby closed. Signed by Judge Robin L. Rosenberg (bkd)**


**9:24-cv-80395-RLR Notice has been electronically mailed to:**

Aaron P. Maurer     amaurer@wc.com

Ana Maria Barton     abarton@reedsmith.com, 5126@ecf.pacerpro.com, ana-barton-0901@ecf.pacerpro.com, docampo@reedsmith.com, jlago@reedsmith.com, rsalldocketing-gsp@reedsmith.com

Ayelet Gaito Faerman     ayelet@faerman.law

Edward Maurice Mullins     emullins@reedsmith.com, docampo@reedsmith.com, docketingecf@reedsmith.com, edward-mullins-2180@ecf.pacerpro.com, jlago@reedsmith.com, lcardona@reedsmith.com

Erika H. Warren     erika@warrenkashwarren.com

Keith A Mathews     keith@awplegal.com

Kenneth Smurzynski     ksmurzynski@wc.com

Madeline A. Woodall     madeline@warrenkashwarren.com

Matthew S. Warren     matt@warrenkashwarren.com

Sujey Scarlett Herrera     sherrera@reedsmith.com, bhernandez@reedsmith.com, docampo@reedsmith.com, docketingecf@reedsmith.com, latasha-cardona-4703@ecf.pacerpro.com, sujey-herrera-9348@ecf.pacerpro.com

**9:24-cv-80395-RLR Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1-888-318-2260.:**

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 9:24-cv-80395-KMM

DR. JEFF ISAACS, *et al*,

      Plaintiffs,

v.

GOOGLE LLC,

      Defendant.

_____/

**<u>ORDER</u>**

THIS CAUSE came before the Court upon Plaintiff Jeffrey Isaacs' ("Isaacs") *pro se* Motion to Alter or Amend ("Alter Motion" or "Alter Mot.") (ECF No. 71) and Plaintiff Greenflight Venture Corporation's ("Greenflight") Motion to Join and Support Conformed Rule 59 Judgment. ("Conform Motion" or "Conform Mot.") (ECF No. 74).  Defendant Google LLC ("Defendant") filed its Opposition to Jeffrey Isaacs' Motion to Amend or Alter Judgment ("Resp.") (ECF No. 73), and its Opposition to Greenflight's Motion to Conform.  (ECF No. 76).  Isaacs did not file a reply, but Greenflight filed a Reply in Support of Conformed Rule 59 Judgment.  (ECF No. 77). The Motions are now ripe for review.  As set forth below, the Court DENIES both Motions.

## I.  BACKGROUND

Judge Robin L. Rosenberg[1] laid out a thorough overview of this case's factual background in her Order Granting Defendant's Motion to Dismiss and Order to Show Cause.  ("Rosenberg Order I") (ECF No. 65) at 1–6.  The Court nevertheless provides a brief background of facts most relevant to the disposition of the instant Motions.

---

[1] The above-styled case was reassigned to this Court on August 18, 2025.  (ECF No. 72).

Isaacs sued Defendant for infringing upon his patent on April 1, 2024. (ECF No. 1). Isaacs abandoned his patent claim, however, and filed antitrust claims against Defendant together with Greenflight. (ECF No. 24). After Plaintiffs' First Amended Complaint was dismissed in part, (ECF No. 53), Plaintiffs filed their Second Amended Complaint on December 17, 2024. ("SAC") (ECF No. 61). Therein, they brought five claims for relief, including four for antitrust violations under the federal Sherman Act and one under California's Unfair Competition Law ("UCL"). *Id.* ¶¶ 103–48.

On February 4, 2025, Judge Rosenberg dismissed all of Greenflight's claims without leave to amend, noting that "[t]he Court may exercise its case management discretion to summarily deny future motion practice (such as a motion for reconsideration) without explanation." *See generally* Rosenberg Order I. She also ordered Isaacs to show cause "why his *pro se* claim(s) should not be dismissed for the same reasons" that Greenflight's were. *Id.* at 19–20. On February 14, 2025, Judge Rosenberg dismissed Isaacs' claims in a Paperless Order "for the same reasons the Court previously dismissed the (identical) claims brought by Plaintiff Greenflight." ("Rosenberg Order II") (ECF No. 69).

On August 11, 2025, Isaacs filed the Alter Motion pursuant to Federal Rule of Civil Procedure 59(e), regarding Rosenberg Order II. *See generally* Alter Mot. Greenflight then filed its Motion on August 31, 2025, seeking to join Isaacs' Motion and asking the Court, in ruling on Isaacs' Motion, to also alter the dismissal as to Greenflight, in order to "conform[] relief to all parties whose rights are governed by the same dismissal." *See generally* Conform Mot.

## II.   LEGAL STANDARD

"The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." *In re Kellogg,* 197 F.3d 1116, 1119 (11th Cir. 1999). "[A] Rule

2

59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington, Fla.,* 408 F.3d 757, 763 (11th Cir. 2005); *Jacobs v. Tempur-Pedic Intern., Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010) ("Reconsidering the merits of a judgment, absent a manifest error of law or fact, is not the purpose of Rule 59.").

## III.   DISCUSSION

Isaacs argues that the Court should reconsider the prior Orders because the United States District Court for the Northern District of California denied Google's motion to dismiss in *Yelp Inc. v. Google LLC*, ("*Yelp v. Google*"), No. 24-cv-06101, ECF No. 47 (N.D. Cal. Apr. 22, 2025). Alter Mot. at 3–9.  Further, he argues that in Rosenberg Order I, the Court overlooked Plaintiffs' arguments of unlawful retaliation as it relates to Plaintiff's claim under the UCL.[2] *Id.* at 9–11.

Greenflight's arguments largely mirror Isaacs' arguments, but Greenflight also argues that it should be allowed to join Isaacs' Rule 59(e) motion because there is no "barrier to a co-plaintiff joining a timely Rule 59(e)" request.  Conform Mot. at 2.  Further, Greenflight argues that "[n]othing in Rule 59(e) or related case law prevents the Court, while acting on a timely post-judgment motion already before it, from altering or amending the judgment in a way that conforms relief to all parties whose rights are governed by the same dismissal." *Id.*

Defendant opposes the Alter Motion, arguing that *Yelp v. Google* is neither controlling authority nor focused on the same issues that are prevalent in this case.  Resp. at 3–4.  Next, Defendant argues that it was obvious from Rosenberg Order I that the Court was aware of Isaacs'

---

[2] Isaacs also makes arguments related to another Northern District of California case and its determinations relating to Isaacs litigating the same interests as Greenflight. *See* Alter Mot. at 11–13.  As best as the Court can tell, these arguments seem to be aimed at litigating issues in that Northern District of California case, and the Court therefore deems it inappropriate to weigh in.

retaliation allegations. *Id.* at 4–5. Finally, Defendant also opposes the Conform Motion, and states it is "procedurally defective" and untimely, "because it was filed more than 28 days after the judgment against Greenflight became final." (ECF No. 76) at 1.

### A. Greenflight's Conform Motion

The Court first addresses the timeliness of the Conform Motion. "A motion under Rule 59(e) must be filed within 28 days of the judgment" it is challenging. *Marques v. JP Morgan Chase, N.A.*, 805 F. App'x 668, 670 (11th Cir. 2020). Most judgments must be set out in a separate document that accompanies the order disposing of the motion. Fed. R. Civ. P. 58(a). When a separate document is required, the judgment is deemed entered "on the date when the judgment or order is set forth on a separate document. . . or on the date when 150 days have run from entry of the order." *Jones v. Comm'r, Ala. Dep't of Corrs.*, 631 F. App'x 827, 829–30 (11th Cir. 2015); *see also* Fed. R. Civ. P. 58(c)(2).

Here, the Rosenberg Order I, dismissing Greenflight's claims, was entered on February 4, 2025. Judgment is deemed entered 150 days after that date, on July 7, 2025, as the Court did not set out judgment in a separate document. *See* Fed. R. Civ. P. 6(a)(1)(C); 58(a); 58(c)(2)(B). Therefore, Greenflight's deadline to submit a motion pursuant to Rule 59(e) was 28 days after that date, on August 4, 2025. *See* Fed. R. Civ. P. 59(e). The Conform Motion was filed on August 31, 2025, however, making it clearly untimely. Greenflight argues that "Rule 59(e) is a vehicle; its timeliness is satisfied here by Isaacs' motion. Once the Court properly reopens the judgment for reconsideration on that timely vehicle, it has full authority to alter or amend the judgment in a way that conforms relief to all parties bound by the same dismissal." Conform Mot. at 3. Notably, Greenflight provides no legal authority to support this contention, instead indicating "[t]his is within the inherent authority of the Court to manage its docket in a judicially efficient manner."

*Id.* at 4.  The Court, however, may not properly consider Greenflight's Motion under Rule 59(e).

*See Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1129 (11th Cir. 1994).  In *Hertz*, the

Eleventh Circuit explained that "[t]imeliness constitutes a jurisdictional dimension central to" the

motion for reconsideration.  *Id.*  The Eleventh Circuit held that the timely Rule 59(e) filing by one

co-defendant did not "vest the district court with authority to entertain [the other defendant's]

untimely motion."  *Id.*  Accordingly, the Court finds that it has no authority to hear Greenflight's

Rule 59(e) motion.

### B.  Isaacs' Alter Motion

Isaacs argues that the judgment dismissing the case should be altered pursuant to Rule

59(e), and the Court should at least allow Plaintiffs' claim to go to discovery, because "the

circumstances here meet the strict standard for Rule 59(e) relief."  *See* Alter Mot. at 1; Fed. R. Civ.

P. 59(e).  As mentioned, "[t]he only grounds for granting [a Rule 59] motion are newly-discovered

evidence or manifest errors of law or fact."  *In re Kellogg,* 197 F.3d at 1119.  "In particular, there

are three major grounds which justify reconsideration: (1) an intervening change in controlling

law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest

injustice."  *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla.

2002) (citations omitted); *Ponamgi v. Safeguard Servs. LLC*, No. 11-cv-62119, 2013 WL

12080163, at *1 (S.D. Fla. May 30, 2013).

Isaacs argues that the Northern District of California's decision in *Yelp v. Google*

demonstrates that Plaintiffs' claims were viable and justifies the granting of a Rule 59(e) motion.

Alter Mot. at 3–9.  This decision, however, is not an intervening change in controlling law, as the

Southern District of Florida is not bound by changes in the law of the Northern District of

California.  *See Bravo v. Eden Isles Condo. Ass'n*, No. 09-cv-22532, 2011 WL 13174648, at *1

(S.D. Fla. July 11, 2011) (explaining that decisions from outside of the Eleventh Circuit constitute "persuasive authority," not "controlling law that would support reconsideration"). Isaacs even concedes as much. Alter Mot. at 8 ("To be clear, [Isaacs] acknowledges that *Yelp v. Google* is not controlling precedent in the Eleventh Circuit."). Accordingly, the Northern District of California's decision in *Yelp v. Google* does not support reconsideration as it is not an intervening change in controlling law. It is also not new evidence, and the decision also does not demonstrate that dismissal of Plaintiffs' claims was clear error or will result in "manifest injustice." *Burger King Corp.*, 181 F. Supp. 2d at 1369.

Isaacs also argues that the Court's adjudication of Plaintiffs' UCL claim was incomplete and did not adequately address that Plaintiffs alleged Google's conduct was unlawfully retaliatory. Alter Mot. at 9–11. He argues that "[t]his omission is a clear error warranting relief under Rule 59(e)." *Id.* at 10. Isaacs argues that the Rosenberg Order I's discussion of Plaintiffs' UCL claim "focused almost entirely" on the prongs of UCL analysis concerning allegations of fraudulent conduct. *Id.* As Defendant notes, this is incorrect. *See* Resp. at 4 (explaining that it was "obvious" from Rosenberg Order I that the Court was aware of Isaacs' retaliation allegations). Therefore, Isaacs' argument that discussion of unlawful retaliation was omitted, demonstrating clear error, is incorrect.

The Court based its dismissal of the UCL count on Plaintiffs' reliance on "vague references" to other violations of law. Rosenberg Order I at 15. Isaacs argues that Plaintiffs' SAC invokes retaliation to "tether [Defendant's] conduct to a particular federal statute embodying a well-recognized public policy against retaliating for participation in legal proceedings." Alter Mot. at 10. This argument, however, is in effect asking the Court to "relitigate old matters" and raises arguments "that could have been raised prior to the entry of judgment." *Michael Linet, Inc,*

6

408 F.3d at 763.  That does not justify granting a Rule 59(e) Motion.  *See id.*  Accordingly, the Court finds that Isaacs has not justified reconsideration.

## IV.      CONCLUSION

Accordingly, UPON CONSIDERATION of the Motions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Plaintiff Jeffrey Isaacs' *pro se* Motion to Alter or Amend (ECF No. 71) and Plaintiff Greenflight Venture Corporation's Motion to Join and Support Conformed Rule 59 Judgment (ECF No. 74) are both DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this <u>22nd</u> day of December 2025.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE


c:      **All counsel of record**

7