No. 26-10369-CC

# In the United States Court of Appeals for the Eleventh Circuit

GREENFLIGHT VENTURE CORPORATION,
on behalf of itself and all others similarly situated,
and DR. JEFFREY D. ISAACS,

*Plaintiffs-Appellants,*

*v.*

GOOGLE LLC,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of Florida
Case No. 9:24-cv-80395-KMM

**APPELLANT'S OPENING BRIEF**

Jeffrey D. Isaacs, M.D.
11482 Key Deer Circle
Wellington, FL 33449
(212) 257-0737
jeffreydi@gmail.com

i

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Plaintiff has filed an individual Certificate of Interested Persons in this appeal and verifies that the disclosures on file are correct and complete.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ............................................................................... ii

TABLE OF CONTENTS ................................................................................. iii

TABLE OF AUTHORITIES .............................................................................. v

SUPPLEMENTAL ARGUMENT ....................................................................... 1

SUPPLEMENTAL STATEMENT OF ISSUES ..................................................... 5

I. THE PETITIONING RECORD PREDATES PLAINTIFFS' SUIT AGAINST GOOGLE ...................................................................................................... 6

II. THE "FAILED APPLE LAWSUIT" FRAMING ORIGINATED WITH WILSON SONSINI AND WAS INHERITED BY WILLIAMS & CONNOLLY. THE DISTRICT COURT ADOPTED THAT FRAMING WITHOUT ENGAGING THE PLEADED ALLEGATIONS ON THE MERITS. ................................................................... 10

    A. The Wilson Sonsini to Williams & Connolly Change in Representation . 10

    B. Plaintiffs Sought Amicable Resolution for 18 Months ............................ 11

    C. Williams & Connolly's *Yelp* Mischaracterization Was False & Misleading. ...................................................................................................... 12

    D. The Public Record Refutes the Characterization ................................... 13

III. THREE YEARS OF STAYED DISCOVERY IS ENOUGH ............................. 14

    A. The Question Plaintiffs Have Asked for Three Years ............................. 14

    B. Google's Sequential Efforts to Halt Discovery ...................................... 15

    C. The "Harassment" Framing Emerged Within Hours of the Rule 26(f) Conference and Cannot Substitute for Rule 12 Analysis ............................. 16

    D. *Hospital Building*, *In re Plywood*, and *Twombly*/*Iqbal* Defeat Google's Stay Theory. ...................................................................................... 24

    E. The Discovery Stay Magnified the Rule 12 Problem. ............................ 25

    F. Targeted Discovery Is Not a Fishing Expedition. .................................. 26

IV. THE PAPERLESS DISMISSAL OF DR. ISAACS INDIVIDUAL CLAIMS AT DE 69 SHOULD BE VACATED SEPARATELY. ................................................ 26

A. The Rule 59(e) Order Did Not Cure The Problem. ................................... 29

V. CONCLUSION ........................................................................................... 29

CERTIFICATE OF COMPLIANCE ...................................................................... 30

CERTIFICATE OF SERVICE .............................................................................. 31

## TABLE OF AUTHORITIES

**Cases**

Apple Inc. v. Pepper, 139 S. Ct. 1514 (2019) .......................................... 5

Ashcroft v. Iqbal, 556 U.S. 662 (2009) .................................................. 13

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ........................................ 14

Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc) ................. 25

Brown Shoe Co. v. United States, 370 U.S. 294 (1962) ....................................... 13

Coronavirus Reporter Corp. v. Apple Inc., 85 F.4th 948 (9th Cir. 2023) ................ 2

Epic Games, Inc. v. Apple Inc., No. 4:20-cv-05640-YGR (N.D. Cal.) (Gonzalez Rogers, J.) ................................................................................. 9

Epic Games, Inc. v. Apple, Inc., 67 F.4th 946 (9th Cir. 2023) ............................... 9

Hollywood Police Officers' Retirement System v. Cook, No. 5:26-cv-01724-VKD (N.D. Cal. filed Feb. 27, 2026) ............................................................... 3

Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738, 746 (1976) ..... 24

In re Coronavirus Reporter Corp., No. 25-7761 (9th Cir.) ...................................... 3

Ohio v. American Express Co., 138 S. Ct. 2274 (2018) ......................................... 2

Proton AG v. Apple Inc. (N.D. Cal.) .......................................................................... 3

United States v. Apple Inc., No. 2:24-cv-04055 (D.N.J. filed Mar. 21, 2024) ........ 3

Yelp Inc. v. Google LLC, ECF Nos. 47, 58 (N.D. Cal. Apr. 22 & Oct. 22, 2025) .. 3

## Statutes

18 U.S.C. § 1512 ............................................................................................... 5

18 U.S.C. § 1513(b) ......................................................................................... 5

28 U.S.C. § 1292(b) ......................................................................................... 5

## Rules

Fed. R. App. P. 32(a) ....................................................................................... 30

Fed. R. App. P. 32(f) ....................................................................................... 30

Fed. R. Civ. P. 59(e) ....................................................................................... 11

## SUPPLEMENTAL ARGUMENT

### Adoption Of Greenflight's Principal Brief Under FRAP 28(i)

Pursuant to Federal Rule of Appellate Procedure 28(i), Plaintiff adopts in full Greenflight Venture Corporation's principal opening brief, and incorporates that brief by reference. This document addresses additional matters specific to the dismissal of the individual claims in the Paperless Order (DE 69), and raises additional Section 1512 matters.

### Summary Of Supplemental Argument

For two decades, the foundational architecture of the internet has been consolidated into a distribution duopoly controlled by Google and Apple. A historic dry spell in public antitrust prosecution allowed these gatekeepers to dictate how information and services are distributed, stifling innovation and crushing downstream specialized providers. *See (Anti)Trust Issues*, Harvard Law School (Oct. 2024) (documenting the lack of antitrust enforcement since the 1990s). Government remedies routinely arrive decades late and prove inadequate at restoring competition. *See, e.g., The Google Search Remedies Are Already Failing: How Weak Antitrust Relief Handed Google an AI Advantage*, PublicKnowledge.com (2026). An overreliance on rigid consumer price tests by some courts has perpetuated this concentration, immunizing free digital platforms from traditional antitrust scrutiny. *See The Big Tech Antitrust Paradox*, 27 Stan.

1

Tech. L. Rev. 71 (2024). Congress designed the 'private attorney general' mechanism for exactly this gap, and a first-to-file class action seeking prospective injunctive relief is the vehicle the Supreme Court has sanctioned to check entrenched gatekeeper power without imposing nationwide injunctions.

The dismissal below can be best understood within that context. Four themes organize what follows.

First, the petitioning record is diligent, if not sophisticated, rather than incoherent. The Plaintiff and Greenflight counsel have argued complex digital platform structures in live federal court hearings since 2021. In *Coronavirus Reporter v. Apple Inc.*, No. 3:21-cv-05567 (later 24-cv-08660) (N.D. Cal.), the undersigned argued single-market *Kodak* and two-sided asymmetric app marketplaces; Apple's counsel from Gibson, Dunn & Crutcher LLP responded with two-sided symmetric transaction platform analysis under *Ohio v. American Express Co.*, 138 S. Ct. 2274 (2018). Exhaustive appellate and certiorari arguments spanning three years delved into whether or not app distribution is *Amex* symmetric.  These are the kinds of theories Plaintiffs-Appellants argued live in the Ninth Circuit and elsewhere three years before the present case was filed. The present SAC Sherman Relevant Markets allegations are simply not "an incoherent collection of technical jargon and legal phrases," DE 65 at 7, and they are not theories that were generated by Google's "transformer" for Plaintiffs without years

2

of study. They are theories Plaintiffs argued on the record, passionately, before no less than five federal district judges, the JPML MDL Panel, an appeals circuit, and the United States Supreme Court.

Second, many private plaintiffs are now litigating nearly identical theories. In 2025, Quinn Emanuel Urquhart & Sullivan LLP filed an iPhone/App Store tying claim in *Proton AG v. Apple* based almost verbatim on the *Coronavirus Reporter* 2021 per se tying theory. *In re Coronavirus Reporter Co*rp., No. 25-7761, Pet. for Writ of Mandamus at 508–510 (9th Cir.) (Mandamus). *PhantomAlert[1] v. Apple* (No. 25-7017, D.C. Cir. filed Feb. 10, 2025) pleads what Apple called "materially identical" iPhone/App Store tying claims and is now represented on appeal in those theories by Berger Montague, with American Antitrust Institute *amicus* support in the D.C. Circuit. *Mandamus* at 141, 170. The Department of Justice's *United States v. Apple Inc.*, No. 2:24-cv-04055 (D.N.J. Mar. 21, 2024), has listed *Coronavirus Reporter* as a witness in its government case. *Yelp Inc. v. Google LLC*, ECF Nos. 47, 58 (N.D. Cal. Apr. 22 & Oct. 22, 2025), a longtime critic of Google's conduct, filed its complaint shortly after Greenflight (after the Mehta Google ruling); it sustained materially analogous GSE monopolization and UCL claims past Rule 12. *Hollywood Police Officers' Retirement System v. Cook*, No.

---

[1] That plaintiff had formed a partnership with the Ethiopian Government to deploy an iPhone pandemic app. Which was also rejected by Apple. Gibson Dunn called the case theory 'identical' and cited *Coronavirus Reporter* to obtain a Rule 12 dismissal. Berger Montague represents the case in the DC Circuit, and it garnered support of an esteemed *Amicus* author. That case highlights the danger of the ongoing, improper harassment narrative against Plaintiffs: it is actively suppressing many other Big Tech victims.

5:26-cv-01724-VKD (N.D. Cal. filed Feb. 27, 2026), is a 239-page institutional derivative complaint concerning Big Tech evasion of Sherman Act ("anticompetitive playbook"), pleaded by a law enforcement pension fund without any sanctions or harassment finding. The same Apple leadership conduct, first addressed in the *Coronavirus II* proceedings, was characterized by Apple and its counsel as "harassment". The dismissal's "incoherent jargon" framing cannot survive the aforementioned public record; it represents Google's parallel effort to continue a false narrative that has now permeated the Ninth Circuit proceedings for half a decade.

The Third issue raised in this brief is how the "anticompetitive playbook" to suppress Sherman Act enforcement (borrowing the *Hollywood Police* terms) followed Plaintiffs across the defendants and their counsel, and subverted reasonable discovery requests. The current portrayal of Plaintiffs did not begin with Williams & Connolly. It began with Wilson Sonsini Goodrich & Rosati in California. On February 9, 2024, Wilson Sonsini filed a motion to quash subpoena on behalf of Google in *Isaacs v. Keller Williams Realty, Inc.*, No. 9:23-cv-81393-RLR (S.D. Fla.), DE 85, under the heading: "Dr. Isaacs Attempted to Drag Google Into His Failed Lawsuit Against Apple." Wilson Sonsini was succeeded in this representation by the Warren Law Firm, and later, Williams & Connolly. The same narrative carried forward, albeit, at the initial Rule 16 conference Warren claimed

4

to have no knowledge of the entire Wilson Sonsini (*see infra*) involvement. Following that initial conference, the August 2024 First Amended Complaint filing ended Greenflight's two-year, unsuccessful effort to amicably resolve through ADR/mediation.

Fourth, and finally, a Paperless Order (DE 69) must be vacated separately, because it never adjudicated  the pro se Show Cause memorandum (DE 68), which raised three theories distinct to the individual claims that the paperless dismissal "for the same reasons" did not address: (a) 18 U.S.C. § 1512(d)(1) and § 1513(b) as specific UCL unlawful-prong predicates, DE 68 at 9–10; (b) the *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019), standing analogy applied to Google Webmaster Tools / Search Console participants, DE 68 at 7–8; and (c) a 28 U.S.C. § 1292(b) interlocutory certification request, DE 68 at 7.

## SUPPLEMENTAL STATEMENT OF ISSUES

Plaintiff-Appellant submits the following supplemental issues:

1) Whether the district court erred in characterizing as "incoherent jargon" and "fabricated" the same Sherman Act tying and multi-sided platform analysis Plaintiffs and counsel have continuously developed and advanced in federal court since 2020, despite nearly identical theories being advanced in *Proton AG v. Apple*,

*City of Hollywood Police Officers*, and sustained past Rule 12 by *Yelp Inc. v. Google LLC* (twice).

2) Whether the district court erred in embracing Defendant's coordinated litigation strategy, which relied upon an aggressive credibility attack which itself further evidences Section 1512 retaliation, including casting evidence preservation discovery as "harassing," materially false characterizations of *Yelp v. Google*, and just recently, two misleading summary affirmance attempts.

3)   Whether the district court erred in dismissing *pro se* claims  "for the same reasons" Greenflight's claims were dismissed, when the pro se party raised distinct theories including (a) the specific 18 U.S.C. § 1512(d)(1) and § 1513(b) statutory predicates for the UCL "unlawful prong"; (b) the *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019) standing argument as applied to Google Webmaster Tools participants; and (c) the request for 28 U.S.C. § 1292(b) interlocutory certification on the platform-standing questions.

## I. THE PETITIONING RECORD PREDATES PLAINTIFFS' SUIT AGAINST GOOGLE.

The dismissal below described Plaintiffs' theories as "an incoherent collection of technical jargon and legal phrases." DE 65 at 7. The chronology that follows refutes that characterization. The digital platform antitrust theories Plaintiffs articulated preceded their suit against Google by years and have since

been litigated, in materially overlapping form, by sovereign enforcers, respective plaintiffs' firms, and institutional shareholders for law enforcement. Plaintiffs were not planning to sue Google back in 2020. They thought Apple was the larger half of the duopoly. Google's de-indexing of OkCaller on Thanksgiving Eve 2022 generated this case. A timeline follows.

*Late 2020:  Coronavirus Reporter Corp. v. Apple Inc*. *(CR I)* filed the first developer-class Sherman Act tying challenge to the iPhone App Store notarization tie. The complaint pleaded conventional *Northern Pacific* tying and aftermarket restraint applied to a modern software gatekeeper. *Mandamus* at 129–135. By Apple's own counsel's subsequent description via Press Release, the case was a "$200 billion developer class action" which it succeeded in "getting Apple off the hook" *Mandamus* at 158–162.

*Thanksgiving Eve 2022 OkCaller de-indexing:* Google disappeared the nine-year-old domain OkCaller on the same day Dr. Isaacs filed an Apple antitrust appellate brief in the Ninth Circuit, about one year exactly after case opening. SAC ¶ 38, DE 61 at 16. Google has publicly stated that it tries to avoid algorithm updates during the late November to December holiday window because of the sensitivity of that period. The de-indexing affected a domain used by a large percentage of the population for telephone safety, and occurred squarely within Google's stated avoidance window.

*August 24 and October 17, 2023 §1512 letters:* Mathews wrote to Google twice raising witness concerns under 18 U.S.C. §1512. DE 42 at 2. Google did not respond substantively.

*March 21, 2024* United States v. Apple Inc. *filing:* DOJ's complaint addresses broad iPhone device restraints and free digital platform gatekeeping concerns. Later identifies *Coronavirus Reporter* as a possible witness.

*April 2024 Google S.D. Fla. Complaint filed:* This filing was a response to Google's alleged de-indexing of OkCaller, not part of any pre-existing campaign against Google.

*August 2024 USDJ Mehta ruling on DOJ Google case:* Google liable for Sherman Act violations in the GSE platform. *Yelp* files private suit after a decade of vocal petitioning of SERP self-preferencing.

*April 22, 2025 and October 22, 2025:* *Yelp v. Google* twice survives Rule 12. ECF Nos. 47, 58 (N.D. Cal.). The April 22 order denied Google's motion to dismiss as to monopolization, attempted monopolization, and UCL claims. The October 22 order sustained *Yelp's* amended tying claim. *Yelp* is a specialized vertical / directory plaintiff, exactly like plaintiffs.

*July 2025*: Gibson Dunn submits sanctions fee request $735,193.20 (which it described as a steep discount) against Mathews, CRC, and Greenflight. Greenflight

8

had not even been a party to the CR I litigation. The request is pending; no order has been entered.

*February 27, 2026  Hollywood Police Officers' Retirement System v. Cook. No. 5:26-cv-01724-VKD (N.D. Cal.):* A 239-page institutional shareholder derivative complaint against Apple leadership, alleging concerted illegal efforts by Apple/Big Tech to thwart Sherman Act enforcement.

*April 28, 2026  Ninth Circuit terminates stay of mandate in* Epic Games, Inc. v. Apple Inc No. 4:20-cv-05640-YGR (N.D. Cal.): The Ninth Circuit declined to extend delays Apple sought to the only material antitrust enforcement against Apple in twenty years.

This timeline is not the petitioning record of a vexatious or incoherent litigant. Plaintiffs took a leadership role on digital platform conduct in 2020, before *United States v. Apple*, before *Epic*'s contempt proceedings, before Quinn Emanuel filed *Proton*, before *PhantomAlert*'s appeal, before *Yelp v. Google*, and before *Hollywood Police*. The district court below was persuaded that this six-year record of related antitrust petitioning was "incoherent jargon." The public record now disagrees. The dismissal cannot stand on the characterization the dismissal adopted.

## II. THE "FAILED APPLE LAWSUIT" FRAMING ORIGINATED WITH WILSON SONSINI AND WAS INHERITED BY WILLIAMS & CONNOLLY. THE DISTRICT COURT ADOPTED THAT FRAMING WITHOUT ENGAGING THE PLEADED ALLEGATIONS ON THE MERITS.

The dismissal below adopted a fictional litigation narrative rather than conducting an independent Rule 12 analysis. The narrative had a documented origin and a documented continuation. Both should be on the record before this Court.

### A. The Wilson Sonsini to Williams & Connolly Change in Representation

On February 9, 2024, Wilson Sonsini Goodrich & Rosati, P.C. ("Wilson Sonsini"), through Andrew T. Kramer, filed a motion to quash subpoena on behalf of Google in *Isaacs v. Keller Williams Realty, Inc.*, No. 9:23-cv-81393-RLR (S.D. Fla.), DE 85. This was an attempt to avoid suing Google, but to be sure, Plaintiffs were blamed for their effort. The motion advanced its substantive argument under Heading I, which read in full: "Dr. Isaacs Attempted to Drag Google Into His Failed Lawsuit Against Apple." In other words, Kramer suggested that Google had no reason to retaliate against a failed, inconsequential lawsuit.

By September 10, 2024, when Google moved to stay all discovery in this action, Wilson Sonsini had been succeeded by Williams & Connolly LLP and the Warren firm. DE 42. Williams & Connolly continued the same framing. In opposing pre-suit subpoenas, in moving to stay discovery (DE 42), and in opposing

10

the undersigned's Rule 59(e) motion (DE 73), Williams & Connolly relied on the *CR I* affirmance, *Coronavirus Reporter v. Apple Inc.*, 85 F.4th 948 (9th Cir. 2023), and on the "patently frivolous" language quoted from the pending *CR II* sanctions proceedings. New counsel, same concept to minimize Plaintiffs and cast their efforts as fringe and harassing.

Their strategic premise was straightforward. A defendant has no rational motive to retaliate against a litigant whose antitrust theories have been categorically rejected. If Plaintiffs' Apple work were a "failure," the temporal coincidence of the Thanksgiving Eve 2022 de-indexing of OkCaller and the CR litigation could be re-characterized as coincidence rather than retaliation. SAC ¶ 38, DE 61 at 16. The framing was deployed twice across two law firms and two dockets, and it succeeded below, where Judge Rosenberg chalked everything up to "coincidence."

### B. Plaintiffs Sought Amicable Resolution for 18 Months.

Greenflight's counsel told Google's lawyers in writing, in 2023, that a pattern concerning of witness retaliation was unfolding. On August 24, 2023, Mathews wrote to Google and demanded "an immediate investigation into our substantiated concern that this removal of a nine-year old strategic advertising partner constituted witness tampering pursuant to 18 U.S.C. §1512." DE 42 at 2 (quoting D.E. 34-3). On October 17, 2023, Mathews wrote again to request an

11

investigation into "Google's removal of OkCaller from Google's reverse phone search algorithm" DE 42 at 2 (quoting D.E. 34-4). Eighteen months passed without substantive response from Google, despite repeated requests for Alternative Dispute Resolution.

In the Rule 59(e) motion, DE 71, Plaintiffs raised the pending *CR II* sanctions proceedings to demonstrate the overwhelming oppression by the Big Tech platforms to Plaintiffs' antitrust petitioning.

Williams & Connolly responded in DE 73 by calling that material "irrelevant." DE 73 at 14 ("It is unclear why [Dr.] Isaacs views that as relevant to the relief he seeks here; it is certainly not a reason to grant the present motion."). That is the response of a defendant whose conduct in this case is, on its account, unconnected to the parallel Apple proceedings. A defendant whose conduct were genuinely unconnected would have explained the disconnection. Williams & Connolly did not. The court below adopted the same posture, dismissing the cross-docket pattern without engaging it.

## C. Williams & Connolly's *Yelp* Mischaracterization Was False & Misleading.

In DE 73, Williams & Connolly told the district court that "the *Yelp* decision in fact dismissed Yelp's tying, leveraging, and refusal to deal claims, 2025 WL 1168900, at 15–18." DE 73 at 4. That representation was wrong. The same April

22, 2025 *Yelp* order denied Google's motion to dismiss as to the core monopolization, attempted monopolization, and UCL claims. The dismissed subtheories received leave to amend for technical pleading defects, not merits dismissal. The October 22, 2025 *Yelp* follow-on order then sustained *Yelp*'s amended tying claim against Google's renewed Rule 12 attack and recognized continuing violations. Williams & Connolly's assertion that the tying claims were dismissed was simply incorrect. *Yelp Inc. v. Google LLC*, ECF No. 58 at 8–17 (N.D. Cal. Oct. 22, 2025).

### D. The Public Record Refutes the Characterization.

The same theories Apple's counsel called "harassment" when Plaintiffs raised them are now being pleaded by sophisticated downstream plaintiffs without any harassment finding. *Hollywood Police Officers' Ret. Sys. v. Cook*, No. 5:26-cv-01724-VKD (N.D. Cal. filed Feb. 27, 2026), is one example: an institutional-shareholder derivative complaint against Apple leadership covering materially overlapping conduct. *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962), supplies the governing principle. Core antitrust theories must be tested on a developed record, not foreclosed at the threshold by adjective-driven characterizations.

Reversal is required. *Iqbal*, 556 U.S. 662, 678 (2009), holds that well-pleaded factual allegations must be accepted and reasonable inferences drawn in

13

plaintiffs' favor. *Twombly*, 550 U.S. 544, 555–56 (2007), holds the same. Neither permits a Rule 12 dismissal grounded on a unsubstantiated characterizations rather than a formal pleaded record.

### III. THREE YEARS OF STAYED DISCOVERY IS ENOUGH.

Antitrust retaliation cases turn on intent evidence, and intent evidence about why Google de-indexed OkCaller on Thanksgiving Eve 2022 sits, by definition, in Google's files. For nearly three years Plaintiffs sought an explanation for the de-indexing; once litigation began, discovery was stayed before Plaintiffs could obtain Google's internal reason for the de-indexing. The dismissal then arrived on a record from which Google's actual reasons were absent.

### A. The Question Plaintiffs Have Asked for Three Years.

OkCaller was a nine-year-old domain in good standing in Google Search at the time of the de-indexing. SAC ¶¶ 25–30, DE 61 at 12–13. Hundreds of millions of users had used it. Google itself had treated OkCaller as a "trusted partner" and invited it into Google's "Enhanced Support and Optimization" program through Google's Webmaster Tools / Search Console relationship. *Id.* OkCaller and its principals attended workshops at Google's Miami office. *Id.* Approximately $2 million per year in profits flowed to google from this relationship, not including the substantial goodwill of correctly covering phone number queries on Google for

14

hundreds of millions over a decade. That alone could be "conduit," had Judge Rosenberg's requirement been the correct one.

The de-indexing occurred on Thanksgiving Eve 2022, as discussed above. On August 24, 2023, Mathews wrote to Google asking what happened. DE 42 at 2. On October 17, 2023, Mathews wrote again. DE 42 at 2. Google did not answer.

That is the question this case has been about from the beginning. What happened to OkCaller on Thanksgiving Eve 2022, and why.

### B. Google's Sequential Efforts to Halt Discovery.

Google's response to the question, on the docket, has not been to answer it. Google has moved several times to prevent any factual record from being developed. Notably, their consistent pattern of blaming and deriding Plaintiffs surely is at odds with empathy for a small business that genuinely wonders what happened to the patented technology which helped build Google's search query reliability.

The first occurred after the district court severed and stayed Dr. Isaacs's pro se claims, when Google moved for a protective order to invalidate the discovery requests Dr. Isaacs had already served as a pro se plaintiff. The second move was DE 42, filed September 10, 2024. Google moved to stay all discovery pending its motion to dismiss the FAC. Google argued that "discovery is not a fishing

15

expedition," DE 42 at 7 (quoting *Zamperla, Inc. v. I.E. Park SrL*, No. 13-180737, 2014 WL 11332269, at *5 (M.D. Fla. Oct. 23, 2014)),* and relied principally on *DJ Lincoln Enters., Inc. v. Google, LLC*, No. 20-14159, Docket No. 41 (S.D. Fla. Nov. 21, 2020) (an unpublished district court order in another Google case), together with non-precedential M.D. Fla. authorities. None of those authorities involved a Sherman Act § 2 / UCL retaliation claim where the defendant's actual reason for the challenged conduct was, by the structure of the claim, in the defendant's exclusive possession.

The cumulative effect is that no factual record was developed about Google's actual reasons for the de-indexing. The Webmaster Tools logs, ranking criteria documents, internal communications about OkCaller, and personnel identity that would resolve the retaliation theory have remained in Defendant's exclusive possession for the full life of this case.

## C. The "Harassment" Framing Emerged Within Hours of the Rule 26(f) Conference.

The "harassment" and "abusive" labels oddly occurred within twenty-four hours of the initial August 13, 2024 Rule 26 conference, appearing on the docket within weeks of the parties' first meet and confer.

The relevant chronology is evidenced though three docket entries. The Joint Scheduling Report (DE 19) was filed August 22, 2024, following the parties' Rule

16

26(f) conference period running, by Defendant's own statement, "starting on August 14, 2024, and ending on August 20, 2024." DE 19 at 1. In fact, their chronology omitted that the first Rule 16 conference was conducted pro se on August 13, 2024, one day prior to the appearance of Greenflight counsel. That meeting is where the Section 1512 conduct once again began in the underlying case.

As discussed above, prior to the initiation of this suit, Plaintiffs' counsel engaged in eighteen months of extensive pre-litigation correspondence. During the August 13th 2024 conference, Defendant's new counsel claimed total ignorance of this exhaustive pre-litigation effort and its corresponding evidence preservation hold requests. To maintain order and verify that critical evidence had not been destroyed during the transition of defense counsel, Dr. Isaacs immediately served standard initial discovery requests seeking Defendant's preservation logs and the transfer of the Department of Justice discovery file. Put differently, Dr. Isaacs was shocked that attorneys on a federal lawsuit for one of the largest companies in history had absolutely no knowledge or due-diligence of Rule 37 preservation requirements and notices.

After that Rule 26 call, Defendant's counsel and Dr. Isaacs drafted a Joint Scheduling Report which in part declared:

17

"Plaintiff has additional concerns regarding numerous evidence preservation requests issued to Google.  Because preservation requests have gone unanswered for eighteen months, and Google counsel today acknowledged they have not received over a year and a half of correspondence, Plaintiff requests Google provide a detailed log of what evidence has been preserved to date.

Defendant states that this action, which Plaintiff served only seven weeks ago, includes only claims for patent infringement.  Google will comply with its discovery obligations in this case as required by the Federal Rules of Civil Procedure, subject to any agreements between the parties and court orders.  Plaintiff improperly seeks broad and harassing discovery regarding facts that are wholly irrelevant to the claims he filed, which concern patent infringement. Google will respond appropriately."

In short, this case began with an introduction between Dr. Isaacs and Google Counsel. Those attorneys claimed to have no knowledge of eighteen months of evidence preservation logs from Wilson Sonsini. Dr. Isaacs remarked about his concerns in the Joint Report, and, within 24 hours, was labelled "harassing." To him, this was the Apple playbook on repeat.

Within 24 hours of the second Rule 16 conference, Defendant moved to stay all discovery. Rather than complying with Rule 26 preservation transparency, Defendant substituted merits compliance with yet another credibility attack, branding Plaintiffs' efforts to obtain the preservation logs as "abusive discovery" and a "fishing expedition." DE 42 at 1, 3. The district court immediately adopted (with no time for submitting rebuttal evidence) Defendant's posture and stayed all

18

discovery, rather than demonstrate any concern about Dr. Isaacs' fears that FRCP 37 was blatantly ignored by opposing counsel. DE 43.

One need not be Sherlock Holmes to see the fundamental impossibility of Defendant's posture. By claiming ignorance of the 18-month litigation hold letters, Defendant's counsel placed themselves in an inescapable Catch-22 that proves the bad faith of their "harassment" accusation. More importantly, it independently exists as a Section 1512 violation which supports the progression of discovery.

If Defendant's new counsel was telling the truth during the August 13th Rule 16 conference—that they were entirely ignorant of Mr. Mathews' eighteen months of antitrust mediation and evidence preservation letters—then the *only* pre-suit record available to them upon conducting their mandatory Rule 11 due diligence was the decade long, highly profitable and amicable business relationship pleaded in the SAC. An objective review of Google's internal files would have revealed a trusted, $20 million cumulative partner who had been explicitly invited into Google's "Enhanced Support and Optimization" program and hosted as one of the select few publishers to train at Google's Miami campus. SAC ¶¶ 26–29.

If that ten year history of friendly, profitable partnership was the *only* history Defendant's counsel knew about, it defies all plausible inference that they would receive a standard initial discovery request from that same partner and—within 24

19

hours—instantly brand him a "harasser" engaging in "abusive" litigation. It just doesn't add up.

The only way Defendant's rapid-fire "harassment" label makes logical sense is if Defendant's counsel *did* know about Plaintiffs' six-year Sherman Act petitioning against Apple (and, inherently, Kramer's 'failed litigation' theory), and simply deployed the exact same aggressive playbook utilized in the Ninth Circuit. But if Defendant's counsel knew about the antitrust petitioning, then their claim of ignorance regarding the eighteen months of preservation correspondence was a fraudulent concealment designed to evade the §1512 inquiry.

Either Defendant's counsel completely failed to conduct basic pre-filing due diligence before branding a decade long partner a "harasser," or they intentionally concealed their knowledge to sidestep discovery into their failure to preserve evidence. In either scenario, the 24-hour leap to labeling Dr. Isaacs a "harasser" was a tactical fabrication. It had no basis in fact.

A defendant facing a §1512 retaliation and concealment claim cannot officially admit on the docket that eighteen months of past discussions occurred, unilaterally declare them "irrelevant" to avoid producing preservation logs, instantly brand the plaintiff's attempt to verify those logs as "abusive," and use that narrative to successfully stay discovery, without permitting rebuttal.

When the district court subsequently dismissed the SAC, it did so only after allowing Defendant to lock away the very intent and preservation evidence that would have proved the §1512 predicate.

The Eleventh Circuit strictly forbids district courts from making credibility determinations or adopting a defendant's competing narrative at the pleading stage. *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010). By granting the discovery stay based on Defendant's manufactured grievance (DE 43), and subsequently adopting the premise that Plaintiffs' theories lacked plausibility (DE 65), the court allowed a tactical smear to override the well-pleaded facts of the SAC. This is particularly concerning when all Dr. Isaacs did at the August 13th meeting was express surprise that Google counsel *didn't know* about Wilson Sonsini's involvement for nearly two years.

This behavior by Defendant, using the judicial machinery to block inquiry into whether it actually preserved evidence of a § 1512 violation, went far beyond the district court's discretion to ignore It fundamentally tainted the Rule 12 analysis, requiring an immediate remand for discovery.

Defendant's later response, in DE 19, was that this history was "both irrelevant and incorrect" and that it "appears to refer to previous discussions with

21

former pro se plaintiff Dr. Isaacs in the context of purported third-party subpoenas to Google served in other litigation." DE 19 at 4 (citing *Isaacs v. Keller Williams Realty Inc.*, No. 9:23-cv-81393, DE 85 (S.D. Fla. Feb. 9, 2024)). That citation is itself significant: Defendant's own motion directs the district court to the very Wilson Sonsini motion to quash this brief identifies in Section II as the documented origin of the "failed Apple lawsuit" framing. By August 22, 2024, in other words, Defendant had on the docket both knowledge of Wilson Sonsini's prior representation and a position that the 18-month pre-suit § 1512 history with that prior representation was "irrelevant and incorrect." It seemed they were suggesting that the litigation hold letters never existed that were sent to Kramer; that Kramer was only retained for the subpoena matter. That is flatly untrue by any glance at the evidence.

Five days later, on August 27, 2024, Defendant moved for a protective order to invalidate Dr. Isaacs's pro se discovery (DE 35). Less than three weeks after DE 19, on September 10, 2024, Defendant moved to stay all discovery (DE 42), now characterizing Plaintiffs' standard discovery requests as "abusive" and a "broad and amorphous fishing expedition." DE 42 at 1, 3. The discovery DE 42 sought to halt included precisely the preservation logs Greenflight had asked for in DE 19 at 4.

That sequence highlights the tenuous nature of Defendant's position. Again, either Defendant's outside counsel knew, on August 22, 2024, about Mathews' §1512 mediation and litigation hold correspondence (in which case Defendant's contemporaneous statement that the history was "irrelevant" was a tactical reframing rather than a factual description, and the "abusive" label deployed three weeks later in DE 42 was a continuation of that reframing), or Defendant's outside counsel did not know about the 18-month pre-suit history before the 26(f) conference (in which case Defendant's outside counsel had not conducted even the most basic pre-filing due diligence, SAC ¶¶ 25–30, DE 61 at 12–13). On the second reading, Defendant moved from "we are not aware of the preservation requests" at the August 14–20 conference to calling the discovery seeking those preservation logs "abusive" by September 10, a window of weeks. Both readings undercut the dismissal's reliance on the "repeat litigant" framing opposing counsel asked *this* Court to accept at the beginning of *this* appeal. It is a playbook, on repeat.

Eleventh Circuit precedent forecloses Rule 12 dismissals predicated on a defendant's competing factual narrative. *Speaker v. U.S. Department of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010), confirms that the plausibility standard "does not impose a probability requirement at the pleading stage, but instead simply calls for enough

23

fact to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Twombly* itself recognized that a complaint may proceed "even if it strikes a savvy judge that actual proof of those facts is improbable." 550 U.S. at 556. At Rule 12, the court was required to accept Plaintiffs' well-pleaded allegations and draw reasonable inferences in Plaintiffs' favor, not adopt Defendant's competing narrative of incoherence and abuse.

### D. *Hospital Building*, *In re Plywood*, and *Twombly*/*Iqbal* Defeat Google's Stay Theory.

The Supreme Court answered Google's stay theory almost fifty years ago. In *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746 (1976), the Court held that "in antitrust cases, where 'the proof is largely in the hands of the alleged conspirators,' dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." That is a Supreme Court rule, not a "preliminary peek" gloss from a 1997 magistrate ruling. Google's DE 42 cites *Twombly* at 558 but elides *Twombly*'s own holding. *Iqbal*, 556 U.S. 662, 678 (2009), is consistent: intent allegations are evaluated under context specific judicial experience and common sense. None of those Supreme Court authorities permits a Rule 12 dismissal where the plaintiff is asked to plead, at the pleading stage, evidence that exists only in the defendant's files.

Eleventh Circuit-binding precedent makes the same point. *In re Plywood Antitrust Litigation*, 655 F.2d 627 (5th Cir. 1981), recognized that conspiracy and other antitrust violations are typically clandestine and that circumstantial evidence is therefore sufficient at the pleading and proof stages. That precedent binds this Court under *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Google's stay authorities (*DJ Lincoln*, *Feldman v. Flood*, 176 F.R.D. 651 (M.D. Fla. 1997), *Squitieri v. Nocco*, *Zamperla*, *Dulcio v. EPA*) are run-of-the-mill stay cases. None addresses a Sherman Act / UCL retaliation claim. None involves a defendant whose challenged conduct is alleged to have been triggered by the plaintiff's protected antitrust petitioning. The "fishing expedition" tag does not survive even minimal specificity review of Plaintiffs' targeted requests.

### E. The Discovery Stay Magnified the Rule 12 Problem.

The discovery stay matters here because the district court dismissed a retaliation theory before Plaintiffs could obtain the intent evidence uniquely in Google's possession. That is the core of *Hospital Building Co.*'s caution against pre-discovery dismissal in antitrust cases. 425 U.S. at 746. It is also the practical reason the SAC's inferences must be drawn in Plaintiffs' favor: any "gap" between the pleaded facts and the ultimate proof is a gap Defendant has the documents to close, and Defendant has not been required to produce them.

**F. Targeted Discovery Is Not a Fishing Expedition.**

Plaintiffs' targeted requests on remand would include internal communications mentioning OkCaller, Dr. Isaacs, Mathews, Coronavirus Reporter, Greenflight, Apple, Gibson Dunn, sanctions, antitrust, witnesses, or litigation; comparator treatment of similarly situated reverse-phone and directory competitors; preservation, document retention, and litigation hold records relating to Mathews' August 24, 2023 and October 17, 2023 letters; technical, algorithmic, business, safety, quality, or commercial rationale, if any, existing at the time of the Thanksgiving Eve 2022 de-indexing; and the identity of personnel involved in the de-indexing decision. Each request targets a pleaded allegation in the SAC. Each is in Google's possession. None is a "fishing expedition" within the *Zamperla* meaning Google invokes.

## IV. THE PAPERLESS DISMISSAL OF DR. ISAACS INDIVIDUAL CLAIMS AT DE 69 SHOULD BE VACATED SEPARATELY.

The Paperless Order (DE 69) should be vacated separately. A district court must address the legal arguments a litigant presents in response to an order to show cause. The court below invited the response, the response presented theories Greenflight had not separately developed, and the "for the same reasons" order at DE 69 resolved none of them.

26

The show cause order issued at DE 65 at 19–20 directed the Plaintiff to explain why his individual claims should not be dismissed for the same reasons Greenflight's claims had been dismissed. The undersigned timely filed a Show Cause memorandum on February 11, 2025 (DE 68). That submission did not merely repeat Greenflight's briefing.

First, the Show Cause memorandum identified subsection (d)(1) of 18 U.S.C. §1512 (whoever "harasses another person and thereby hinders, delays, prevents, or dissuades any person from attending or testifying in an official proceeding") and 18 U.S.C. § 1513(b) (whoever "knowingly engages in any conduct and thereby damages the tangible property of another person ... with intent to retaliate against any person for the attendance of a witness or party at an official proceeding"). DE 68 at 9–10. The operative complaint identified §1512 generally; the Show Cause memorandum identified the operative subsections.

Second, the Show Cause memorandum analogized Google Webmaster Tools / Search Console participants to the iPhone consumer plaintiffs in *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019), arguing that direct-purchaser standing extends to participants in zero price multi-sided platforms where the platform monetizes user-side traffic. DE 68 at 7–8. Pepper held that App Store purchasers had standing as direct purchasers in the platform market because Apple sold apps directly to them. By way of background, Apple had argued, unsuccessfully to the Supreme Court

27

that only developers had standing to sue on the App Store, not consumers. This case, Google argues the inverse with McCready – only consumers can sue.

The same logic applies to GWT/Search Console participants who deal directly with Google for distribution access. Greenflight's principal brief develops a related but distinct multi-sided platform analysis under American Express; the *Pepper* analogy is a separate vehicle that the principal brief did not foreclose and that the court below never analyzed.

Finally, the Show Cause memorandum asked the district court, in the alternative, to certify the platform standing questions under § 1292(b). DE 68 at 7. The court never addressed the request. Final judgment posture has now overtaken the § 1292(b) relevance, but the unaddressed request matters as evidence that DE 69 did not engage DE 68's distinct submissions.

In sum, the terminating order was a paperless dismissal that disposed of the undersigned's individual claims "for the same reasons" Greenflight's claims had been dismissed. The order did not identify § 1512(d)(1) or § 1513(b) by name. It did not engage the *Apple Inc. v. Pepper* direct-platform-distribution analogy. It did not rule on the § 1292(b) certification request.

That silence is dispositive under Eleventh Circuit law. A district court's failure to address a properly pleaded claim is reversible. The principle applies with

28

equal force to legal theories raised in response to a court ordered show cause demand: the court invited the response and was obligated to evaluate it. A paperless "same reasons" disposition, after the court has solicited and received briefing on distinct legal theories, does not satisfy that obligation.

### A. The Rule 59(e) Order Did Not Cure The Problem.

The Rule 59(e) order held that the § 1512 issue had already been considered because DE 65 showed "awareness" of retaliation allegations. DE 78 at 5–6. As Greenflight's principal brief explains in Section VIII, awareness is not adjudication. The question raised in DE 68, whether § 1512(d)(1) and § 1513(b) could serve as UCL predicates and whether amendment to plead them expressly should be permitted, was never answered by either order. Greenflight's brief addresses that error directly; the supplemental observation here is that the same defect compounds the DE 69 problem.

### V. CONCLUSION

For the reasons stated above, Plaintiff Jeffrey Isaacs respectfully requests this Honorable Court reverse the premature Rule 12(b)(6) dismissal.

This case is about whether a dominant technology firm and its outside counsel can defeat protected private antitrust petitioning by calling it incoherent, harassing, and abusive before discovery. The answer should be no. As we enter the Artificial Intelligence era which Defendant is largely credited for inventing, there

will inevitably be important ethical and legal issues raised by petitioners other than the Plaintiffs. If this case stands affirmed, those future petitioners are already improperly disadvantaged. This is not speculation. It already happened with an unrelated Ethiopian government initiative (*PhantomAlert*), which was dismissed as "identical" to Plaintiff's Coronavirus Reporter company.

Respectfully submitted,

Date: April 30, 2026

/s/ Jeffrey D. Isaacs
Dr. Jeffrey D. Isaacs
11482 Key Deer Circle
Wellington, FL 33449
(212) 257-0737
jeffreydi@gmail.com

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f), it contains 6259 words.

I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a

proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Date: April 30, 2026

/s/ Jeffrey D. Isaacs

Dr. Jeffrey D. Isaacs

## CERTIFICATE OF SERVICE

I certify that on April 30, 2026, I electronically filed the foregoing Opening Brief with the Clerk of the United States Court of Appeals for the Eleventh Circuit using the appellate CM/ECF system. I further certify that all participants in this case who are registered CM/ECF users will be served by the CM/ECF system, including Counsel for Defendant-Appellee Google LLC.

Date: April 30, 2026

/s/ Jeffrey D. Isaacs

Dr. Jeffrey D. Isaacs

31