**No. 26-10369**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

GREENFLIGHT VENTURE CORPORATION AND JEFFREY D.

ISAACS,

*Plaintiffs-Appellants,*

v.

GOOGLE LLC,

*Defendant-Appellee.*

*ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
(NO. 9:24-cv-80395-RLR/KMM) (THE HONORABLE
ROBIN L. ROSENBERG, J. AND K. MICHAEL MOORE, J.)*

---

**Appellee Google's Response Brief**

---

Kenneth C. Smurzynski
Mikaela E. Johnson
Williams & Connolly LLP
680 Maine Avenue, SW
Washington, DC 20024
(202) 434-5000

Edward M. Mullins
Sujey S. Herrera
Reed Smith LLP
200 South Biscayne Boulevard,
Suite 2600
Miami, FL, 33131
(786) 747-0200

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Google submits that oral argument is not necessary in this appeal.  The appeal raises no novel issues of law, the briefs and record on appeal adequately present the material facts and legal arguments, and oral argument would not meaningfully aid the decision-making process.  Should the Court believe, however, that oral argument would be helpful, Google stands ready to participate at the Court's convenience.

# Table of Contents

STATEMENT OF THE ISSUES ................................................................. 1

STATEMENT OF THE CASE ................................................................... 2

PROCEDURAL BACKGROUND .............................................................. 3

The District Court's Dismissal of All Federal Law Claims (With
    Leave to Replead) and Reservation as to State Law Claims ......... 6

The District Court's Grant of the Motion to Dismiss with Prejudice ...... 9

The District Court's Rejection of Multiple Motions for
    Reconsideration ................................................................................ 11

SUMMARY OF THE ARGUMENT ........................................................ 12

ARGUMENT ......................................................................................... 14

I.    The District Court Did Not Err in Dismissing Plaintiffs'
    Antitrust Claims. ......................................................................... 14

    A.    Plaintiffs Lacked Antitrust Standing. ................................. 14

        1.    Plaintiffs failed to allege they are Google's
            competitor .................................................................. 15

        2.    McCready does not remedy Plaintiffs' lack of
            standing. ..................................................................... 22

        3.    Cargill likewise does not provide Plaintiffs with
            standing. ..................................................................... 27

    B.    Each Antitrust Claim Warranted Dismissal for
        Additional, Independent Reasons. ....................................... 28

        1.    Count One was deficient. ............................................ 29

        2.    Count Two was similarly lacking. .............................. 33

      3.    Greenflight did not plead essential elements of Count Three. ............................................................... 36

      4.    Greenflight did not plead essential elements of Count Five. .................................................................. 39

II.   The District Court Did Not Err in Dismissing Plaintiffs' UCL Claim. .................................................................................... 42

     A.   Plaintiffs did not satisfy the unlawful or unfair prongs. ..... 43

     B.   Plaintiffs did not satisfy the fraudulent prong .................... 46

III.  The District Court Did Not Abuse its Discretion in Denying Plaintiffs' Motions for Reconsideration. ....................................... 47

CONCLUSION ................................................................................. 49

# Table of Citations

Page

## CASES

*American Tobacco Co. v. United States*, 328 U.S. 781 (1946) ............... 40

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................... 14

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
    472 U.S. 585 (1985) .............................................................. 36, 37, 38

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of
    Carpenters*, 459 U.S. 519 (1983) .................................................... 23

*Atl. Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328 (1990) .................... 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................... 1

*Blue Shield of Va. v. McCready*,
    457 U.S. 465 (1982) ........................................6, 7, 22, 23, 24, 25, 26, 27

*Boyd v. Warden, Holman Corr. Facility*,
    856 F.3d 853 (11th Cir. 2017) .................................................... 14, 42

*Brady v. Medtronic, Inc.*,
    2014 WL 1377830 (S.D. Fla. Apr. 8, 2014) ...................................... 29

*Brown Shoe Co. v. United States,* 370 U.S. 294 (1962) ................... 19, 20

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977) .................................................................. 15, 28

*Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104 (1986) ........ 27, 28

*Carter v. BPCL Mgmt.*,
    2021 WL 7502562 (S.D. Fla. Sept. 22, 2021) .................................... 30

*Casault v. Fed. Nat'l Mortg. Ass'n*,
    915 F. Supp. 2d 1113 (C.D. Cal. 2012) ............................................ 45

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) .................................................................. 43

*Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997) ....... 2

*Coronavirus Rep. Corp. v. Apple Inc.*,
    No. 24-08660 (N. D. Cal. Jul. 30, 2025) ............................................ 31

*Coronavirus Rep. v. N. D. Cal.*,
    No. 25-7761 (9th Cir. June 11, 2026) ............................................. 48

*Coronavirus Rep. v. Apple*, 85 F.4th 948 (9th Cir. 2023) ...................... 5

*Dorman v. Aronofsky*, 36 F.4th 1306 (11th Cir. 2022) .......................... 17

*Dreamstime.com, LLC v. Google LLC*,
    2022 WL 17427039 (9th Cir. Dec. 12, 2022) .................................... 46

iv

Page

Cases—continued:

*Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*,
   797 F.3d 1248 (11th Cir. 2015)........................................................37

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
   504 U.S. 451 (1992)...........................................................................34

*Ekbatani v. Cmty. Care Health Network, LLC*,
   No. 21-12322, 2022 WL 31793 (11th Cir. Jan. 4, 2022)....................16

*Fed. Trad. Comm'n v Qualcomm Inc.*, 969 F.3d 974 (9th Cir. 2020).....16

*Feldman v. American Dawn, Inc.*,
   849 F.3d 1333 (11th Cir. 2017)........................................................25

*Fla. Seed Co. v. Monsanto Co.*, 105 F.3d 1372 (11th Cir. 1997).............15

*Green Country Food Mkt., Inc. v. Bottling Grp.*,
   371 F.3d 1275 (10th Cir. 2004)........................................................36

*Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*,
   806 F.3d 162 (3d Cir. 2015) ......................................................24, 26

*In re Aluminum Warehousing Antitrust Litig.*,
   833 F.3d 151 (2d Cir. 2016) .............................................................23

*In re Brinker Data Incident Litig.*,
   No. 18-686, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020) ...................43

*Isaacs v. Apple, Inc.*, No. 21-CV-5567 (N.D. Cal. Nov. 11, 2021),
   *aff'd Coronavirus Reporter v. Apple*,
   85 F.4th 948 (9th Cir. 2023) ..............................................................2

*Isaacs v. Dartmouth Hitchcock Med. Ctr.*,
   No. 19-CV-8000 (C.D. Cal. Sep. 16, 2019)..........................................2

*Isaacs v. Keller Williams Realty, Inc.*, 23-CV-81393 ...............................2

*Isaacs v. USC Keck Sch. of Med.*, 846 F. App'x 519 (2021) ......................2

*Jones v. Bank of Am., N.A.*,
   564 F. App'x 432 (11th Cir. 2014).....................................................30

*Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612 (1993) .............44, 45

*Levine v. Cent. Fla. Med. Affiliates, Inc.*,
   72 F.3d 1538 (11th Cir. 1996)...........................................................33

*Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007).....42

*Michael Linet, Inc. v. Vill. of Wellington*,
   408 F.3d 757 (11th Cir. 2005)...........................................................48

*Midwest Gas Servs., Inc. v. Ind. Gas Co., Inc.*,
   317 F.3d 703 (7th Cir. 2003).............................................................39

Page

Cases—continued:

*Moore v. Potter*, 141 F. App'x 803 (11th Cir. 2005).................................. 32
*Mr. Furniture Warehouse, Inc. v. Barclays Am./Com. Inc.*,
    919 F.2d 1517 (11th Cir. 1990)................................................... 26, 27
*Mun. Utils. Bd. of Albertville v. Ala. Power Co.*,
    934 F.2d 1493 (11th Cir. 1991)......................................................... 15
*Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Distrib. Co.*,
    748 F.2d 602 (11th Cir. 1984)........................................................... 33
*Newbauer v. Carnival Corp.*, 26 F.4th 931 (11th Cir. 2022) ................. 45
*Ohio v. American Express Co.*, 585 U.S. 529 (2018) ............. 17, 18, 19, 34
*OJ Commerce, LLC v. KidKraft, Inc.*,
    34 F.4th 1232 (11th Cir. 2022) ................................................... 37, 38
*Omnipol, A.S. v. Multinational Def. Servs., LLC*,
    32 F.4th 1298 (11th Cir. 2022) ......................................................... 46
*Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l Hosp.*,
    604 F.3d 1291 (11th Cir. 2010)................................................... 15, 16
*Province v. Cleveland Press Pub'lg Co.*,
    787 F.2d 1047 (6th Cir. 1986).......................................................... 23
*Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008) .................................. 30
*Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282 (11th Cir. 2001) .... 47
*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*,
    634 F. Supp. 2d 1009 (N.D. Cal. 2007)............................................. 44
*Southaven Land Co. v. Malone & Hyde, Inc.*,
    715 F.2d 1079 (6th Cir. 1983)........................................................... 27
*Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447 (1993)................ 33, 35
*Sunbeam Television Corp v. Nielsen Media Research, Inc.*,
    711 F.3d 1264 (11th Cir. 2013)................................................... 26, 28
*Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.*,
    12 F.3d 609 (6th Cir. 1993).............................................................. 35
*Thomason v. Ala. Home Builders Licensure Bd.*,
    741 F. App'x 638 (11th Cir. 2018)..................................................... 30
*United States v. Cerceda*, 172 F.3d 806 (11th Cir. 1999) ...................... 48
*United States v. Google,* 747 F. Supp. 3d. 1 (D.D.C. 2024)..................... 19
*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP,*
    540 U.S. 398 (2004) ................................................................. 37, 38

Page

Cases—continued:

*Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*,
  178 F. Supp. 2d 1099 (C.D. Cal. 2001) ............................................. 46
*Whitepages, Inc. v. Isaacs*,
  No. 16-CV-175 (N.D. Cal. Jan. 11, 2016),
  *aff'd Whitepages, Inc. v. Isaacs*, 698 F. App'x 613 (2017) .................... 2

## STATUTES AND RULES

15 U.S.C. § 1 ........................................................................... 33, 34
15 U.S.C. § 2 ..............................................................29, 36, 39, 40, 41
15 U.S.C. § 15 .................................................................................28
15 U.S.C. § 1332 ...............................................................................9
18 U.S.C. § 1512 ........................................................................ 43, 44
28 U.S.C. § 6 .....................................................................................8
Fed. R. Civ. P. 9 ..............................................................................45
Fed. R. Civ. P. 12 ...................................................................... 14, 16
Cal. Bus. & Pro. Code § 17200. ........................1, 8, 13, 41, 42, 43, 45, 47
Fla. Stat. § 501.201 ...........................................................................8
S.D. Fla. R. 7.1................................................................................30

## OTHER AUTHORITIES

2A Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law*
  ¶ 337a (5th ed. & Supp. 2025) ..........................................................15

## JURISDICTIONAL STATEMENT

Google adopts and incorporates by reference the Jurisdictional Statement in Plaintiff-Appellant Greenflight's Opening Brief, *see* GVC Br. 1., with one exception: the district court had jurisdiction over Plaintiffs' California Unfair Competition Law claim under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)—not supplemental jurisdiction. The district court declined to exercise the latter. Dkt.53:p.16.

## STATEMENT OF THE ISSUES

Although Plaintiffs filed two separate briefs and suggest this case presents eleven issues for the Court, their appeal presents three straightforward questions.

1.    Whether the district court correctly dismissed Plaintiffs' antitrust claims, where it found that Plaintiffs lacked antitrust standing and that the claims failed on additional, independent grounds.

2.    Whether the District Court correctly dismissed Plaintiffs' California Unfair Competition Law claim, where Plaintiffs provided no plausible allegations that Google committed an underlying violation of the antitrust laws or the federal witness tampering statute, or engaged in a fraudulent business practice.

3.    Whether the District Court correctly denied Plaintiffs' multiple Motions for Reconsideration, where Plaintiffs failed to cite new evidence and re-raised the same arguments the court had previously decided against them.

1

## STATEMENT OF THE CASE

Plaintiff Jeffrey D. Isaacs is a serial litigant whose latest foray into federal court—far from his first[1]—asserted antitrust claims against Google.  Isaacs and his closely held company Greenflight Venture Corporation alleged that Google violated federal antitrust laws and engaged in unfair competition when Plaintiffs' website fell in prominence on Google's search results.

---

[1]    As Judge Rosenberg explained below in her order granting Google's motion to dismiss, Plaintiffs' litigation history provides an appropriate introduction to the events that gave rise to the case. Dkt.65:pp.1–5 (citing *Isaacs v. Apple, Inc.*, No. 21-CV-5567 (N.D. Cal. Nov. 11, 2021), Dkt.85 (dismissing complaint for lack of antitrust standing and observing the operative complaint "does not provide sufficient clarity for the Court to assess the threshold question of whether there is a relevant market for Plaintiffs antitrust claims. One cannot discern what is included and what is not…."), *aff'd, Coronavirus Rep. v. Apple*, 85 F.4th 948 (9th Cir. 2023) (affirming dismissal for failure to state a claim and noting the operative complaint alleged "at least fifteen 'relevant markets' pertinent to its antitrust claims but made no effort at all to define the markets or to distinguish them from one another")); *Isaacs v. USC Keck Sch. of Med.*, 846 F. App'x 519 (2021) (affirming order for attorney's fees against Isaacs); *Isaacs v. Keller Williams Realty, Inc.*, 23-CV-81393 (magistrate recommending dismissal of the complaint as a "shotgun pleading"); *Isaacs v. Dartmouth Hitchcock Med. Ctr.*, No. 19-CV-8000 (C.D. Cal. Sep. 16, 2019) (denying Plaintiff's motion for a preliminary injunction and finding "Plaintiff has virtually no chance of success on the merits of this case"); *Whitepages, Inc. v. Isaacs*, No. 16-CV-175 (N.D. Cal. Jan. 11, 2016) (dismissing Greenflight's counterclaims and ruling its patent invalid), *aff'd, Whitepages, Inc. v. Isaacs*, 698 F. App'x 613, 614 (2017) (without need for opinion).

Stripped of its sprawling and conclusory allegations, the Second Amended Complaint failed to state a claim for relief. Indeed, one of Plaintiffs' theories of liability was so lacking that the district court was moved to observe: "[I]nstead of conceding the lack of legal authority for its claim, Greenflight relies upon a quotation that is either fabricated or hallucinated." Dkt.65:p.18. Because this was the second time the district court found that Plaintiffs failed to state a claim for relief against Google, it dismissed Plaintiffs' pleading with prejudice.

In a last-ditch effort, Plaintiffs have now reframed the proceedings below, arguing there are eleven different ways this Court can reverse the district court on appeal. Boiled to their essence, Plaintiffs' opening briefs present a scatter-shot theory of antitrust standing that has no cognizable basis in law. They also fail to show that the district court erred in its analysis. Accordingly, the district court's judgment should be affirmed.

## PROCEDURAL BACKGROUND

The procedural background of this case is long and convoluted as a result of Plaintiffs' shifting theories and the generous opportunities the

3

district court gave Plaintiffs to amend to attempt to plead a cognizable claim.

Isaacs originally filed a *pro se* complaint on April 1, 2024, alleging solely a patent claim.  Dkt.1.  After Google moved to dismiss, noting among other things that Isaacs was not the holder of the alleged patent sued upon, Dkt.16, he amended his pleading.  Dkt.24.  The Amended Complaint contained two principal additions: It added as a plaintiff Isaacs's closely held company Greenflight, represented by counsel, and it also added antitrust claims and state law claims, many of which were styled as class action claims.

Recognizing that Greenflight sufficiently represented Isaacs's interests, the court severed and stayed his *pro se* antitrust claims. Dkt.26.

The Amended Complaint continued to allege infringement of a patent for "reverse phone search technology"—a tool that allows a person to input a phone number into an application and learn the identity of an anonymous caller.  Dkt.24 ("AC") ¶ 23; Dkt.61

4

("SAC")[2] ¶¶ 21, 25. Plaintiffs used this technology to create OkCaller—a website they claimed "fundamentally allowed Google to reach the success it enjoys today." AC; ¶ 25; SAC ¶¶ 25–26.[3]

The Amended Complaint contended Isaacs also developed an app called "Coronavirus Reporter." AC ¶ 32; SAC ¶ 34. After Apple "rejected" this app from the Apple App Store, Isaacs allegedly "became a lead witness in Apple antitrust matters concerning App censorship…." *Id.* Plaintiffs claimed that "[o]n the day Dr. Isaacs tendered a Closing Brief to the Ninth Circuit in the Apple antitrust lawsuit, Google abruptly terminated the OkCaller partnership without any prior notice." AC ¶ 33; SAC ¶ 35.[4] From this emerges Plaintiffs' speculative

---

[2] Citations are also to the operative Second Amended Complaint ("SAC") where appropriate, Dkt.61, as the SAC contained substantially similar allegations.

[3] The district court dismissed the patent claim after finding that Greenflight had not identified any Google product that infringed (direct infringement) or "any specific third-party product that infringes upon the Plaintiff's patent" (indirect infringement). Dkt.53:p.13. Greenflight abandoned its patent infringement claim, Dkt.65:p.4, and it is not at issue in this appeal.

[4] The Ninth Circuit case referenced there is *Coronavirus Reporter v. Apple*, 85 F.4th 948 (9th Cir. 2023) (affirming dismissal for failure to state a claim and noting the operative complaint alleged "at least fifteen

hypothesis: "[A]s best as Plaintiffs' [sic] can ascertain prior to discovery, Google dropped OkCaller's rankings after learning about [Isaacs's] litigation history, including litigation against Big Tech."  AC ¶ 36; SAC ¶ 38.

### The District Court's Dismissal of All Federal Law Claims (With Leave to Replead) and Reservation as to State Law Claims

The district judge dismissed the antitrust claims after concluding that Plaintiffs lacked antitrust standing.  Dkt.53:pp.8–11.  *First*, although Plaintiffs alleged that Google monopolizes the "general search services" market, the Amended Complaint failed to plead facts that suggest Plaintiffs are competitors in that same market.  *Id.*

*Second*, the Plaintiffs could not rely on *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982), to establish antitrust standing.  The Amended Complaint provided no allegation that OkCaller's deindexing was "necessary for the Defendant's search engine monopoly to be accomplished"—an essential contention to invoke *McCready*. Dkt.53:pp.2–6.

---

'relevant markets' pertinent to its antitrust claims but made no effort at all to define the markets or to distinguish them from one another").

*Third*, Plaintiffs failed to assert that Google "leveraged its monopoly power in general search services" to harm the other markets OkCaller allegedly participates in: the "vertical search provider market" and the "reverse phone number lookup market." Dkt.53:p.7. The court recognized that the Amended Complaint defined these downstream markets "so broadly" that it would be implausible to infer a "dangerous probability" that Google monopolizes either. *Id.* For example, the Amended Complaint defined the "vertical search market" to include any website that allows "specialized searching." *Id.* This would go so far as to include all "shopping services that utilize search bars"—a definition that on its face includes Amazon and Walmart among many other websites. *Id.*; *see* AC ¶ 66. And Plaintiffs pleaded the existence of "dozens" of reverse phone search websites, including Spokeo and White Pages. AC ¶¶ 55, 80. In short, Plaintiffs' very allegations undermined any "dangerous probability" that Google will monopolize either the alleged vertical search market or the alleged reverse phone number lookup market. Dkt.53:pp.7–8.

The court also addressed Plaintiffs' "refusal to deal" claim. Dkt.53:pp.11–12. It began by observing that the claim likewise

7

required well-pleaded allegations of a relevant antitrust market and antitrust standing—which the Amended Complaint did not contain.  It further observed that, although "there *can* be liability when a defendant refuses to sell to a competitor-plaintiff at the defendant's own retail market price after the two parties previously engaged in a long-term profitable course of dealing," that liability theory did not even "remotely resemble the allegations in the Plaintiff's Complaint."  Dkt.53:p.12.

Ultimately, the court found the Amended Complaint alleged "at best, that [Plaintiffs] felt the effects of the alleged monopoly." Dkt.53:p.6.  Because this is squarely insufficient to provide Plaintiffs with standing under binding Eleventh Circuit precedent, the court dismissed each antitrust claim.

Separately, the court reserved ruling on Plaintiffs' state law claims: alleged violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201,[5] and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200.  Dkt.53:pp.16–17.  It posed the question as to whether it had jurisdiction under the Class

---

[5] Plaintiffs abandoned their Florida law claim in the SAC and it is not at issue in this appeal.

Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), having declined to exercise supplemental jurisdiction over these claims, and invited briefing on the issue.  Dkt.53:pp.16–17.  Following supplemental briefing in which all parties agreed that CAFA conferred jurisdiction, Dkt.54, Dkt.55; the court concluded that there was federal jurisdiction over the state-law claims.  Dkt.58.

Finally, the court recognized that, among other things, "the Plaintiffs ha[d] leveraged discovery in this case to harass" Google and that Plaintiffs had already once amended their complaint. Dkt.53:pp.17–18.  It nevertheless provided one final opportunity for Plaintiffs to amend their pleadings.  Dkt.53:p.19.

### <u>The District Court's Grant of the Motion to Dismiss with Prejudice</u>

Thereafter, Plaintiffs filed the SAC, the only complaint at issue on appeal.  Dkt.61.  The SAC abandoned the Florida law and patent claims and added a claim for "Illegal Duopoly Control of the U.S. Internet Content Access."  SAC ¶¶ 142–148.  The factual allegations largely mirrored those of the Amended Complaint with the exception that, as to Count 1, Plaintiffs introduced inscrutable allegations regarding the use of Google Webmaster Tools by websites.  *See, e.g.*, *id.* ¶¶ 61–62, 64, 94,

9

107.  As to Count 2, Plaintiffs alleged an even greater number of downstream markets that Google purportedly monopolizes.  *Id.*  ¶¶ 68–86.

Google moved to dismiss, Dkt.62, and the court dismissed all of Plaintiffs' claims—this time with prejudice.  Dkt.65.  In its dismissal order, the court concluded that Greenflight's response to Google's motion to dismiss for two of the five counts was "so incoherent" as to constitute a concession of the "cogent points raised in Google's motion." Dkt.65:p.7.  It also determined that Plaintiffs had not fixed the essential problems the court had identified in its previous order: Plaintiffs still lacked antitrust standing and failed to plead essential elements of each antitrust count.  Dkt.65:pp.20–21.

The court also considered Plaintiffs' Unfair Competition Law claim under California law.  The court found that portions of that claim were resolved by its rejection of the antitrust claims.  Dkt.65:pp.15,17. It further concluded that the SAC provided no indication that Google engaged in fraudulent business practices.  Dkt.65:pp.15–16. Moreover, Plaintiffs' contention that Google violated the federal witness tampering statute was too vague to be plausible: the allegations did not identify

10

the provision of the particular statute that Google allegedly violated, nor did they support an alleged violation.  Dkt.65:p.15.  The court therefore dismissed that claim as well. Dkt.65:pp.17–18.

Shortly thereafter, the court dismissed Isaacs's claims—which had been stayed—"for the same reasons the Court previously dismissed the (identical) claims brought by Plaintiff Greenflight."  Dkt.69.

## The District Court's Rejection of Multiple Motions for Reconsideration

Greenflight moved for reconsideration of the court's dismissal order.  Dkt.66.  The court summarily denied that motion.  Dkt.67.  Isaacs waited nearly six months, then filed a motion for reconsideration as to his identical dismissal, Dkt.71, which Greenflight purported to join.  Dkt.74.  The district court denied both motions.  Dkt.78.

Plaintiffs now appeal the dismissal orders and the order denying the motions for reconsideration.  Dkt.80; Dkt.85.

11

## SUMMARY OF THE ARGUMENT

The district court's judgment should be affirmed in its entirety.

*First*, the district court properly found that Isaacs's and Greenflight's antitrust claims failed to state a claim for relief. Plaintiffs purported to bring four claims for unlawful monopolization of the *general search engines* market. But Plaintiffs failed to plausibly allege they participate in that market as Google's competitor. They also failed to plausibly allege that Google's anticompetitive conduct in the general search engines market stifles competition in four other alleged "downstream" markets. Without plausible allegations of either, Plaintiffs lacked antitrust standing.

Further, the antitrust claims warranted dismissal for reasons even beyond Plaintiffs' lack of antitrust injury. As the district court found, Plaintiffs waived a response to Google's motion to dismiss Counts One and Two by filing a nonresponsive brief. Count Three did not allege sufficient facts satisfying the very narrow circumstances where courts can recognize a "refusal to deal" claim. And Count Five relied on a theory of antitrust liability that this Court never has recognized. Therefore, the court properly dismissed all Plaintiffs' antitrust claims.

12

*Second*, the district court properly dismissed Plaintiffs' claim under California's Unfair Competition Law ("UCL"). The SAC did not allege that Google violated the antitrust laws, that Google plausibly engaged in "witness tampering" with respect to Isaacs after he filed an appellate brief in a case in which Google was not a party, or that Google deceives users of its general search engine. Without such allegations, Plaintiffs failed to allege a UCL violation.

*Third*, the district court did not abuse its discretion by denying Plaintiffs' multiple motions for reconsideration. After the court entered two lengthy dismissal orders on essentially the same claims, Plaintiffs moved the court to reconsider its findings. As support, Plaintiffs submitted a nonbinding, distinguishable order from a California district court analyzing different antitrust claims against Google. Because this was a bald-faced attempt to relitigate issues the court already decided against Plaintiffs, the court properly denied Plaintiffs' motions.

13

## ARGUMENT

Although Plaintiffs split their grievances into eleven scattershot issues, fundamentally, there are three issues on appeal. Each presents a straightforward question of law warranting affirmance.

## I. The District Court Did Not Err in Dismissing Plaintiffs' Antitrust Claims.

This Court reviews an order granting a Rule 12(b)(6) motion to dismiss de novo. *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 863–64 (11th Cir. 2017). When doing so, it accepts well-pleaded facts as true and construes them in the light most favorable to the plaintiff. *Id.* But the Court need not accept "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). Doing so, this Court should affirm the district court's dismissal of Plaintiffs' antitrust claims.

### A. Plaintiffs Lacked Antitrust Standing.

Four of Plaintiffs' claims—Counts One, Two, Three, and Five— asserted violations of the federal antitrust laws. All contained the same across-the-board deficiency: Plaintiffs lacked antitrust standing. Thus, the district court was correct to dismiss them.

14

### 1.    Plaintiffs failed to allege they are Google's competitor.

It is axiomatic that a plaintiff must have Article III standing to proceed in federal court.  A private plaintiff asserting an antitrust claim has the additional hurdle of establishing antitrust standing.  *Mun. Utils. Bd. of Albertville v. Ala. Power Co.*, 934 F.2d 1493, 1498 (11th Cir. 1991).  Antitrust standing requires injury "of the type the antitrust laws were intended to prevent."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  In other words, a plaintiff's complained-of injuries must be directly tied to the plaintiff's status as a "customer or competitor" in the relevant antitrust market identified in the complaint.  *Fla. Seed Co.v Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997); *see Atl. Richfield Co. v. USA Pet. Co.*, 495 U.S. 328, 334 (1990); *see also* 2A Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 337a (5th ed. & Supp. 2025) ("[A]n antitrust violation can cause many types of injury, but only some of these are antitrust injury.").[6]   When a

---

[6] Under the standing inquiry, in addition to showing antitrust injury, a plaintiff must also establish that it is an "efficient enforcer of the antitrust laws." *Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l Hosp.,* 604 F.3d 1291, 1299 (11th Cir. 2010).  Courts make that determination by looking at several non-exhaustive factors, including how remote a plaintiff's injury is, whether other plaintiffs are "better suited to vindicate the harm," and whether the damages are speculative.  *Id.*  Because neither Plaintiff suffered an antitrust injury, this Court

plaintiff lacks antitrust standing, a court must dismiss a plaintiff's claims under Rule 12(b)(6). *Ekbatani v. Cmty. Care Health Network, LLC,* No. 21-12322, 2022 WL 31793, at *1–2 (11th Cir. Jan. 4, 2022).

The district court correctly concluded that the SAC did not allege facts suggesting OkCaller is a customer or competitor in the *general search engines* market. SAC ¶ 1 (emphasis added). It provided no facts indicating that OkCaller returns any information to a user outside a name or phone number or that it otherwise operates as a general search engine. To the contrary, the SAC itself characterized OkCaller as a "specialized search" website. SAC ¶ 20. This alone showed that any alleged injury—such as OkCaller's purported loss of goodwill, revenue, and investment opportunity—occurred outside the market Google allegedly monopolizes. Thus, because OkCaller's alleged injuries are "experienced in another market," it lacked standing. *Fed. Trad. Comm'n v Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) ("Parties

---

need not reach this additional requirement. However, were it to, it would find that those factors reveal Plaintiffs to not be efficient enforcers for the same core reason that there is no antitrust injury in the first place: any alleged injury is indirect and remote from the conduct alleged to violate the antitrust laws.

16

whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury." (citation omitted)).

On appeal, Greenflight invokes *Ohio v. American Express Co.*, 585 U.S. 529 (2018) (*"Amex"*), and argues that it plausibly pleaded the very specific type of market described there—a two-sided transaction platform. GVC Br. 15–16. It argues that formulation somehow renders Plaintiffs participants in the antitrust market in which Google is alleged to have violated the antitrust laws. GVC Br. 7. Therefore, Greenflight argues, Plaintiffs have antitrust standing. *Id.* That argument fails for multiple reasons.

First, that is not what Plaintiffs pleaded. To the contrary, they consistently alleged, over and over again, that OkCaller is Google's *competitor*. *See, e.g.*, SAC ¶¶ 4, 6, 29, 87, 88, 92, 107, 112. Greenflight's new argument that Google's "multi-sided" platform makes Plaintiffs Google's customer under *Amex* cannot carry the day. Plaintiffs did not suggest anywhere outside Greenflight's response to Google's motion to dismiss that OkCaller is Google's customer. *Compare* Dkt.63:p.3, *with* Dkt.61. A plaintiff is unable to amend its pleadings through a response

17

memorandum.  *See Dorman v. Aronofsky*, 36 F.4th 1306, 1317 (11th Cir. 2022) ("Facts contained in a motion or brief cannot substitute for missing allegations in the complaint." (citation omitted)).

Second, Greenflight's conclusory statement in its appellate brief that the general search engines market is "plausibly transactional," GVC Br. 15, is simply the invocation of jargon divorced from pleaded facts and established law.  *Amex* identifies the limited circumstances in which a court must treat two distinct groups that interact with a particular platform as constituting a single market.  585 U.S. at 544.

But *Amex* did not overturn the fundamental principle that, generally, separate sides of a platform should be considered independent markets.  *Id.* at 544–45.  *Amex* instead announced a limited exception to that general principle for two-sided *transaction* platforms—in that case, a credit card platform.  *Id.* at 545.  Such platforms "facilitate a single, simultaneous transaction between participants."  *Id.*  For example, credit card companies can sell their services "only" if a "merchant and cardholder both simultaneously choose to use the network."  *Id.*

18

Plaintiffs did not plead, let alone plausibly, that general search engines are two-sided *transaction* platforms.  Google Search operates by creating information indices from which it retrieves and ranks information in response to a user query—presenting a search results page that includes, among other things, links to publicly available websites.  *See United States v. Google,* 747 F. Supp. 3d. 1, 38–39 (D.D.C. 2024).  There is no allegation (nor could there be) that Google can provide its services only if a particular website like OkCaller and a customer *simultaneously* interact, i.e., engage in a transaction on Google's platform.

Greenflight also argues that *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962), suggests Plaintiffs have antitrust standing.  GVC Br. 11, 16, 20.  That case only reinforces the lack of substance in Plaintiffs' SAC.  There, the Court explained that courts can view "interchangeable[]" products for which there is "cross-elasticity of demand" as a single market.  *Brown Shoe*, 370 U.S. at 325.  Courts also can view submarkets within a broader market as distinct markets— identifiable from "practical indicia" such as "public recognition of the submarket as a separate economic entity."  *Id.*  At base, *Brown Shoe*

19

requires a court to consider the economic realities when defining the relevant antitrust market and when determining whether a plaintiff has pleaded the defendant's chances of destroying competition in it.

Plaintiffs provided no plausible allegations that reverse phone number search engines are interchangeable substitutes for general search engines. Indeed, the SAC itself pointed the other way: it contrasted OkCaller, a "specialized content provider[]" providing a "niche service[]," with Google, a general search engine. SAC ¶ 13. And it provided no allegations that the alleged "downstream" markets (vertical search provider services, directory services, internet content access, and Google single-brand content markets) are distinct sub-markets within the general search engines market. *Contra Brown Shoe*, 370 U.S. at 326 (holding that women's, men's, and children's shoes are distinct retail submarkets "noncompetitive" with each other). Although Greenflight argues on appeal that *Brown Shoe* warrants reversal so that Plaintiffs can conduct further discovery on their market theory, GVC Br. 51, it yet again misses the fundamental point: the SAC lacked any allegation that Plaintiffs are customers or competitors in an adequately pleaded antitrust market.

Greenflight also argues that the district court erred because it supposedly reframed Plaintiffs' pleaded market and only analyzed whether Google plausibly monopolized the "Webmaster Tools" market. GVC Br. 10–11.  But that is not what the court did.  In its first dismissal order, the district court found that Plaintiffs had not sufficiently alleged that they are participants in the general search engines market.  Dkt.53:p.6.  Without sufficient allegations of market participation, OkCaller's alleged deindexing was unconnected to Google's alleged antitrust violations.  Dkt.53:pp.3–10.

One of the few new allegations in the SAC was Plaintiffs' repeated reference to "Google's Webmasters Tools."  *See, e.g.*, SAC ¶¶ 35, 50, 61–62, 64, 67.  Greenflight's opposition brief to Google's motion to dismiss argued that OkCaller is a "direct user[]" of "Google's Webmaster Tools" and, under its logic, supposedly Google's "consumer[]."  Dkt.63:p.3.

The district court addressed this new theory in its Order granting the motion to dismiss.  Dkt.65:p.10.  But it did not do so to the exclusion of addressing Plaintiffs' myriad other theories.  Indeed, the court made clear that "this is not a case about the webmaster tools market."  *Id.* Ultimately, in dismissing Count 1, the court rejected all of the theories

21

Plaintiffs had raised, observing that it had rejected many of them previously and that there was nothing in the SAC that altered that prior analysis.  Dkt.65:pp.10–11.

### 2. *McCready does not remedy Plaintiffs' lack of standing.*

Plaintiffs argue the SAC alleged an antitrust injury under *Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982).  Plaintiffs claimed Google excludes a class of specialized search providers (like OkCaller) by "deindexing" them from Google's search results.  GVC Br. 26; SAC ¶¶ 98, 113, 120, 132.  This supposedly forecloses "access to a critical channel" that websites like OkCaller otherwise cannot reach on competitive terms.  GVC Br. 26.  Because Plaintiffs maintain that deindexing is "inextricably intertwined" with the injury Google supposedly intends to inflict on Google's actual competitors, Greenflight argues the district court should have allowed their claims to proceed. GVC Br. 24–26.

Plaintiffs misstate the holding of *McCready*.  There, insurance companies refused to reimburse consumers who went to psychologists instead of psychiatrists for psychotherapy services.  457 U.S. at 468. The plaintiff alleged the insurance companies and psychiatrists were

violating the antitrust laws by conspiring to preclude psychologists; the defendants wished to prevent encroachment on a market and sought to preserve it exclusively for physicians. *McCready*, 457 U.S. at 478–79. The way they did that? Denying insurance customers, like the plaintiff in *McCready*, from receiving insurance benefits if they went to a psychologist—the direct market competitors for psychotherapy services. The *McCready* plaintiff had standing because she was a participant in "the very market directly distorted by the antitrust violation." *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 160 (2d Cir. 2016) (citation omitted); *see also Province v. Cleveland Press Pub'lg Co.*, 787 F.2d 1047, 1052 (6th Cir. 1986).

Plaintiffs cannot transform the holding of *McCready* to sidestep doctrinal limits on antitrust standing. The Supreme Court did not dispense with the requirement that a plaintiff must allege it was "directly harmed by the defendants' unlawful conduct" while participating in the relevant market. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 529 n.19 (1983). Instead, *McCready* provides certain non-competitor plaintiffs with antitrust standing only if they plausibly allege that their injuries

23

were the "fulcrum, conduit, or market force" to harm the defendant's actual competitors. *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 173, 175 (3d Cir. 2015) (citation omitted).

There was no allegation (much less a plausible one) that Google's actions vis-a-vis OkCaller had the effect of stifling Google's actual competitors in the general search engine market, such as Bing or Yahoo!  Rather, Plaintiffs only plead that, because OkCaller "appears lower in the Defendant's search engine results, it has standing to sue." Dkt.53:p.8.  That alleges no effect on Google's rivals.  If this were sufficient, any website whose position fluctuates in Google's search rankings would have antitrust standing—a result that flatly contradicts the limitations recognized in *McCready*.  457 U.S. at 477 ("Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property.").

*Feldman v. American Dawn, Inc.*, 849 F.3d 1333 (11th Cir. 2017), underscores the point.  There, the plaintiff, a restaurant linens salesman, alleged a conspiracy by the defendant—a restaurant linens manufacturer— to "freeze" its competitor out of the market.  *Id.* at

24

1339. One of the ways the defendant allegedly did this was by manipulating a third party's bidding process, preventing its competitor from winning. *Id.* The third party informed the competitor that its association with the plaintiff was a "big mistake," leading the competitor to fire the plaintiff. *Id.* Even though the plaintiff's injury was the direct result of the defendant's anticompetitive interference with a bidding process, this Court held the plaintiff's injury was not "inextricably intertwined with the injury the conspirators sought to inflict on the market." *Id.* at 1341 (quoting *McCready*, 457 U.S. at 484 (cleaned up)). Because the plaintiff had pleaded a conspiracy to restrain "competition in the market for restaurant linens, not to harm competition in the market for restaurant linens salesmen," any alleged injury the plaintiff experienced was entirely "collateral" to the anticompetitive conduct. *Feldman*, 849 F.3d at 1341. The plaintiff therefore lacked antitrust standing. *Id.*

So too here. Plaintiffs pleaded that Google maintains an agreement with Apple to monopolize the general search engines market. SAC ¶¶ 1, 6. To the extent there can be a conceivable

25

connection, any deindexing that OkCaller experienced would be—at best—a collateral "effect" of the pleaded anticompetitive conduct.

On appeal, Greenflight invokes two Eleventh Circuit cases as faithful applications of *McCready*. Op. Br. at 25. But the suggestion that *Sunbeam Television Corp v. Nielsen Media Research, Inc.*, 711 F.3d 1264, 1271 (11th Cir. 2013), and *Mr. Furniture Warehouse, Inc. v. Barclays American/Commercial Inc.*, 919 F.2d 1517, 1521 (11th Cir. 1990), helps Greenflight's position beggars belief. In both cases, this Court dismissed antitrust claims after concluding the plaintiff lacked standing. Indeed, *Sunbeam* does not even address *McCready* in its analysis, and *Mr. Furniture* concluded that the plaintiff's alleged facts were "unlike *McCready*," *Mr. Furniture*, 919 F.2d at 1521.

Greenflight also quibbles with the district court's analysis that *McCready* requires the plaintiff's injury to be a "conduit" to reach competitors. GVC Br. 25–26. But the district court is in good company having characterized it this way. *See, e.g., Hanover 3201 Realty*, 806 F.3d at 173; *Southaven Land Co. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1086 (6th Cir. 1983). This Court previously described *McCready* as requiring the plaintiff to allege its injury was a "necessary component"

of the injury to competitors. *Mr. Furniture*, 919 F.2d at 1521. What matters is that the district court correctly recognized a plaintiff's claimed injuries must have been the precise mechanism a defendant allegedly employed to harm its competition. There is no plausible allegation that OkCaller's "deindexing" harmed Google's competitors.

### 3. *Cargill likewise does not provide Plaintiffs with standing.*

Greenflight spills considerable ink, GVC Br. 32–37, arguing that because it also sought injunctive relief that the requirements for antitrust standing were relaxed under *Cargill, Inc. v. Monfort of Colo., Inc.,* 479 U.S. 104 (1986). Not so. In *Cargill*, the Supreme Court held exactly the opposite. "Sections 4 and 16 are . . . best understood as providing complementary remedies for a single set of injuries." *Id.* at 113. Accordingly, plaintiffs seeking injunctive relief "must allege threatened loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful'"—the exact standard for damages standing. *Id.* (quoting *Brunswick*, 429 U. S. at 489).

Greenflight relies entirely on a footnote in *Cargill* wherein the Supreme Court acknowledged that some factors present in a damages

27

suit, such as the possibility of duplicative recovery and complex apportionment, might not be present with claims for prospective relief. *See* GVC Br. 34 (citing *Cargill*, 479 U.S. at 111 n.6). Those are factors *beyond* "antitrust injury" that a court might consider when deciding if a plaintiff has standing to recover damages under § 4 of the Clayton Act. *See* 15 U.S.C. § 15; *Sunbeam*, 711 F.3d at 1271 ("Although a showing of antitrust injury is necessary, it is 'not always sufficient . . . because a party may have suffered antitrust injury but may not be a proper plaintiff under section 4 for other reasons.'" (quoting *Cargill*, 479 U.S. at 489 n.5) (citation modified)).

Plaintiffs thus lack standing to pursue injunctive relief for precisely the same reason Plaintiffs lack standing to pursue their damages claims. The Court therefore should affirm dismissal of each antitrust claim (Counts One, Two, Three, and Five).

## B.    Each Antitrust Claim Warranted Dismissal for Additional, Independent Reasons.

Beyond the fatal antitrust standing problems common to all Plaintiffs' antitrust claims, each failed for additional, independent reasons.

### *1.    Count One was deficient.*

Plaintiffs styled Count One as "Maintaining Monopoly of General Search Engines in Violation of Sherman Act § 2." *See* SAC ¶¶ 103–109; 15 U.S.C. § 2.

Greenflight effectively conceded that this claim should be dismissed when it failed to adequately respond to Google's motion to dismiss, which argued that Greenflight lacked standing to bring it. Greenflight's response in opposition did not identify where in the SAC it alleged OkCaller is in direct competition with Google as a general search engine. *See generally* Dkt.63. To the contrary, the allegations Greenflight cited pleaded precisely the opposite: they recounted how "the significant barriers to entry in general search services" prevent Greenflight from achieving competitor status. *See* Dkt.63:p.5 (citing SAC ¶¶ 60–70, 107). Greenflight then requested discovery—over and over again—to find facts to allege in support of its speculative hypotheses. *See, e.g.*, Dkt.63:p.5–6, 9.

The Southern District of Florida's Local Rules provide that a failure to refute a motion constitutes sufficient cause to grant the motion by default. S.D. Fla. Loc. R. 7.1(c); *see Carter v. BPCL Mgmt.*,

No. 19-60887, 2021 WL 7502562, at *1 (S.D. Fla. Sept. 22, 2021); *Brady v. Medtronic, Inc.*, No. 13-62199, 2014 WL 1377830, at *6 (S.D. Fla. Apr. 8, 2014); *cf. Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (per curiam) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."). The district court invoked the Local Rules as one of several reasons for dismissing Count One. Dkt.65:pp.7–8.

The district court found that Greenflight provided an "incoherent collection of technical jargon and legal phrases" in response to Google's motion to dismiss. *Id.* The court noted it could not even "discern" what the response passages were "intended to convey" or how they "refute[d] Google's cogent argument." Dkt.65:p.8. The pleading citations were "scarce" and, when present, utterly nonresponsive. *Id.* The court therefore found that Greenflight failed to comply with the Local Rules and waived a response to Google's motion for Counts One and Two. *Id.* This Court gives "great deference to a district court's interpretation of its local rules." *Reese v. Herbert*, 527 F.3d 1253, 1267 n.22 (11th Cir. 2008) (citation omitted).

Incomprehensible analysis from a litigant represented by counsel is more than sufficient for the court to find waiver. *See Thomason v. Ala. Home Builders Licensure Bd.*, 741 F. App'x 638, 641 (11th Cir. 2018) (per curiam) (no abuse of discretion when dismissing "rambling" and "incoherent" complaint containing "a confusing combination of facts, legal analysis, and bare accusations").

In both the SAC and in Isaacs's appellate brief, Plaintiffs press that their scattershot accusations are a basis for discovery. Not so. A plaintiff cannot rely on requests for discovery to defeat a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("[P]roceeding to antitrust discovery can be expensive . . . . A district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." (citation modified)). Isaacs's opening brief on appeal is indicative of the type of filing that the district court consistently encountered.[7]

---

[7] The filing of an incomprehensible response is consistent with Isaacs's penchant for filing frivolous lawsuits, which has resulted in a sanctions order against him in other litigation. *See Coronavirus Rep. Corp. v. Apple Inc.*, No. 24-08660 (N. D. Cal. Jul. 30, 2025).

31

He states that the fundamental question in this case is "why" OkCaller was de-indexed in 2022, *see* Is. Br. 15, and insists that ranking criteria documents and internal communications about OkCaller will answer the question—which are exclusively in Google's possession.  He then theorizes that Google's requested discovery stay "only" makes logical sense if Google knew about his "petitioning against Apple." Is. Br. 20.  But that is not a plausible causal chain: it is pure speculation.  Discovery requests cannot render legally insufficient claims plausible.  *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368–69 (11th Cir. 1997) ("[E]ven the most cursory review of the [plaintiffs'] shotgun complaint reveals that it contains a fraud count that is novel and of questionable validity . . . . When the court refused to [consider the motion to dismiss] and, instead, allowed the case to proceed through discovery without an analysis of the fraud claim, it abused its discretion."); *Moore v. Potter*, 141 F. App'x 803, 808 (11th Cir. 2005) (per curiam) ("Any legally unsupported claim that would unduly enlarge the scope of discovery should be eliminated before the discovery stage." (citation modified)).  And, of course, there is a perfectly valid reason for a party to seek a stay of discovery: to avoid the significant

32

costs that are routinely incurred in meritless antitrust claims.  *See Twombly*, 550 U.S. at 559.  All the more so here, where the trial court correctly observed: "there are facts to suggest that the Plaintiffs have leveraged discovery in this case to harass the Defendant."  Dkt.53:p.18.

In sum, this Court could independently affirm dismissal of Count One because Greenflight waived a response under the Local Rules to Google's motion to dismiss those claims.

### 2.   *Count Two was similarly lacking.*

Plaintiffs styled Count Two as "Maintaining Sherman Act § 1 Unreasonable Restraints of Trade in the GSE, VSP, and Directory Services, Internet Access, and Google Single-Brand Content Markets." *See* SAC ¶¶ 110–118; 15 U.S.C. § 1.  An alleged Section One violation requires an agreement between two or more persons that unreasonably restrains trade.  *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1545–46 (11th Cir. 1996).  The plaintiff must be the "target" of the agreement.  *Nat'l. Indep. Theatre Exhibitors, Inc. v. Buena Vista Distrib. Co.*, 748 F.2d 602, 608 (11th Cir. 1984).  A § 1 claim that alleges monopolization of a downstream market requires allegations "(1) that the defendant has engaged in predatory or anticompetitive conduct with

(2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power" in those other markets. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 455–56 (1993).

As it did with Count One, the district court concluded that Greenflight's response brief was so incoherent that it failed to refute Google's arguments that Plaintiffs did not state a § 1 claim. Dkt.65:p.12. This Court could thus affirm dismissal "on that basis alone." *Id.*

Giving Plaintiffs the benefit of the doubt and wading through Greenflight's arguments, the district court also concluded that Count Two still failed to state a plausible claim for relief. Plaintiffs did not sufficiently plead that Google's conduct affects vertical search provider services, directory services, internet access, and Google single-brand content markets— the alleged "downstream" markets. *See* GVC Br. 7.

Antitrust law disfavors legal presumptions that ignore "actual market realities." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 466–67 (1992). Thus, to evaluate whether a defendant's conduct harms competition, courts require "an accurate definition of the relevant market" to analyze if the plaintiff has plausibly alleged "the

34

defendant's ability to lessen or destroy competition." *Amex,* 585 U.S. at 543 (citation modified).

Plaintiffs' downstream markets suffer from a collection of infirmities. Some are so broad that Google could not realistically "destroy competition" in them. *See Spectrum Sports*, 506 U.S. at 455–56. For example, Plaintiffs defined "vertical search providers" to include "specialized online platforms" that provide for a "curated focus on a particular field of information" and specifically provided Expedia and Yelp as examples. SAC ¶¶ 68–70. It is implausible—and indeed, the SAC provided no allegations—that Google monopolizes a market that on its face includes Amazon and Walmart, among others. Plaintiffs' "directory information services" market fares no better. It is far too broad for Google to plausibly monopolize; Plaintiffs explicitly identified Yelp, Whitepages, and Yellowpages as competitors, and otherwise admit that there are "dozens of phone websites" that use the same interface as OkCaller. SAC ¶¶ 55, 71.

The other pleaded markets were legally inadequate. As to the "internet content access market," Plaintiffs defined it as "[g]eneral search engines and smartphone application distribution platforms, [i.e.,

35

Apple's App Store] taken together."  SAC ¶ 82.  For all the same reasons

discussed Section I.A., *supra,* OkCaller is no more plausibly alleged to

be a participant in that combined market than it is in the general

search engine market alone.   As to the "single-brand content" market,

"[e]ven where brand loyalty is intense, courts reject the argument that a

single branded product constitutes a relevant market." *Green Country*

*Food Mkt., Inc. v. Bottling Grp.*, 371 F.3d 1275, 1282 (10th Cir. 2004)

(citation modified).  Because the SAC recognized that "alternative

search engines like Bing or Yahoo exist," SAC ¶ 78, Plaintiffs failed to

plausibly plead that Google has created a single brand market.  *See*

*Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.*, 12 F.3d 609, 614 (6th

Cir. 1993) (requiring allegations that "no reasonable substitutes exist"

for single brand market claims).   All together, Plaintiffs' "downstream"

market allegations did not pass muster.

### 3.    *Greenflight did not plead essential elements of Count Three.*

In Count Three, Greenflight asserted a claim against Google for

"refusal to Deal in Violation of Section 2 of the Sherman Act."

SAC ¶¶ 119–128.  For this claim, Greenflight pleaded that Google

36

unilaterally refuses to deal "with independent web developers and specialized content providers, such as Plaintiffs." *Id.* ¶ 120.

The SAC aspired to meet the requirements of *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), on this theory of liability. There, the Supreme Court held that a monopolist's refusal to deal with a prior partner can constitute actionable, exclusionary conduct. But facts supporting essential elements of this claim—a prior profitable relationship between Google and OkCaller that Google intentionally terminated in a manner that destroyed short term profits for anticompetitive reasons—were absent from the SAC. *See OJ Commerce, LLC v. KidKraft, Inc.*, 34 F.4th 1232, 1245–46 (11th Cir. 2022). As this Court explained in *Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1266 (11th Cir. 2015), *Aspen Skiing* constitutes a "limited exception" to the general rule that "firms may choose the other companies with which they deal." *Id.* (citing *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004)). Indeed, the Supreme Court has clarified that *Aspen Skiing* is as "at or near the outer boundary of § 2 liability." *Trinko*, 549 U.S. at 409.

37

Plaintiffs' allegations do not come close to satisfying that standard. *Aspen Skiing* included a defendant who refused to sell to the plaintiff at the defendant's own market retail price after the two parties engaged in a long-term profitable course of dealing. *Duty Free Americas*, 797 F.3d at 1266 (citing *Trinko*). In contrast, the SAC vaguely pointed to an alleged refusal "to provide fair and equitable access to [Google's] search engine results." SAC ¶ 123. Plaintiffs never alleged that Google *previously* agreed with either Plaintiff to rank OkCaller in any particular manner or at any particular rate, or that the supposed termination of the relationship made no economic sense unless its purpose was to drive a competitor out of the market—allowing Google to recoup lost profits later through a reinforced monopoly. Because these facts "differ materially from those presented in *Aspen Skiing*," the Court should decline to extend *Aspen Skiing*'s narrow cause of action to cover Plaintiffs' allegations. *OJ Commerce*, 34 F.4th at 1245 (citing *Trinko*, 540 U.S. at 409–11).

On appeal, Greenflight suggests the district court analyzed this claim by requiring a formal, previous "joint venture." GVC Br. 47. That is a distortion of the district court's work. In its first dismissal order,

the district court found that the "refusal to deal present in *Aspen Skiing*" was "not analogous" to Plaintiffs' allegations. Dkt.53:p.11. It noted that Plaintiffs themselves maintained their enduring presence on Google's search results, and it rejected OkCaller's argument that higher traffic in the past indicated a prior joint venture with Google. Dkt.53:p.12 & n.8, n.9. In its second dismissal order, because the allegations had not fundamentally changed, the court stated that it had "addressed this count at length in its prior order of dismissal" and declined to do so for "a second time." Dkt.65:p.14.

### 4. *Greenflight did not plead essential elements of Count Five.*

Count Five alleged that Google maintains an "Illegal Duopoly" over "U.S. Internet Content Access in Violation of Section 2 of the Sherman Act." SAC ¶¶ 142–148. Plaintiffs claimed that Google "exercises control over U.S. internet content access in concert with Apple, forming a duopoly that effectively dominates all meaningful channels by which consumers access online information." SAC ¶ 143. But this Court has never recognized a cause of action for "illegal duopoly." And other courts have held that two firms cannot compromise a "monopoly" under Section 2. *See Midwest Gas Servs., Inc. v. Ind. Gas*

*Co., Inc.*, 317 F.3d 703, 713 (7th Cir. 2003) ("[A] § 2 claim can only accuse one firm of being a monopolist."); *see* Dkt.65:p.19 ("[T]he Court declines to recognize a claim that ignores the prefix 'mono' in the world monopoly . . . .").

And Plaintiffs provided no authority going the other way. When dismissing this count, the district court noted that Greenflight relied on a quotation from *American Tobacco Co. v. United States*, 328 U.S. 781 (1946), in its response brief that was "either fabricated or hallucinated," and noted its concern that Plaintiffs pursued Count Five solely as a result "of artificial-intelligence-hallucinated legal authority." Dkt.65:pp.18–19.

In its opening brief before this Court, Greenflight doubles down on this fabrication, chalking it up to an error in the use of "single/double quote[s]." GVC Br. 50. This is specious. What *American Tobacco* actually says (on a different page than Plaintiffs cited) is:

> It is undoubtedly true that trade and commerce are "monopolized" within the meaning of the federal statute, when, as a result of efforts to that end, such power is obtained that a few persons acting together can control the prices of a commodity moving in interstate commerce. It is not necessary that the power thus obtained should be exercised. Its existence is sufficient.

328 U.S. at 811 (citation modified).  Plaintiffs did not merely

"paraphrase" this passage when they quoted, "The power that controls

the market by destroying competition . . . is a monopoly . . . though it be

shared by three persons acting in concert."  Dkt.63:p.19.

Beyond Plaintiffs' lack of candor to the Court, they miss that

*American Tobacco* is not a case about whether two companies can

constitute a monopoly under section 2 of the Sherman Act.  The case

instead addressed the question of whether 15 U.S.C. § 2 requires an

allegation that the defendant plausibly *exercises* its monopoly power or

if an allegation that the defendant *possesses* monopoly power is

sufficient.  The case discusses multiple parties because it has always

been true that two parties, *conspiring together*, can satisfy Section 2.

What Plaintiffs cobble together for Count Five are allegations not

of a conspiracy between Apple and Google but conclusory assertions

that the two companies function as a "duopoly."  *See* SAC ¶¶ 146–147.

Indeed, the Count fails on its own terms, as the SAC describes the

purported "duopoly" between Google and Apple as consisting of a "stable

two-firm environment" between two "interdependent" firms.  *Id.*  The

Eleventh Circuit has never recognized such a claim.

41

\*      \*      \*

At base, all of Greenflight's antitrust actions suffered from overt pleading defects even beyond the Plaintiffs' lack of antitrust standing. This Court should affirm dismissal of each.

## II.    The District Court Did Not Err in Dismissing Plaintiffs' UCL Claim.

Plaintiffs' tag-along California law claim fares no better.  In Count Four, Plaintiffs alleged that Google violated California's Unfair Competition Law, which prohibits "any unlawful, unfair, or fraudulent business act or practice."  *See* Cal. Bus. & Pro. Code § 17200.  Each prong of the UCL is a "separate and distinct theory of liability" and "an independent basis for relief."  *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (citation omitted).  The Court reviews the dismissal of the UCL claim de novo.  *Boyd*, 856 F.3d at 863–64.

The bulk of Plaintiffs' assertions here are derivative of their antitrust claims.  Count Four also added as a purported predicate the vague assertion that Google may have violated the federal criminal statute prohibiting witness tampering.  No purported predicate was supported by factual allegations sufficient to establish an unlawful or unfair business practice.  Additionally, Plaintiffs failed to allege a

42

"fraudulent" business practice; they did not plead Google violated any duty to disclose.

## A. Plaintiffs did not satisfy the unlawful or unfair prongs.

The UCL's unlawful and unfair prongs bootstrap violations of other laws to make those violations independently actionable under California law. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 187 (1999). Thus, to plausibly allege an unlawful or unfair business practice, a plaintiff must sufficiently allege a violation of some underlying law. *In re Brinker Data Incident Litig.*, No. 18-686, 2020 WL 691848, at *16 (M.D. Fla. Jan. 27, 2020). For all the reasons discussed in Section I, Plaintiffs did not plausibly allege that Google violated the antitrust laws.

Greenflight argues that its UCL claim neither "lived [n]or died with Sherman Act liability." GVC Br. 38. But the only other statutory predicate Greenflight points to is 18 U.S.C. § 1512—the witness tampering statute. *Id.* To sufficiently allege a violation of 18 U.S.C. § 1512 giving rise to UCL liability, Plaintiffs had to identify the "particular section of the statute" Google allegedly violated and had to describe with "reasonable particularity the facts supporting the

43

violation." *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1022 (N.D. Cal. 2007) (collecting cases).

Plaintiffs did neither. Plaintiffs identified § 1512 three times in the SAC. *See* SAC ¶¶ 37, 40, 136. But that statute criminalizes a multitude of ways that a person might try to influence official proceedings by interfering with a witness. *See* 18 U.S.C. § 1512(b)–(d). Each offense has different elements and different *mens rea* requirements. At no point did Plaintiffs identify which particular provision of the statute Google allegedly violated.

Nor did Plaintiffs plead facts "supporting the statutory elements of the violation." *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993). Instead, Plaintiffs strung together what is, at best, a preposterous hypothesis:

- SAC ¶ 37 alleged that "Plaintiff's legal counsel has determined that substantiated concerns exist that Google violated witness retaliation laws, such as [18 U.S.C.] Section 1512."

- SAC ¶ 40 alleged that Isaacs "justifiably fears" that he was "blacklisted [by Google] in violation of Section 1512, the

44

same way his neurosurgery career had been wrongfully halted."

- SAC ¶ 136 alleged that there is a "temporal proximity" between his "federal antitrust advocacy" against Apple and the reduction of traffic to OkCaller via Google Search.

No contention asserts (let alone plausibly) a pertinent fact. That counsel has "concerns," or a client "fears something might be true," or that there may be temporal proximity between two events without a factual basis for causation, is insufficient. A plaintiff must state the alleged violations with "reasonable particularity"—not merely speculate that a federal criminal offense may have been committed. *Khoury*, 14 Cal. App. 4th at 619; *see Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) ("Judicial experience and common sense" dictate whether pleaded facts give rise to a plausible inference of alleged violation.) (citation modified).

In sum, Plaintiffs' unlawful and unfair claims failed. *See* Dkt.65:p.15 (concluding "vague references" to laws outside federal antitrust laws could not support a UCL violation).

45

### B.    Plaintiffs did not satisfy the fraudulent prong.

The fraudulent prong required an allegation that Google deceived the public in violation of a duty to disclose. *Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001). Only one paragraph in the SAC referenced Google's so-called "fraud": Google "manipulat[es] . . . search rankings to favor its own products." SAC ¶ 132. But allegations of fraud must be pleaded with particularity. *See Casault v. Fed. Nat'l. Mortg. Ass'n*, 915 F. Supp. 2d 1113, 1129 (C.D. Cal. 2012) (applying heightened pleading standard of Fed. R. Civ. P. 9(b) to UCL claims). Plaintiffs' single paragraph did not identify the "who, what, when, where, and how" of Google's allegedly fraudulent misrepresentation. *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022). Equally dispositive, Plaintiffs' legal "support" for a duty to disclose is a case that confirms precisely the opposite: Google has no duty to disclose how it ranks its search results. *See* Dkt.63:p.17 (citing *Dreamstime.com, LLC v. Google LLC*, No. 20-16472, 2022 WL 17427039, at *2 (9th Cir. Dec. 12, 2022)).

Greenflight argues on appeal that the district court "reframed" its fraudulent allegations, improperly dismissing a reformulation instead

of what the SAC actually pleaded.  GVC Br. 44.  Greenflight contends Google engages in fraudulent business practices because its "search representations and omissions are likely to deceive because they conceal material self-interest in what users and developers experience as organic search."  *Id.* 44–45.

But the SAC citation Greenflight provides the Court, SAC ¶ 135, alleged nothing of the sort.  There, Greenflight claimed that users report Google's search-engine results have "gone steadily downhill."  *Id.* That is not an allegation of deception: The SAC does not claim these users have been defrauded by the search-engine results or by the ways in which Google allegedly "conceal[s] material self-interest in what users and developers experience as organic search."  GVC Br. 44–45.

In sum, Plaintiffs failed to provide plausible factual allegations to state a claim under any UCL prong, and the district court's dismissal of Count Four should be affirmed.

## III.    The District Court Did Not Abuse its Discretion in Denying Plaintiffs' Motions for Reconsideration.

The Court reviews the denial of a motion for reconsideration for abuse of discretion.  *Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1285 (11th Cir. 2001).  Motions for reconsideration cannot be used "to

relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005).

Isaacs moved the district court to reconsider its dismissal. In the motion, he cited "significant new developments in analogous litigation." Dkt.71:p.2. These "significant new developments" were a single district court case from the Northern District of California that declined to dismiss antitrust allegations against Google. *See id.* Greenflight thereafter moved to join Isaacs's motion. Dkt.74. The court denied the request to reconsider its judgment and additionally found that Greenflight's motion was untimely. Dkt.78.

Denial of an untimely motion for reconsideration when presented with a nonbinding district court opinion is not improper, particularly considering the court already had issued two lengthy orders analyzing and dismissing Plaintiffs' claims.[8] *See United States v. Cerceda*, 172

---

[8] Isaacs has followed this same pattern in other cases. The Ninth Circuit recently stated that it would entertain "no more filings" in Isaacs's case after he filed a meritless petition for reconsideration en banc. *See Coronavirus Rep. v. N. D. Cal.*, No. 25-7761 (9th Cir. June 11, 2026), Dkt.13.1.

48

F.3d 806, 812 n.6 (11th Cir. 1999) (per curiam) ("The opinion of a district court carries no precedential weight, even within the same district."). This Court should affirm the district court's rejection of the Plaintiffs' reconsideration attempts.

## **CONCLUSION**

For the foregoing reasons, this Court should affirm the district court's orders of dismissal and order denying reconsideration.

49

Dated: July 1, 2026

Respectfully submitted,

  /s/  *Kenneth C. Smurzynski*  
Kenneth C. Smurzynski
Mikaela E. Johnson*
Williams & Connolly LLP
680 Maine Avenue, SW
Washington, DC 20024
(202) 434-5000
ksmurzynski@wc.com
amaurer@wc.com

*Counsel for Defendant-Appellee Google LLC*

*Admitted only in Texas; practice supervised by D.C. Bar members

Edward M. Mullins
Sujey S. Herrera
Reed Smith LLP
200 South Biscayne Boulevard,
Suite 2600
Miami, Florida, 33131
(786) 747-0200
(786) 747-0299 facsimile
emullins@reedsmith.com
abarton@reedsmith.com

*Counsel for Defendant-Appellee Google LLC*

## Certificate of Compliance

This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 27(a)(2)(B), this document contains 9,219 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Respectfully submitted,

/s/ *Kenneth C. Smurzynski*

Attorney for Defendant-Appellee Google LLC

## Certificate of Service

I hereby certify that on July 1, 2026, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the Court's Appellate PACER system, which will automatically send a notice of electronic filing to all counsel of record.

Respectfully submitted,

/s/_____*Kenneth C. Smurzynski*__

Attorney for Defendant-Appellee Google LLC