IN THE UNITED STATES COURT OF APPEALS
**FOR THE ELEVENTH CIRCUIT**

No. 26-10369

DR. JEFF ISAACS, on behalf of themselves and all others similarly situated, and GREENFLIGHT VENTURE CORPORATION,

Plaintiffs-Appellants,

v.

**GOOGLE LLC,**

Defendant-Appellee.

On Appeal from the United States District Court
for the Southern District of Florida
No. 9:24-cv-80395-RLR/KMM

# REPLY BRIEF OF PLAINTIFF-APPELLANT
JEFFREY D. ISAACS, PRO SE

Jeffrey D. Isaacs, M.D.
11482 Key Deer Circle
Wellington, FL 33449
(212) 257-0737
jeffreydi@gmail.com
Plaintiff-Appellant

## TABLE OF CONTENTS


INTRODUCTION .......................................................................................... 1

ARGUMENT .............................................................................................. 7

I. STANDING EXISTS: THE SAC PLEADS DIRECT PLATFORM PARTICIPATION, A DIRECTORY MARKET, AND DIRECT EXCLUSION. .. 7

A. The SAC expressly pleads OkCaller's participation on Google Search's publisher side. .......................................................................... 7

B. The SAC defines a directory information market and pleads Google as a competitor. .......................................................................... 8

C. Google addresses injury to Bing and Yahoo; the SAC alleges that Google directly excluded OkCaller. .......................................................................... 9

II. COUNTS I AND II: THE SAC PLEADS THE MONOPOLY AND ISA LATER PROVED AT TRIAL; GOOGLE TESTS COUNT II UNDER THE WRONG STATUTE. .......................................................................... 11

A. The federal judgment confirms that the pleaded monopoly and ISA are plausible. .......................................................................... 11

B. Google applies § 2 attempted monopolization elements to a § 1 restraint of trade claim. .......................................................................... 11

C. DE 63 opposed Counts I and II; the Local Rules did not authorize dismissal as conceded. .......................................................................... 12

III. COUNT III: THE DISTRICT COURT REQUIRED A "JOINT VENTURE" ALLEGATION THAT THE SAC CONTAINS VERBATIM. ............................. 13

IV. COUNT V: GOOGLE CONCEDES THAT TWO PARTIES CAN CONSPIRE TO MONOPOLIZE UNDER § 2. .......................................................................... 14

V. COUNT IV: CALIFORNIA LAW EXPRESSLY REJECTS THE RULE USED TO DISMISS THE UCL CLAIM. .......................................................................... 15

A. *Cel-Tech* permits an independent unfair prong claim without a completed Sherman Act violation. .......................................................................... 15

B. The pleaded facts support a plausible inference of retaliation....................... 17

C. The response ordered by the court identified the statutory provisions, and the unfair prong does not depend on them. .......... 18

D. Paragraph 135 pleads affirmative deception; Google addresses paragraph 138 instead. .......... 19

VI. THE DISMISSAL ORDER IGNORED THE RESPONSE THE COURT ORDERED. .......... 19

VII. GOOGLE TURNED PLAINTIFF'S PROTECTIVE DISCOVERY INTO THE VERY CHARACTER ATTACK IT WAS DESIGNED TO PREVENT, AND THE DISTRICT COURT SUCCUMBED TO THE INVERSION .......... 20

CONCLUSION .......... 29

CERTIFICATE OF COMPLIANCE .......... 29

CERTIFICATE OF SERVICE .......... 29

## TABLE OF CITATIONS

## CASES


*Apple Inc. v. Pepper, 587 U.S. 273 (2019) .......................................... 1, 4, 8, 19

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585 (1985). 2, 5, 13

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 180, 186–87 (1999) ........................................................ 15, 16, 17, 18

*H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239–43 (1989)..... 28

*Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738, 746 (1976) ... 28

*Lorain Journal Co. v. United States, 342 U.S. 143, 155 (1951)....................... 1, 18

*Ohio v. American Express Co., 585 U.S. 529, 544–46 (2018) ...................... 1, 5, 8

*Speaker v. U.S. Department of Health & Human Services Centers for Disease Control & Prevention, 623 F.3d 1371, 1380 (11th Cir. 2010) ........................... 26

*Todorov v. DCH Healthcare Authority, 921 F.2d 1438, 1460 & n.35 (11th Cir. 1991)....................................................................................................... 15

*Woodham v. American Cystoscope Co., 335 F.2d 551, 555–57 (5th Cir. 1964) 12

Associated Press v. United States, 326 U.S. 1, 20 (1945)...................................... 15

Blue Shield of Virginia v. McCready, 457 U.S. 465, 479, 484 (1982).................. 10

Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977) ............ 10

Coronavirus Reporter Corp. v. Apple Inc., No. 3:24-cv-08660-EMC, Dkt. 102 at 1, 14 (N.D. Cal. July 30, 2025) .......................................................................... 3

Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451 (1992)......... 1

Epic Games, Inc. v. Apple Inc., 67 F.4th 946 (9th Cir. 2023) ......................... 16, 26

Feldman v. American Dawn, Inc., 849 F.3d 1333, 1340–41 (11th Cir. 2017)....... 10

Giummo v. Olsen, 701 F. App’x 922, 924–26 (11th Cir. 2017) (unpublished)..... 12

In re Google Play Store Antitrust Litigation (Epic Games, Inc. v. Google LLC), 147 F.4th 917, 932 n.3 (9th Cir. 2025)............................................................ 16

In re January 2021 Short Squeeze Trading Litigation, 105 F.4th 1346, 1355–57 (11th Cir. 2024) ............................................................................................. 9

Inform Inc. v. Google LLC, No. 21-13289, slip op. at 14–17 (11th Cir. Aug. 26, 2022) (per curiam) (unpublished)................................................................... 10

Levine v. Central Florida Medical Affiliates, Inc., 72 F.3d 1538, 1545–46 (11th Cir. 1996)......................................................................................................... 12

McGahee v. Northern Propane Gas Co., 858 F.2d 1487, 1495 (11th Cir. 1988)..... 6

OJ Commerce, LLC v. KidKraft, Inc., 34 F.4th 1232, 1245–46 (11th Cir. 2022). 13

Palmyra Park Hospital, Inc. v. Phoebe Putney Memorial Hospital, 604 F.3d 1291, 1303–04 (11th Cir. 2010) ........ 10
Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 455–56 (1993) ........ 12
Standard Oil Co. of New Jersey v. United States, 221 U.S. 1 (1911) ........ 6
United States v. American Telephone & Telegraph Co., 552 F. Supp. 131 (D.D.C. 1982), aff'd sub nom. Maryland v. United States, 460 U.S. 1001 (1983) ........ 6
United States v. Apple Inc., No. 2:24-cv-04055 (D.N.J. Mar. 21, 2024) ........ 7
United States v. General Electric Co., 82 F. Supp. 753 (D.N.J. 1949) ........ 6
United States v. Google LLC, 747 F. Supp. 3d 1, 117–24 (D.D.C. 2024) ........ 7, 11
United States v. Google LLC, No. 20-cv-3010, 2025 WL 2523010, at *1 (D.D.C. Sept. 2, 2025), appeal pending ........ 7, 11
United States v. Microsoft Corp., 253 F.3d 34 (D.C. Cir. 2001) (en banc) (per curiam) ........ 1, 6, 7
Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398, 408–09 (2004) ........ 13
Yelp Inc. v. Google LLC, No. 24-cv-06101-SVK, 2025 WL 1168900 (N.D. Cal. Apr. 22, 2025); ECF No. 58 (N.D. Cal. Oct. 22, 2025) ........ 10, 20

## STATUTES

*18 U.S.C. § 1512 ........ 4, 18, 19, 28
*18 U.S.C. § 1513 ........ 4, 18, 19, 28
*Sherman Act § 1, 15 U.S.C. § 1 ........ 5, 11, 12
*Sherman Act § 2, 15 U.S.C. § 2 ........ 5, 11, 12, 14, 15
18 U.S.C. § 1961(1)(B) ........ 28
28 U.S.C. § 1292(b) ........ 19
California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ... 3, 5, 10, 15, 16, 17
Clayton Act § 16, 15 U.S.C. § 26 ........ 1

## RULES

*Fed. R. Civ. P. 12 ........ 1, 3, 10, 12, 14, 17, 20, 26
Fed. R. Civ. P. 23 ........ 1
Fed. R. Civ. P. 26 ........ 20, 26

Fed. R. Civ. P. 33(b)(2) ........................................................................... 25
Fed. R. Civ. P. 34(b)(2)(A)......................................................................... 25
Fed. R. Civ. P. 36(a)(3) ............................................................................. 25
Fed. R. Civ. P. 58(c)(2)(B) ........................................................................... 4

## OTHER AUTHORITIES

21 Cong. Rec. 2457 (1890) (Sen. Sherman)............................................................ 6
Majority Staff of Subcomm. on Antitrust, Commercial & Admin. Law of the H. Comm. on the Judiciary, 116th Cong., Investigation of Competition in Digital Markets 18 (Comm. Print 2020)........................................................... 9

## INTRODUCTION

The Answering Brief is a strawman brief containing misstatements of law and materially incomplete characterizations. More fundamentally, it does not confront the operative SAC: as shown below, Google repeatedly cites a superseded pleading, denies allegations that appear in the SAC, and disregards or distorts at least seventeen developed competition law issues actually briefed.[1]

That pattern is unusual. Williams & Connolly is sophisticated appellate counsel; it ordinarily would not leave so many developed issues unanswered, answer a superseded pleading, and make personal assertions the cited record does not support.

The most serious category is the simplest: Google repeatedly assures this Court that allegations do not exist. It says Plaintiffs "did not suggest anywhere" outside a response brief that OkCaller is Google's customer, for purposes of Sherman Act relevant market analysis. Google Br. 17. Count I pleads in terms that

[1] Among the developed points left unanswered or met only with a label are: the publisher side under either *American Express* framework, Greenflight Br. 15–16; statutory limits on the 'every website' concern, *id.* at 20–22; Rule 23's aggregation answer, *id.* at 21–22; output-and-quality injury, *id.* at 26–28; zero-price SSNDQ harm, *id.* at 27–28; efficient-enforcer factors, *id.* at 28–29; specialized vertical providers as competitive constraints, *id.* at 29–30; downstream foreclosure under *Kodak* and *Microsoft*, *id.* at 30–31; § 16's single prospective injunction, *id.* at 35–36; leave to cure, *id.* at 40–41; the DOJ judgment's ISA findings, *id.* at 45–46; *Lorain Journal*'s affirmative-exclusion analogy, *id.* at 47–48; extra-record Rule 12 factfinding, *id.* at 48; targeted de-indexing discovery, Isaacs Br. 24–26; DE 68's distinct grounds and DE 69's silence, *id.* at 26–29; *Pepper* platform analogy, *id.* at 27–28; and collateral litigation's irrelevance to Rule 12, *id.* at 9–13, 23.

"Plaintiffs are consumers of Google GSE platform through their provision of content via tools like GWT," ¶ 110, and ¶¶ 64-67 plead the publisher side in detail. Whatever Google may argue about legal sufficiency, it cannot accurately call those allegations absent. The brief says facts supporting the *Aspen Skiing* claim, "a prior profitable relationship" among them, "were absent from the SAC." Google Br. 36-37. Paragraphs 25-30 plead the decade long partnership, approximately $2 million in annual profits to Google, and a record final year.

The same pattern reaches the orders and Google's personal accusations. The brief calls Greenflight's account of the joint venture ruling "a distortion," Google Br. 38, but the order says *Aspen* "would require" a previously entered joint venture. DE 65 at 14. It attributes to ¶ 135 a "downhill" remark found in ¶ 138, while ¶ 135 pleads the affirmative deception theory Google says is missing. Google Br. 46-47; Part V.D. And it reports multiple falsities about Plaintiff, Google Br. 31 n.7.

Google invokes *Coronavirus Reporter Corp. v. Apple Inc.*, No. 3:24-cv-08660-EMC, Dkt. 102 at 1, 14 (N.D. Cal. July 30, 2025) litigation as a character attack while omitting its relevance to the merits: the predecessor *Coronavirus Reporter* action challenged Apple's control of iPhone app distribution through tying, and this case pleads the complementary Google structure. Isaacs Br. 2-8. This case then looks at the structure for overall *access to internet content.* That

relevant market looks at content published via the internet, regardless of whether it is in Apple App format (e.g. the CNN App) or a Google website link (e.g. CNN.com).

Google claims it elected to cite a superseded complaint as “substantially similar” and the SAC only “where appropriate.” Google Br. 5 n.2. Its citations run three paragraphs behind—Count I as ¶¶ 103-109, Thanksgiving as ¶ 35, and retaliation as ¶¶ 37, 40, and 136—then it declares SAC allegations absent. Google Br. 5, 29, 44-45. Rule 12 review is limited to the operative SAC.

Where the Answering Brief does not ignore an allegation, it minmizes it. The SAC pleads erasure: “zero pages for OkCaller.com, down from indexing millions of pages, consistently, for a decade,” ¶ 30. But Google answers a site that merely “appears lower,” Google Br. 24, while the operative SAC alleges zero results. ¶ 30. It was erased. The UCL count pleads ostensibly organic results presented as fair while allegedly manipulated for Google and its partners, ¶ 135; Google answers that it has “no duty to disclose how it ranks,” Google Br. 46. And a profitable decade, record final year, termination on the same day, unaffected copycats, and a year of unanswered inquiries, ¶¶ 25-30, 38-43, become “concerns,” “fears,” and a “preposterous [timing] hypothesis.” Google Br. 44-45.

Google likewise ignores Plaintiff’s response ordered by the district court and the argument that the dismissal order resolved his claims without adjudicating it;

never addresses *Pepper*; and suggests reconsideration was nearly six months late despite the district court's holding that it was timely under Rule 58(c)(2)(B). Google Br. 11; DE 68 at 7-10; DE 78 at 2. The response also identified §§ 1512(d)(1) and 1513(b), which Google never answers. DE 68 at 9-10.

Those omissions conceal what this litigation has always been. It is not a complaint that one webpage ranked poorly. It is not really about that website's founder, despite Google's efforts to cast it as such. The predecessor case challenged Apple's control of iPhone app distribution through tying; this case pleads the complementary structure of Google's control over publisher participation in general search and an Internet Content Access Market directed to the duopoly's collective effect. The theories seek prospective structural relief.

This case's predecessor/origin began six years ago, during the pandemic and nearly alongside *Epic* Games, when Plaintiffs argued that political enforcement was not resolving Big Tech's control. See *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946 (9th Cir. 2023) (commenced August 2020). A citizen and small company sought review before meaningful structural relief became prohibitively costly to society – a known risk of not regulating monopolies.

Gibson Dunn defended Apple in the predecessor litigation; Wilson Sonsini and then Williams & Connolly defended Google here. No one assembles that arsenal against an incoherent grievance. But years of briefing under *Amex*, §§ 1

and 2, tying, relevant market economics, and the UCL refute the suggestion that this is unintelligible amateur work. That arsenal was needed because the defendants were best positioned to recognize innovative theories which had the potential to produce structural consequences.

Plaintiff submits that the district court unfortunately succumbed to Google's keen vision. The court called Greenflight's response "an incoherent collection of technical jargon and legal phrases," DE 65 at 7; stayed discovery before Google's responses or objections were due, DE 43 at 1; later treated the opening discovery as "voluminous document discovery".

The disparity between the parties is why private enforcement exists, and why it is written into the law. Congress authorized injured parties to enforce the statute as private attorneys general rather than rely on government alone. See *Hawaii v. Standard Oil Co. of California*, 405 U.S. 251, 262 (1972).

The Sherman Act was written for this case before this case existed. The worst fear was a monopoly that could become more powerful than the government. In 1890, Congress confronted private power able to decide what farmers could ship, refiners could sell, and citizens could buy. This Court recognized that Congress's answer "was not only an economic one, but was also a political one," quoting Senator Sherman: "[i]f we will not endure a king as a political power we should not endure a king over the production, transportation, and sale of any of the

necessaries of life." *McGahee v. Northern Propane Gas Co.*, 858 F.2d 1487, 1495 (11th Cir. 1988) (quoting 21 Cong. Rec. 2457 (1890)). The statute dissolved Standard Oil, reached General Electric's incandescent lamp monopoly, broke up AT&T Bell—where Plaintiff's grandfather, from an Atlanta family, worked after serving in World War II—and reached *Microsoft*'s maintenance of its operating system monopoly. *Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1 (1911); *United States v. General Electric Co.*, 82 F. Supp. 753 (D.N.J. 1949); *United States v. American Telephone & Telegraph Co.*, 552 F. Supp. 131 (D.D.C. 1982), aff'd sub nom. *Maryland v. United States*, 460 U.S. 1001 (1983); *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) (en banc) (per curiam). Each answered the law at the height of its power. Each complied with structural changes, and survived as exemplars of American exceptionalism.

The Department of Justice's Apple complaint explains that, "[i]n the absence of the consent decree in *United States v. Microsoft*, it would have been more difficult for Apple to achieve this success and ultimately launch the iPhone." Compl. ¶ 26, *United States v. Apple Inc.*, No. 2:24-cv-04055 (D.N.J. Mar. 21, 2024). Strict enforcement helped create the competitive space in which the present duopoly grew. After trial, another court found that "Google is a monopolist, and it has acted as one to maintain its monopoly." *United States v. Google LLC*, 747 F. Supp. 3d 1 (D.D.C. 2024), quoted in *United States v. Google LLC*, No. 20-cv-

3010, 2025 WL 2523010, at *1 (D.D.C. Sept. 2, 2025), appeal pending. The remedy stopped short of major structural relief.

For 136 years the Sherman Act has required powerful American companies to answer claims under their actual elements. This appeal asks that Google do the same.

## ARGUMENT

### I. STANDING EXISTS: THE SAC PLEADS DIRECT PLATFORM PARTICIPATION, A DIRECTORY MARKET, AND DIRECT EXCLUSION.

#### A. The SAC expressly pleads OkCaller's participation on Google Search's publisher side.

Google's publisher standing argument begins by denying allegations in the operative complaint. It says the publisher theory first appeared in later briefing. Google Br. 15-22. But Count I states: "Plaintiffs are consumers of Google GSE platform through their provision of content via tools like GWT." ¶ 110, DE 61 at 44. Paragraph 64 identifies Search's "two symbiotic customer groups: end users seeking information and the developers and publishers who supply content to be discovered."

*American Express* leaves that publisher theory intact under either classification. Google devotes three pages to the case, Google Br. 17-19, but Greenflight never conceded that Search is non-transactional. An organic click plausibly produces an exchange mediated by Google: the user receives

information, the publisher receives distribution, and Google receives attention, data, and advertising value. GVC Br. 14-15; SAC ¶¶ 64-67. If that exchange makes Search a transaction platform, both sides form one market. *Ohio v. American Express Co.*, 585 U.S. 529, 544-46 (2018). If Search is non-transactional, Google's own brief dictates that the sides are independent markets. Google Br. 18. Either classification preserves the pleaded publisher side. The district court analyzed neither. GVC Br. 15-16.

*Pepper* supplies an independent standing analogy based on the direct platform relationship. App Store buyers could sue because nothing stood between them and Apple. *Apple Inc. v. Pepper*, 587 U.S. 273 (2019). Apple argued in *Pepper* that only developers could sue; Google now argues that only consumers can, yet Google never addresses *Pepper*. Isaacs Br. 27-28.

**B. The SAC defines a directory information market and pleads Google as a competitor.**

Google attacks the broader vertical search category. Google Br. 34-36. That does not answer the separately pleaded directory information market, defined by its uses, substitutes, and quality dimensions. ¶¶ 74-79. Nor does it answer the allegation that Google competes there through internal vertical search and directory functions that "serve as reverse search . . . services" and steer queries to Google's own or preferred offerings. ¶ 94, DE 61 at 31-34, 40. Google itself identifies *Yelp*, Whitepages, and Yellowpages as competitors. Google Br. 35.

Those named competitors support the pleaded market; they do not contradict it. The district court never analyzed that narrower market.

Furthermore, zero price does not mean zero competitive harm. Congress explained that online products may "appear to be 'free' but are monetized through people's attention or with their data." Majority Staff of Subcomm. on Antitrust, Commercial & Admin. Law of the H. Comm. on the Judiciary, 116th Cong., Investigation of Competition in Digital Markets 18 (Comm. Print 2020). Competitive injury appears in output, quality, innovation, and choice. The SAC alleges each: Google removed twelve million indexed pages from a working directory reaching "300 million individuals," ¶¶ 22, 30, thereby reducing innovation, transparency, and consumer choice. ¶¶ 90-95. *In re January 2021 Short Squeeze Trading Litigation* requires identification of the harmed market and a connection between that market and the challenged conduct. 105 F.4th 1346, 1355-57 (11th Cir. 2024). The SAC supplies both.

**C. Google addresses injury to Bing and Yahoo; the SAC alleges that Google directly excluded OkCaller.**

Google answers an injury no one alleged. It asks whether removing OkCaller harmed Bing or Yahoo. Google Br. 22-27. The SAC relies on neither. It alleges that Google controlled the index, removed OkCaller, and supplied the competing directory answers that remained. No independent actor or remote market separates that conduct from OkCaller's loss. That is the kind of injury

Brunswick addresses. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). McCready permits a noncompetitor to sue when its injury is inextricably intertwined with the competitive injury caused by the scheme. *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 479, 484 (1982). *Feldman* involved a salesman who suffered fallout from a scheme directed at a market he did not occupy. *Feldman v. American Dawn, Inc.*, 849 F.3d 1333, 1340-41 (11th Cir. 2017). Here, Google allegedly excluded OkCaller itself. See *Palmyra Park Hospital, Inc. v. Phoebe Putney Memorial Hospital*, 604 F.3d 1291, 1303-04 (11th Cir. 2010) (intervening steps do not make a predictable injury remote).

OkCaller's owner is directly situated to enforce that injury; the law does not require the only or best possible enforcer. *Inform Inc. v. Google LLC*, No. 21-13289, slip op. at 14-17 (11th Cir. Aug. 26, 2022) (per curiam) (unpublished). *Yelp* supplies a direct Rule 12 comparison: another directory provider's monopolization, attempted monopolization, and UCL claims survived. *Yelp Inc. v. Google LLC*, No. 24-cv-06101-SVK, 2025 WL 1168900 (N.D. Cal. Apr. 22, 2025); ECF No. 58 (N.D. Cal. Oct. 22, 2025) (amended tying claim sustained).

## II. COUNTS I AND II: THE SAC PLEADS THE MONOPOLY AND ISA LATER PROVED AT TRIAL; GOOGLE TESTS COUNT II UNDER THE WRONG STATUTE.

### A. The federal judgment confirms that the pleaded monopoly and ISA are plausible.

After trial, a federal court found Google a monopolist in general search and found that its default distribution agreements, including the ISA, effectively "froze" the search ecosystem, leaving Google with "no true competitor." 2025 WL 2523010, at *1; 747 F. Supp. 3d at 117-24. The SAC pleads those same markets and that agreement, ¶¶ 9, 116, and quotes the government's case at paragraph 12. Google does not dispute those findings. The district court dismissed on standing, addressed in Part I, while Google defends Count II by importing the elements of a different statute.

### B. Google applies § 2 attempted monopolization elements to a § 1 restraint of trade claim.

Google's Count II defense never applies Count II's law. Count II alleges an unreasonable restraint under Sherman Act § 1, whose elements are concerted action and an unreasonable restraint. *Levine v. Central Florida Medical Affiliates, Inc.*, 72 F.3d 1538, 1545-46 (11th Cir. 1996). Google instead applies § 2's attempted monopolization elements: predatory conduct, specific intent, and dangerous probability. Google Br. 33-34; see *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 455-56 (1993). Section 1 asks whether an agreement restrained

trade. Google asks whether one firm nearly monopolized every downstream market. That test cannot sustain dismissal of Count II.

The agreement is not missing: the SAC identifies "the so-called ISA Agreement with Apple." ¶ 116, DE 61 at 45. Greenflight's brief applies § 1 doctrine to that agreement. Yet Plaintiff's claim was dismissed "for the same reasons," reasons that tested the agreement at the center of the United States' case under § 2's attempted monopolization standard.

**C. DE 63 opposed Counts I and II; the Local Rules did not authorize dismissal as conceded.**

DE 63 at 5-15 opposed Counts I and II; the abandonment ruling therefore rests on a false record premise. The opposition addressed market participation, injury, the ISA Agreement, and concerted conduct. The district court nevertheless deemed those counts conceded under the Local Rules, even as the same order found the responses to Counts III through V compliant. DE 65 at 6-9 & 8 n.5, 12. A local rule may govern presentation of the papers; it cannot substitute for the merits required by Rule 12. *Woodham v. American Cystoscope Co.*, 335 F.2d 551, 555-57 (5th Cir. 1964); see *Giummo v. Olsen*, 701 F. App'x 922, 924-26 (11th Cir. 2017) (unpublished). The court could not convert an opposition into abandonment, when the SAC had compelling language, in and of itself, that clearly stated a claim. Indeed, these sections were nearly verbatim to the government's successful Sherman Act claim.

## III. COUNT III: THE DISTRICT COURT REQUIRED A "JOINT VENTURE" ALLEGATION THAT THE SAC CONTAINS VERBATIM.

The dismissal rests on a legal requirement *Aspen* does not impose. The district court stated that an *Aspen Skiing* claim "would require Greenflight to (among other things) plausibly allege that it previously entered into a joint venture with Google. This Greenflight has not done." DE 65 at 14. But *Aspen* asks whether a monopolist terminated a prior voluntary, profitable course of dealing and sacrificed short term profits; it does not require a relationship formally labeled a joint venture. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985); *OJ Commerce, LLC v. KidKraft, Inc.*, 34 F.4th 1232, 1245-46 (11th Cir. 2022); *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408-09 (2004).

Even under the court's added requirement, paragraph 30 calls the terminated relationship a "longstanding, profitable business relationship (digital content advertising joint venture)." DE 61 at 17. The exact words the order declared missing are in the SAC. More important, the SAC pleads the substance *Aspen* requires: a decade long course of dealing, termination from "the prior twelve million" indexed pages to zero, and a non-trivial annual $2 million allegation of profit sacrifice. ¶¶ 25-30, 126.

The extra-record homepage search cannot rescue the dismissal. The district court relied on counsel's letter and its own search locating one transiently indexed

homepage. DE 53 at 12 n.9; DE 65 at 16 n.6. A disputed, changing search result cannot be judicially noticed against SAC ¶ 30, and Google offers no Rule 12(d) defense. One homepage does not answer the alleged removal of twelve million pages. Nor can the court resolve that conflict against the SAC: paragraph 30 alleges zero indexed pages. The Court should disregard that observation. The remaining question is whether Google's directory functions make it OkCaller's rival in the pleaded market. ¶ 94. The district court never reached that question; the dismissal should be reversed.

## IV. COUNT V: GOOGLE CONCEDES THAT TWO PARTIES CAN CONSPIRE TO MONOPOLIZE UNDER § 2.

Google concedes the district court's stated rationale is wrong: "it has always been true that two parties, conspiring together, can satisfy Section 2." Google Br. 41. The order nonetheless dismissed Count V because a two-firm claim "ignores the prefix 'mono' in the word monopoly." DE 65 at 19. Section 2 expressly reaches every person who "combine[s] or conspire[s] with any other person or persons, to monopolize." 15 U.S.C. § 2. Count V pleads that combination as Google and Apple's "duopoly control." ¶ 9. The order stopped at a prefix and never applied the conspiracy clause.

Google's alternative, that Count V alleges only coexistence, also fails on the SAC's text. It alleges that Google "exercises control over U.S. internet content access in concert with Apple," ¶ 146; that the firms "jointly foreclos[ed]

competitive channels," ¶ 149; and that Google's "active participation and central role" violated § 2, ¶ 151. Those allegations incorporate the ISA Agreement, ¶¶ 9, 116, 145, which a federal court has since found exclusionary in the general-search markets. Part II.A.

Conspiracy to monopolize requires concerted action, specific intent, and an overt act; dangerous probability of success is not an element. *Todorov v. DCH Healthcare Authority*, 921 F.2d 1438, 1460 & n.35 (11th Cir. 1991). The pleaded ISA, joint foreclosure, and control "in concert" must be tested against those elements. Associated Press rejected concerted control of distribution: "Freedom to publish means freedom for all and not for some. Freedom to publish is guaranteed by the Constitution, but freedom to combine to keep others from publishing is not." *Associated Press v. United States*, 326 U.S. 1, 20 (1945). That principle applies to the alleged Google-Apple combination controlling digital distribution. The Court should reverse.

## V. COUNT IV: CALIFORNIA LAW EXPRESSLY REJECTS THE RULE USED TO DISMISS THE UCL CLAIM.

### A. *Cel-Tech* permits an independent unfair prong claim without a completed Sherman Act violation.

Google collapses two UCL prongs. It says both the unlawful and unfair prongs merely "bootstrap" violations of other laws. Google Br. 43. *Cel-Tech* holds that the unfair prong is independent: conduct is unfair when it "threatens an

incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 186-87 (1999); DE 65 at 17. A practice thus may be unfair "even if not specifically proscribed by some other law." Id. at 180.

Google made the same argument in Google Play and lost. The Ninth Circuit held that it was "foreclosed by California law." *In re Google Play Store Antitrust Litigation* (*Epic Games, Inc. v. Google LLC*), 147 F.4th 917, 932 n.3 (9th Cir. 2025). *Epic* also sustained UCL liability without federal antitrust liability. *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 1000-04 (9th Cir. 2023). Google cites neither UCL holding here.

The SAC pleads precisely that independent unfairness: opaque, standardless removal from Google's index that renders publisher investments valueless, ¶¶ 133-137; ostensibly organic results manipulated for Google and its partners, ¶ 135; and reduced innovation, transparency, consumer welfare, and choice, ¶¶ 90-95. Paragraph 140 is explicit: the conduct "violates the spirit of State Competition Laws like UCL, even if Defendant is not found guilty of directly monopolizing the relevant Sherman markets." ¶ 140, DE 61 at 52. The district court never applied

*Cel-Tech* to those allegations. It dismissed Count IV because the Sherman counts failed. *Cel-Tech* forbids exactly such practice. The dismissal should be reversed.

**B. The pleaded facts support a plausible inference of retaliation.**

The retaliation inference rests on a reasonable sequence of events, not counsel's "concerns," Plaintiff's "fears," or timing alone. Google Br. 44-45. For a decade, Google called OkCaller a "trusted partner," invited it into "Enhanced Support and Optimization," and earned "around $2m each year in profits" from it; the final year was a record. ¶¶ 26, 28. On Thanksgiving 2022, the day Plaintiff tendered his closing brief in the Apple antitrust appeal, Google terminated the partnership without notice. ¶¶ 30, 38. Copycat reverse search competitors remained untouched; Google contacts who had advised Plaintiff for a decade went silent; and a year of requests produced no explanation. ¶¶ 38-39. Calling that sequence a "preposterous hypothesis" does not answer it.

Google says only that it was not a party to the Apple appeal. Google Br. 13. The SAC alleges not only the ISA Agreement, under which Google pays Apple "$20 billion annually to maintain its search monopoly," but the firms' joint lobbying against platform antitrust enforcement. ¶¶ 9, 41. A corporation need not appear in a caption to have an economic interest in litigation involving its $20 billion distribution partner. At Rule 12, that interest, timing, comparator treatment, silence, and withheld explanation permit a retaliation inference.

Google withheld its termination reason and now faults Plaintiff for not pleading it. Google alone holds the records identifying the decisionmakers, communications, and motive. Its rule would let a dominant platform defeat a retaliation claim by withholding its reason through dismissal. *Cel-Tech* reaches conduct that harms competition or violates antitrust "policy or spirit" without a completed Sherman Act violation. 20 Cal. 4th at 186-87. *Lorain Journal* likewise rejects unreviewable control over distribution: a publisher's right to select customers is "neither absolute nor exempt from regulation. Its exercise as a purposeful means of monopolizing interstate commerce is prohibited by the Sherman Act." *Lorain Journal Co. v. United States*, 342 U.S. 143, 155 (1951). Ownership of the Search index does not make its alleged exclusionary purpose unreviewable.

**C. The response ordered by the court identified the statutory provisions, and the unfair prong does not depend on them.**

Google says "[a]t no point" did Plaintiff identify a particular witness protection provision. Google Br. 44. That is false as to the response ordered by the district court: Plaintiff identified § 1512(d)(1) and § 1513(b), and the dismissal order addressed neither. DE 68 at 9-10; DE 69 at 1.

**D. Paragraph 135 pleads affirmative deception; Google addresses paragraph 138 instead.**

Google attacks words that paragraph 135 does not contain. It attributes "gone steadily downhill" to paragraph 135; that phrase appears in paragraph 138. Google Br. 46-47. Paragraph 135 instead alleges that Google "misled and deceived consumers, publishers, and developer competitors regarding the nature and operation of its search engine" by manipulating rankings for itself and strategic partners while consumers and developers believed their queries produced reasonably fair organic results. DE 61 at 50-51. That is affirmative deception, not a failure to disclose theory.

## VI. THE DISMISSAL ORDER IGNORED THE RESPONSE THE COURT ORDERED.

The dismissal order ignored the response the district court itself ordered. The earlier order directed Plaintiff to show cause why his claims should not be dismissed "for the same reasons" as Greenflight's. DE 65 at 19-20. In a timely response, Plaintiff identified 18 U.S.C. § 1512(d)(1) and § 1513(b), applied *Apple Inc. v. Pepper* to platform standing, and alternatively requested § 1292(b) certification. DE 68 at 7-10. Yet the dismissal order repeated reasons written before the response existed and answered none of the arguments the court had invited. DE 69 at 1.

Google offers no defense: its brief never mentions Plaintiff's response or explains how the dismissal order resolved arguments it did not address. The challenge stands unrebutted. Isaacs Br. 26-29. Yelp's Rule 12 treatment of comparable directory provider claims also undermines the merits rationale the dismissal order repeated. Part I.C. The dismissal order and the later denial of reconsideration should be reversed because neither adjudicated the arguments submitted in response to the court's own directive. DE 69 at 1; DE 78 at 4-6.

## VII. GOOGLE TURNED PLAINTIFF'S PROTECTIVE DISCOVERY INTO THE VERY CHARACTER ATTACK IT WAS DESIGNED TO PREVENT, AND THE DISTRICT COURT SUCCUMBED TO THE INVERSION.

The circumstances surrounding the discovery Plaintiff requested represent a complex inversion of the truth. The matter now spans several years and requires careful review. Put simply, the distracting strike motion practice this Court observed earlier this month was entirely preventable. Rule 26(f) process began in the underlying case, and after an unusual meet & confer, Plaintiff served discovery seeking both the reason for OkCaller's elimination and Google's position on his credential history and Apple petitioning. DE 35-1 at 3-5; DE 35-2 at 3-7; DE 35-3 at 6; Isaacs Br. 16-18. Had Google answered, it would have fixed its position before those personal matters were used against Plaintiff.

The Opening Brief describes the beginning of this story; Google chose not to answer it. During the first August 2024 meet & confer process, Google's new

counsel claimed no knowledge of the eighteen months of investigation and preservation correspondence concerning OkCaller. Within twenty four hours, the Opening Brief recounted, Google circulated proposed joint report language labeling Plaintiff's resulting discovery "broad and harassing." Isaacs Br. 16-18. Plaintiff immediately demanded the basis for that accusation. Id. Google's Answering Brief does not deny the exchange, address the timing, or identify any information counsel possessed then that could justify calling him a harasser. Google Br. 31-33.

The reversal was extraordinary. The history available within Google showed that OkCaller was not a hostile stranger. Google had called it a "trusted partner," invited it into "Enhanced Support and Optimization," trained Plaintiff at its Miami office, and earned approximately $2 million annually from the relationship. SAC ¶¶ 26, 28-29, 35. That decade long relationship continued until Google eliminated millions of OkCaller pages on Thanksgiving 2022, the day Plaintiff tendered his antitrust brief against Apple. Id. ¶¶ 30, 38. If new counsel truly knew nothing about the preservation correspondence or Apple petitioning, nothing in the history counsel did know explained the immediate harassment accusation against a profitable, invited partner. If counsel knew the omitted history, the accusation preemptively discredited an inquiry into it. The Opening Brief presented both sides of that dilemma. Isaacs Br. 18-23. Google answers neither.

The medical degree admission is at the center of that chronology. Plaintiff's August 12 discovery asked, in sequence, whether Google knew of the USC Keck settlements, whether Google had taken a position on his credentials, whether Google considered his medical degree valid, and whether Google had discussed his Apple or other litigation before Thanksgiving 2022. DE 35-3 at 6 (Requests Nos. 26-30). The next day's harassment accusation confirmed the danger those questions anticipated. After counsel appeared, Greenflight deliberately preserved the protection in its August 20 discovery: "Admit that Google considers Plaintiff's CEO, Dr. Isaacs, to have a valid medical degree." DE 35 at 4; DE 42 at 4-5 (Request No. 32).

That was a shield to prevent years more of harassment against Plaintiff. Google's counsel inverted it to cast themselves as the victims of harassing discovery. The FAC alleged years of credential litigation, exonerating and expungement determinations, later weaponization of contrary records, and Plaintiff's specific fear that the same reputational mechanism had reached Google before it terminated OkCaller. FAC ¶¶ 30-38 & n.1; see SAC ¶¶ 35-43 & n.1. The surrounding admissions made the purpose unmistakable: determine whether Google had acquired the USC narrative, whether it had adopted that narrative, and whether it had considered it when eliminating OkCaller. DE 35-3 at 6 (Requests Nos. 26-30). A direct answer would have fixed Google's position before that

history could be used against Plaintiff. An admission would have confirmed that Google rejected the adverse narrative; a denial or qualification would have disclosed that Google had adopted some part of it; a specific objection would at least have identified the claimed defect. Google chose none of those courses.

Instead, Google converted the shield into the accusation it was meant to prevent. It showcased the medical degree admission as evidence of "abusive discovery," without disclosing the pleaded reputational theory or the surrounding questions concerning Google's knowledge and motive. DE 42 at 1-5. Google thus told the district court that Plaintiff was harassing Google by asking the one question designed to determine whether Google intended to use his personal history to harass and discredit him. The same motion devoted pages to collateral litigation and portrayed the request itself as proof that the requester was the problem. Id. at 1-4. Google knew why the question had been asked: its own filing quoted the question while omitting the FAC and surrounding requests that explained it.

Google's other examples confirm the same distortion. Its headline request concerning Google's shift "from prioritizing search engine improvements" toward "AI, quantum computing, and other emerging technologies" was reasonable in today's world, especially in light the SAC's allegations that monopoly insulation reduced Google's incentive to improve search and suppressed innovation. DE 42 at

4; SAC ¶¶ 17-18, 90-95. The broader discovery tested the GSE monopoly already proved by the government and alleged ICAM combination. SAC ¶¶ 106-12, 145-51. Interrogatory No. 1 demanded “all reasons and decision-making processes” for the November 2022 termination; Requests for Production Nos. 1-6 sought relevant communications, investigations, identified deficiencies, and algorithmic or manual decisions. DE 35-2 at 3; DE 35-1 at 3-4. The admissions tested Google’s failure to explain, termination on the day of the Apple filing, comparator treatment, continuing exclusion, lack of an appeal, and knowledge of the Apple litigation. DE 35-3 at 4-6. Greenflight told the court that the discovery its counsel signed complemented those requests. DE 34 at 10.

The preservation history made those questions urgent. Mathews’ August 24 and October 17, 2023 letters demanded investigation and preservation concerning the removal of OkCaller. DE 34-3 at 1-2; DE 34-4 at 1-2. Google’s November 3 response invoked editorial authority and announced that it would not engage further; it did not identify why OkCaller disappeared. Most seriously, it did not confirm what evidence Google had preserved. DE 34-2 at 1-2. The August 2024 scheduling report again requested preservation confirmation. DE 34 at 3-4. Google called that history “irrelevant and incorrect.” Id. Its Answering Brief says nothing about it. Discovery could have answered the central question, and perhaps resolved the dispute, two years ago. Instead, Google called the discovery harassing even

though it sought two matters central to this appeal: confirmation that the preservation demands had been honored, and a fixed answer as to whether Google intended to use Plaintiff's credential history against him rather than address the Sherman Act claims.

Google prevented every answer. DE 35 sought to extinguish Plaintiff's August 12 pro se discovery after his individual claim was stayed. DE 35 at 5-7. DE 36 at 1 stayed that discovery and denied Google's requested protective order as moot; it made no finding of abuse. The discovery Greenflight's counsel served on August 20 remained live, and Google's responses or objections were due September 19. DE 35 at 4; Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A), 36(a)(3). Google moved to stay all discovery on September 10. DE 42 at 1. The district court granted the blanket stay the next day -- eight days before Google had to answer and thirteen days before Plaintiffs' opposition was due. DE 43 at 1.

Plaintiffs filed the opposition on September 24 to preserve their position. It explained that the requests sought evidence supporting pleaded claims, and that any genuinely excessive request could be addressed through a specific objection or narrower order. DE 47 at 5-6. Google filed no reply. The court never addressed the opposition. It later cited Google's motion alone and erroneously surmised that "there are facts to suggest" harassment, based on the timing of a deposition notice

and "voluminous document discovery." DE 53 at 18-19. It identified no irrelevant request, improper purpose, actual burden, Rule 26 violation, or sanction.

The district court succumbed to Google's inversion. It never examined why the credential admission was asked, how the surrounding requests tied it to retaliation, or why Google had withheld the reason for eliminating a profitable partner. "Voluminous" was the wrong measure. Each Plaintiff served one initial round and sought the existing DOJ v. Google discovery file to avoid duplicating government work; Google supplied no burden estimate for any particular request. Isaacs Br. 17-18, 24-26; DE 47 at 5-6. In structural platform cases such as *Epic*, market, algorithm, comparator, and motive discovery is ordinary. Calling this set disqualifying volume assumed the case was not serious, then used that assumption to suppress the evidence. The court permitted Google to block the answer, use the unanswered request as evidence against its author, and transform a protective inquiry into a character judgment. That is precisely the competing factual narrative a court may not adopt against the pleader at Rule 12. *Speaker v. U.S. Department of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010).

Google then exaggerated the court below's tentative (but erroneous) observation for appellate briefing. Its Statement of the Case says the district court "recognized" that Plaintiffs "had leveraged discovery . . . to harass" Google.

Google Br. 9. DE 53 at 18-19 made no such finding; it said only that "there are facts to suggest" harassment and granted leave to amend. DE 53 at 18-19. Google itself restores the omitted qualifier later. Google Br. 32. The change matters because "recognized" presents misconduct as adjudicated, while the actual order recorded only an untested concern derived from Google's unanswered motion.

The longstanding conduct has now matured on this Court's docket. The Opening Brief devoted eight pages to the meet & confer accusation, the preservation problem, the unanswered discovery, and Google's reversal of victim and offender. Isaacs Br. 16-23. The Answering Brief does not confront that account. It instead begins, "Plaintiff Jeffrey D. Isaacs is a serial litigant," cites the USC litigation without the SAC's pleaded exonerating context, calls Plaintiff's brief representative of frivolous filings, and falsely reports a sanctions order "against him." Google Br. 2 & n.1, 31 & n.7.

This conduct has unfolded over years and has targeted Plaintiff through words and actions by Google and its counsel, and the duopoly generally. The conduct should cease and the case should be reversed for UCL discovery into these repeat, concerted, and willful violations of 8 U.S.C. §§ 1512 and § 1513 predicates as defined under § 1961. The operative complaint alleged commercial retaliation against an antitrust witness; the district court record shows Google recasting the witness's protective inquiry as harassment; and the appellate docket shows the

character accusation repeated while the rebuttal is targeted for removal under false pretext. The same target, objective, and method across the continuing period make relatedness and continuity more than plausible. See *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239-43 (1989). This Court has now observed the continuation itself.

The immediate appellate consequence is reversal and discovery. Google should be required on remand to identify the decisionmakers and actual reason for OkCaller's elimination; produce the relevant manual and algorithmic decision records; account for evidence preserved after the 2023 letters; disclose its knowledge of Plaintiff's Apple petitioning and credential history; and permit nonprivileged inquiry into the origin and coordination of the "failed litigation," "harassment," "serial litigant," and sanctions narratives. Those subjects bear directly on motive, retaliation, and whether Google used reputational pressure to protect the challenged monopoly structure. They are not collateral to the claim; they are evidence Google alone possesses.

Where antitrust proof rests principally in the alleged violator's files, dismissal before discovery must be granted "very sparingly." *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746 (1976).

## CONCLUSION

For the foregoing reasons, this Honorable Court should reverse the judgment in full.

Respectfully submitted,
/s/ Jeffrey D. Isaacs
JEFFREY D. ISAACS, M.D.
11482 Key Deer Circle
Wellington, FL 33449
(212) 257-0737
jeffreydi@gmail.com
Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 32-4, this brief contains 6,377 words.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using *Microsoft* Word for Mac in 14-point Times New Roman.

/s/ Jeffrey D. Isaacs

## CERTIFICATE OF SERVICE

I certify that on August 22, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh

Circuit using the appellate CM/ECF system. All participants in this case are registered appellate CM/ECF users and will be served by that system.

/s/ Jeffrey D. Isaacs